RANDALL W. EDWARDS (C.S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:    +1 415 984 8700
Facsimile:    +1 415 984 8701

DAVID MARROSO (C.S.B. #211655)
dmarroso@omm.com
REBECCA A. GIROLAMO (C.S.B. #293422)
bgirolamo@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone:    +1 310 553 6700
Facsimile:    +1 310 246 6779

REEMA SHAH (*pro hac vice pending*)
rshah@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, 17th Floor
New York, New York 10019
Telephone:    +1 212 326 2000
Facsimile:    +1 212 326 2061

Attorneys for Defendant
United Wholesale Mortgage, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN ALLISON, and MARK CALOCA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED WHOLESALE MORTGAGE,<br><br>        Defendant. | Case No. 3:25-cv-05377-WHO<br><br><u>CLASS ACTION</u><br><br>**UNITED WHOLESALE MORTGAGE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Judge: William H. Orrick<br>Date: October 8, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2 – 17th Floor<br><br>Complaint Filed: June 26, 2025<br>Trial Date: Not set |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 8, 2025 at 2:00 p.m., before the Honorable William Orrick of the United States District Court for the Northern District of California, Courtroom 2, 450 Golden Gate Avenue, San Francisco, CA 94102, United Wholesale Mortgage, LLC, will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint with prejudice.  The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration of Randall Edwards; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

Dated: August 22, 2025                     O'MELVENY & MYERS LLP

By:      */s/ Randall W. Edwards*
                Randall W. Edwards

Attorneys for Defendant
United Wholesale Mortgage

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................. 3

      A.    UWM's Website and Terms.......................................................................... 3

      B.    Plaintiff's Allegations .................................................................................. 5

III.  LEGAL STANDARD ........................................................................................... 5

IV.   ARGUMENT ....................................................................................................... 6

      A.    All of Plaintiffs' Claims Fail Because UWM Disclosed, and Plaintiffs
            Consented to, the Sharing of Their Information With Third Parties...................... 6

      B.    Plaintiffs Fail to State Claims for Negligence and Negligence Per Se
            (Claims 1 and 2) ........................................................................................... 9

      C.    Plaintiffs Do Not State Any Statutory Privacy Claim (Claims 3, 5, 10, 11)......... 11

            1.    Plaintiffs Fail to Plausibly Allege Violation of the CDAFA (Claim 3).... 12

            2.    Plaintiffs Have Not Plausibly Alleged a Claim Under the California
                  Consumer Privacy Act (CCPA) (Claim 5)................................................. 13

            3.    Plaintiffs Fail to Plausibly Allege a Violation under CIPA or ECPA
                  (Claims 10 and 11) .................................................................................... 15

                  a.    Plaintiffs fail to state a claim under the ECPA or CIPA
                        Section 631(a) ................................................................................ 15

                  b.    Plaintiffs fail to allege that UWM "read or attempt[ed] to
                        read" the "contents" of any of their electronic communications .. 16

                  c.    Plaintiffs fail to allege facts showing that UWM "aided" or
                        "conspired" with third parties ...................................................... 18

                  d.    Plaintiffs' CIPA Section 632 claim fails...................................... 19

      D.    Plaintiffs' Breach of Contract, Unjust Enrichment, and Breach of
            Confidence Claims Fail (Claims 6, 7, and 9).................................................. 21

      E.    Plaintiffs Have Not Alleged Facts Sufficient to State A Plausible Claim for
            Unfair Competition (Claim 4)........................................................................ 23

      F.    Because All Other Claims of Plaintiffs Fail, Plaintiffs' Declaratory
            Judgment Claim Necessarily Fails (Claim 8)................................................. 25

V.    CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbie v. Shasta Cnty.*,
   2023 WL 4274135 (E.D. Cal. June 29, 2023).......................................................................... 20

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004)............................................................................................... 6, 9

*Allen v. Shutterfly, Inc.*,
   2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ......................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................. 5, 10

*B.K. v. Eisenhower Med. Ctr.*,
   721 F. Supp. 3d 1056 (C.D. Cal. 2024) .................................................................................. 11

*Baton v. Ledger SAS*,
   740 F. Supp. 3d 847 (N.D. Cal. 2024) .................................................................................... 10

*Berkla v. Corel Corp.*,
   302 F.3d 909 (9th Cir. 2002)................................................................................................... 22

*Boone v. Amazon.com Servs., LLC*,
   562 F. Supp. 3d 1103 (E.D. Cal. 2022)................................................................................... 24

*Brodsky v. Apple Inc.*,
   2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)........................................................................ 12

*Byars v. Goodyear Tire & Rubber Co.*,
   654 F. Supp. 3d 1020 (C.D. Cal. 2023) .................................................................................. 17

*Caldwell v. Caldwell*,
   2006 WL 618511 (N.D. Cal. Mar. 13, 2006)............................................................................ 4

*Camacho v. Auto. Club of S. Cal.*,
   142 Cal. App. 4th 1394 (2006) ............................................................................................... 24

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ...................................................................................... 20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................................................................ 23

*Chen v. JPMorgan Chase Bank, N.A.*,
   745 F. Supp. 3d 1025 (C.D. Cal. 2024) .................................................................................. 24

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................................................... 13

*Custom Packaging Supply, Inc. v. Phillips*,
   2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......................................................................... 12

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010) ................................................................. 6

*Dent v. Nat'l Football League,*
  968 F.3d 1126 (9th Cir. 2020) ............................................................. 10

*DeSoto v. Yellow Freight Sys., Inc.,*
  957 F.2d 655 (9th Cir. 1992) ................................................................. 6

*Doe v. Meta Platforms, Inc.,*
  690 F. Supp. 3d 1064 (N.D. Cal. 2023), ............................................. 13

*Drum v. San Fernando Valley Bar Ass'n,*
  182 Cal. App. 4th 247 (2010) .............................................................. 24

*Dyroff v. Ultimate Software Grp., Inc.,*
  2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) .................................... 10

*Entm't. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.,*
  122 F.3d 1211 (9th Cir. 1997) ......................................................... 7, 22

*Esparza v. Kohl's, Inc.,*
  723 F. Supp. 3d 934 (S.D. Cal. 2024) ................................................. 17

*Esparza v. UAG Escondido A1 Inc.,*
  2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....................................... 19

*Fayer v. Vaughn,*
  649 F.3d 1061 (9th Cir. 2011) ............................................................... 6

*Flanagan v. Flanagan,*
  27 Cal. 4th 766 (2002) ........................................................................ 19

*Garcia v. Sony Computer Entm't. Am., LLC,*
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) .............................................. 24

*Gerlinger v. Amazon.com, Inc.,*
  311 F.Supp.2d 838 (N.D.Cal.2004) .................................................... 22

*Gonzales v. Uber Techs., Inc.,*
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) .............................................. 12

*Graham v. Noom, Inc.,*
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................... 16, 17

*Griffey v. Magellan Health Inc.,*
  562 F.Supp.3d 34 (D. Ariz. 2021) ....................................................... 14

*Hammerling v. Google LLC,*
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................. 16, 17, 23, 25

*Heiting v. Taro Pharms. USA, Inc.,*
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) ............................................... 19

*Herguan Univ. v. Immigr. & Customs Enf't,*
  258 F. Supp. 3d 1050 (N.D. Cal. 2017) ................................................. 7

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ................................................................. 7

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
   674 F. Supp. 3d 884 (S.D. Cal. 2023) ................................................................. 10

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................. 6

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................. 9

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................. 16

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ............................................................................. 17

*Jones v. Tonal Sys., Inc.*,
   751 F. Supp. 3d 1025 (S.D. Cal. 2024) ............................................................... 4

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................... 24

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................. 23

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................. 6

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
   2025 WL 1635419  (E.D. Cal. June 9, 2025) .................................................... 18

*Lakes v. Ubisoft, Inc.*,
   777 F. Supp. 3d 1047 (N.D. Cal. 2025) ............................................................... 6

*Loomis v. Slendertone Distribution, Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) ............................................................... 4

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................... 11, 22

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................................. 16

*Medoff v. Minka Lighting, LLC*,
   2023 WL 4291973 (C.D. Cal. May 8, 2023) .................................................... 11

*Mikulsky v. Bloomingdale's, LLC*,
   713 F. Supp. 3d 833 (S.D. Cal. 2024) ............................................................... 18

*MP Nexlevel of Cal., Inc. v. CVIN, LLC*,
   2014 WL 3057522 (E.D. Cal. July 7, 2014) .................................................... 22

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ................................................................................. 5

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) .................................................................... 12

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d at1153 (9th Cir. 1996) ............................................................................... 22

*People v. Lee*,
  31 Cal. 4th 613 (2003) ............................................................................................ 18

*R.H. v. Los Gatos Union Sch. Dist.*,
  33 F. Supp. 3d 1138 (N.D. Cal. 2014) ..................................................................... 6

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................... 19–20

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ............................................................................................. 15

*Rodriguez v. Ford Motor Co.*,
  2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ......................................................... 19

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) ............................................. 16, 19, 20

*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal.App.4th 221 (2014) ................................................................................... 21

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000) .................................................................................... 7

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................................... 8

*Smith v. YETI Coolers, LLC*,
  754 F. Supp. 3d 933 (N.D. Cal. 2024) .................................................................... 19

*Swarts v. Home Depot, Inc.*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023) .............................................................. 16, 19

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
  83 F. Supp. 3d 855 (N.D. Cal. 2015) ...................................................................... 21

*Tabler v. Panera LLC*,
  2020 WL 3544988 (N.D. Cal. June 30, 2020) ........................................................ 23

*Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co.*,
  168 Cal. App. 3d 455 (1985) ................................................................................... 22

*Tian v. Bank of Am., N.A.*,
  2025 WL 1377767 (C.D. Cal. Apr. 2, 2025) ..................................................... 14, 15

*Toy v. Life Line Screening of Am. Ltd.*,
  2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ........................................................ 10

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................... 7

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......................................................... 17, 18

**Statutes**

18 U.S.C. § 2510 ........................................................................................ 16, 17

18 U.S.C. § 2511 ......................................................................................... 2, 15

18 U.S.C. § 2511(1)(a) ...................................................................................... 16

Cal. Bus. & Prof. Code § 17200 ................................................................... 3, 23

Cal. Bus. & Prof. Code § 17204 ......................................................................... 24

Cal. Civ. Code § 1770 ..................................................................................... 23

Cal. Civ. Code § 1798.145(e) ............................................................................ 15

Cal. Civ. Code § 1798.150(a) ............................................................................ 13

Cal. Civ. Code 1798.150(a)(1) ........................................................................... 14

Cal. Civ. Code 1798.81.5(d)(1)(A) ..................................................................... 13

Cal. Penal Code § 502(e)(1) ........................................................................ 12, 13

Cal. Penal Code § 631(a) ................................................................. 2, 6, 15–21

Cal. Penal Code § 632 .................................................................... 2, 6, 15, 19–21

Cal. Penal Code § 502 ...................................................................... 2, 6, 12, 13

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.    <u>INTRODUCTION</u>**

3      Plaintiffs' privacy complaint against United Wholesale Mortgage, LLC ("UWM") makes

4  sweeping claims under a myriad of common law and statutory privacy, anti-hacking, and anti-

5  wiretapping theories, but their claims are untenable given judicially noticeable facts, Plaintiffs'

6  own factual allegations, and clear legal authorities. Plaintiffs allege the UWM Website

7  (www.uwm.com) uses certain trackers that purportedly collect and disclose Plaintiffs' "personal

8  and financial" information to third parties without Plaintiffs' consent.  But Plaintiffs fail to allege

9  facts to establish that UWM's website discloses any such information to third parties, and the

10 factual allegations show the limited information collected and shared is not the kind protected

11 under the law.  In addition, both Plaintiffs consented to UWM's Privacy Policy, which clearly

12 describes UWM's practices related to the collection and sharing of limited, technical website

13 information—not personal and financial user information—for purposes of optimizing the UWM

14 website for its users.  The eleven claims in the Complaint suffer from many independent flaws

15 requiring dismissal:

16     ***First,*** all of Plaintiffs' claims fail because Plaintiffs consented to the collection and

17 transfer of the limited, technical information UWM collected.  Plaintiffs allege UWM's Privacy

18 Policy is part of the governing contract, which means they expressly consented to UWM's data-

19 sharing practices.  And each visit to the UWM Website provided further clear, constructive notice

20 of such practices, meaning Plaintiffs' alleged continued use of the UWM Website manifested

21 implied consent as well.

22     ***Second,*** Plaintiffs' factual allegations do not establish several elements of their negligence

23 and negligence *per se* claims.  UWM does not owe Plaintiffs any duty to "safeguard" the

24 technical information UWM allegedly allowed third parties to obtain—particularly where

25 Plaintiffs can have no reasonable expectation that their information would be treated differently

26 than as plainly disclosed in UWM's Privacy Policy.  Likewise, the stated basis for a negligence

27 *per se* claim fails, as prior cases have held.  Moreover, UWM did not breach any duty to

28 Plaintiffs, even if one existed, given that UWM's fully disclosed data-sharing practices are in line

1   with the reasonable standard of care and the obligations imposed by the Gramm–Leach–Bliley

2   Act (GLBA) and the FTC Act.  Still further, the Complaint has not alleged any nonspeculative,

3   present injury to Plaintiffs.

4          *Third,* multiple problems each defeat Plaintiffs' claims under the California Invasion of

5   Privacy ("CIPA") (Cal. Penal Code §§ 630 *et seq.*) and the Electronic Communications Privacy

6   Act ("ECPA") (18 U.S.C. §§ 2511(1) *et seq.*).  These include that (1) as to the ECPA and first

7   three clauses of CIPA Section 631, any alleged sharing by UWM of communication information

8   is lawful because UWM consented as a party to the communication; (2) the Complaint does not

9   allege facts sufficient to establish that UWM "aided" or "conspired" with third parties engaging

10  in any unlawful acts, as required by the fourth clause of CIPA Section 631; (3) the basic technical

11  information that third parties allegedly obtain through the UWM Website is neither the "contents"

12  of any communication by Plaintiffs, as required by CIPA Section 631 and ECPA, nor

13  "confidential" under CIPA Section 632; and (4) Section 632 does not provide for the same

14  derivative liability as Section 631.

15         *Fourth*, Plaintiffs' claim under California's Comprehensive Computer Data Access and

16  Fraud Act ("CDAFA") (Cal. Penal Code § 502) fails both because (a) the alleged tracking

17  software did not overcome any "technical … barriers" that Plaintiffs used to prevent access to

18  their information, and (b) Plaintiffs cannot allege any cognizable, non-speculative "damage or

19  loss" that resulted from the alleged violation.

20         *Fifth,* Plaintiffs cannot state a claim under the California Consumer Privacy Act

21  ("CCPA") (Cal. Civ. Code, §§ 1798.100 *et seq.*) because that statute provides a private right of

22  action only for a business's failure to implement reasonable security measures to protect

23  specifically defined "Personal Information."  None of the information that Plaintiffs allege was

24  collected by the trackers on the UWM Website is "Personal Information" as defined in the CCPA.

25  And Plaintiffs do not allege facts showing UWM failed to implement reasonable security

26  measures.

27         *Sixth*, Plaintiffs' contract and unjust enrichment claims fail because UWM does not allow

28  third parties to disclose the technical website information at issue.  Nor can Plaintiffs use an

implied contract or unjust enrichment claim to expand the terms of an express contract (*i.e.* the Privacy Policy, which describes the limited information UWM collects and to which Plaintiffs consented). Further, Plaintiffs plead no cognizable damage for breach of contract.

**Seventh,** Plaintiffs cannot maintain a breach of confidence claim because, as discussed above, the data disclosed to third parties from the UWM Website is neither novel nor confidential, let alone both. In addition, Plaintiffs' claim for breach of confidence is grounded in an implied-in-law or quasi-contractual theory that is mutually exclusive of their claims for breach of contract and therefore not permitted in the face of an express contract.

**Eighth,** Plaintiffs also fail to state a claim under any of the three prongs of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq*.). UWM's fully disclosed, limited data collection practices are not unlawful as explained above, nor are they deceptive or unfair under any relevant standard. Separately, Plaintiffs fail to allege a loss of money or property as required. And they cannot pursue equitable relief where they do not and cannot claim the legal remedies of their other claims would be inadequate if they prevailed.

**Ninth and finally,** because all of their other claims fail, Plaintiffs' declaratory judgment claim must fail as well.

The Court should dismiss Plaintiffs' Complaint in its entirety.

## II.    BACKGROUND

### A.    UWM's Website and Terms

UWM is a residential mortgage lender, Compl. ¶ 2, that originates loans exclusively through the wholesale channel. The Complaint also incorrectly alleges UWM services mortgages, *id.* ¶¶ 2, 27, although the Court need not address that error for purposes of this motion.[1] UWM operates a Website (https://www.uwm.com/) (the "UWM Website"). Although it is principally a B2B website, the Complaint alleges the UWM Website provides publicly available information about UWM tools and technologies, as well as third-party resources to real estate agents, mortgage brokers, career seekers, and homebuyers, including the ability to make payments and manage their account. *Id.* ¶¶ 2, 29. The UWM Website allows a "homeowner

---

[1] UWM currently contracts with a third-party sub-servicer to directly service its loans.

1  looking to make a mortgage payment" to be redirected to their relevant loan "service[r's]

2  website."  Edwards Decl., Ex. 1 at 4, Ex. 2 at 1.

3       The UWM Website has UWM's Privacy Policy available at the bottom of every webpage.

4  Compl. ¶ 74 n.29, Edwards Decl. Exs. 1-2.  Moreover, when a user initially visits the Website—

5  including to use it as an indirect conduit to their loan servicer's portal—a cookie banner[2] pops up

6  disclosing that the site "use[s] cookies and similar technologies" and offering users the option to

7  manage consent and tracking preferences or affirmatively dismiss the notice and proceed with

8  using the site.  Edwards Decl., Ex. 3 at 1.  The banner also conspicuously identifies in bold blue

9  lettering and hyperlinks to UWM's Privacy Policy.

10      UWM's Privacy Policy provides robust disclosures that describe in detail what

11 information UWM collects and how that information may be used, including the use of tracking

12 technologies by third parties, as well as the opportunity to opt out of cookies.  Compl. ¶¶ 76, 78,

13 Ex. B at 2-4.  UWM's Privacy Policy discloses that UWM uses cookies to "identify which pages

14 of the site are accessed" and "[t]hat information is then used to improve the Website and [users']

15 online experience."  Compl., Ex. B at 5.  The information collected may include "IP address, []

16 page views and links clicked, [] browser type and version, and other aspects of how [users]

17 interact with the UWM Websites."  *Id.; See id.* ¶¶ 78, Ex. B at 5.  The basic technical information

18 collected by trackers is used by UWM to "better understand how our website is being used,"

19 "improve site offerings," "provide coaching on the various tools the site has to offer," provide a

20 "personalized website experience," "assist with technical support," and "send specific offers or

21 promotion."  *Id.*, Ex. B at 5.  As the Privacy Policy makes clear, third parties are strictly

22 prohibited from using information retrieved from the UWM Website "for any purpose other than

23 those proscribed by UWM in connection with the services they provide on UWM's behalf."  *Id*.

24

25 _____

26 [2] The cookie banner is subject to judicial notice and incorporated by reference.  *See* UWM's RJN,
   filed concurrently; *Caldwell v. Caldwell,* 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006),
   *order clarified, No.* 2006 WL 734405 (N.D. Cal. Mar. 20, 2006) ("[A]s a general matter, websites

27 and their contents may be proper subjects for judicial notice."); *Loomis v. Slendertone
   Distribution, Inc*., 420 F. Supp. 3d 1046, 1062-1063 (S.D. Cal. 2019) (judicial notice of website)

28 (collecting cases).

UWM MOTION TO DISMISS
NO. 3:25-CV-05377-WHO

1

### B.    Plaintiff's Allegations

Plaintiffs allege they are borrowers that "regularly use" the UWM Website for activities that are, instead, actually performed on a third-party sub-servicer's website, such as to "review [their] account, manage [their] mortgage, check statements, and make payments."  Compl. ¶¶ 106, 110.  However, the Court need not address that error for purposes of this motion.  Plaintiffs also allege they are Facebook users.  Compl. ¶¶ 107, 111.  According to the Complaint, UWM incorporated tracking technologies from Meta, Google, Microsoft, LinkedIn, CrazyEgg, lordofthesuperfrogs.com, and Dynatrace onto the Website in a manner that resulted in the following information of Plaintiffs' being shared with third parties: "(a) [e]xisting user or Customer status; (b) [b]rowsing activities, including the pages and content Plaintiffs viewed; (c) [l]ogin activities; (d) [a]ctivities related to viewing their loans; (e) [t]he different types of statements they viewed; (f) c_user cookie to identify a logged-in Facebook account; and (g) [i]nformation collected through an Internet 'cookie' (or information collecting device from a web server)."  *Id*. ¶ 121; *see also id.* ¶¶ 1, 41-51.  Plaintiffs attempt to dress this information up by referring throughout their Complaint to UWM disclosing their "Personal and Financial Information," but they do not make any factual allegations that any of their financial account or transaction information is shared.  Plaintiffs nonetheless allege that, without their consent, UWM collected and shared their "Personal and Financial Information" with third parties, which was "further sold to fourth parties for purposes of marketing Third and fourth party products."  *Id*. ¶¶ 115, 123.  Plaintiffs bring eleven claims against UWM, seeking monetary and injunctive relief on behalf of themselves and a putative nationwide class and California subclass.  *Id*. ¶ 130.

### III.    LEGAL STANDARD

A defendant's motion to dismiss should be granted where, as here, the plaintiff has failed to allege facts that would establish any cognizable legal claim against that defendant.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court need not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations.  *Id*. at 677-79; *Fayer v.*

1  *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*); *Adams v. Johnson*, 355 F.3d 1179,

2  1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted inferences are

3  insufficient to defeat a motion to dismiss.").

4  On a motion to dismiss, a court may consider not only the complaint's allegations but also

5  documents on which the complaint necessarily relies if: "(1) the complaint refers to the

6  document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

7  authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

8  F.3d 992, 998 (9th Cir. 2010).  Likewise, courts can take judicial notice of facts that cannot be

9  reasonably contested, even if not incorporated by reference into the complaint. *Khoja v. Orexigen*

10  *Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018).

11  Finally, "[a] district court does not err in denying leave to amend where the amendment

12  would be futile." *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

13  **IV.    ARGUMENT**

14  **A.    All of Plaintiffs' Claims Fail Because UWM Disclosed, and Plaintiffs Consented to, the Sharing of Their Information With Third Parties.**

15  The Complaint alleges the language in UWM's Terms of Use ("Terms") and Privacy

16  Policy that expressly disclosed to Plaintiffs that the technical information they provided on the

17  UWM Website would be shared with third-party service providers, including technology

18  companies. *E.g.*, Compl. ¶ 78.  That, coupled with Plaintiffs' express and constructive consent to

19  the disclosed practices, suffices to defeat all their claims. *E.g.*, Cal. Penal Code § 502 (CDAFA

20  covering only access to another person or company's computer without permission), *id.* § 631(a)

21  (CIPA covering information only if intercepted without consent), *id.* § 632 (CIPA covering only

22  eavesdropping or recording without consent); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058

23  (N.D. Cal. 2025) (dismissing ECPA and CIPA claims because plaintiff consented to defendant's

24  Terms of Use, Terms of Sale, and Privacy Policy); *R.H. v. Los Gatos Union Sch. Dist*., 33 F.

25  Supp. 3d 1138, 1165-66 (N.D. Cal. 2014), *dismissed* (Oct. 29, 2014) (conduct authorized by the

26  plaintiff cannot form the basis of a negligence claim); *In re Facebook, Inc. Internet Tracking*

27  *Litig*., 956 F.3d 589, 601 (9th Cir. 2020) (dismissing the breach of contract claim because

28

6

1    defendant's contract with plaintiff did not contain an explicit promise not to collect the data);

2    *Entm't. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997)

3    (disclosure in violation of an understanding between the defendant and the plaintiff that the

4    confidence be maintained is an element of breach of confidence claim); *Hodsdon v. Mars, Inc.*,

5    162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (dismissing

6    claim under UCL, in part, because the practice was "readily available to consumers on

7    [defendant]'s website.").

8         As described above, the Privacy Policy details what kind of information may be collected,

9    what such information is used for, and how to opt out of disclosures.  Compl., Ex. B at 2-5.  The

10   Privacy Policy specifies that UWM uses "cookies" to track website usage, including "your IP

11   address, your page views and links clicked, your browser type and version, and other aspects of

12   how you interact with UWM's website," in order to "improve the Website and your online

13   experience."  *Id.*, Ex. B at 5.  It further discloses that "UWM has a presence on various social

14   media outlets in an effort to connect with … clients."  *Id.*, Ex. B at 6.

15        The Complaint's factual allegations and the documents subject to judicial notice and

16   incorporated by reference directly contradict—and therefore overcome—Plaintiffs' assertions that

17   they "never consented, agreed, authorized, or otherwise permitted" UWM to collect and share the

18   technical website information at issue or that they never received any written notice of such

19   collection and sharing.  Compl. ¶ 71.[3]

20        First, the Complaint itself, coupled with the disclosures made in the Privacy Policy,

21   establishes Plaintiffs' express consent.  Plaintiffs specifically allege that customers—like

22   Plaintiffs—enter "contracts" with UWM that include both UWM's Terms and Privacy Policy.  *Id.*

23   ¶ 74.  UWM's Privacy Policy states that "by providing information to UWM" through the website

24   or other means, customers "authorize UWM to engage" in various uses of that information.  *See*

---

25   [3]"A court need not accept as true allegations contradicted by judicially noticeable facts" and may

26   "consider certain materials—documents attached to the complaint, documents incorporated by
reference in the complaint, or matters of judicial notice—without converting the motion to

27   dismiss into a motion for summary judgment."  *Herguan Univ. v. Immigr. & Customs Enf't*, 258
F. Supp. 3d 1050, 1061-62 (N.D. Cal. 2017) (citations omitted) (quoting *Shwarz v. United States*,

28   234 F.3d 428, 435 (9th Cir. 2000); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Compl., Ex. B at Use, *id*. ¶ 76.  Plaintiffs' own allegations thus establish that, by sharing their

information with UWM, they expressly consented to UWM's disclosure of such information as

described in the Privacy Policy.

Second, Plaintiffs impliedly consented to the practices disclosed in those documents too,

based on Plaintiffs' constructive notice and continued use of the UWM Website.  Courts in the

Ninth Circuit have found constructive notice and implied consent by evaluating "the

conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of

the terms of use, and the website's general design" in determining "whether a reasonably prudent

user would have inquiry notice" of such terms.  *Allen v. Shutterfly, Inc*., 2020 WL 5517172, at *6

(N.D. Cal. Sept. 14, 2020); *see also Silver v. Stripe Inc*., 2021 WL 3191752, at *3 (N.D. Cal. July

28, 2021) (courts have found that "[a] binding contract is created if a plaintiff is provided with an

opportunity to review the terms of service in the form of a hyperlink") (internal quotations

omitted).  UWM conspicuously makes the Privacy Policy available on the website in two ways.

On its home page, UWM provides a bright white pop-up banner with green and blue acceptance

and dismissal buttons that notifies users that "cookies" and other tracking technologies are used

on the website and provides a hyperlink in underlined text to the Privacy Policy.  *See* Edwards

Decl., Ex. 3.  This pop-up banner offers users the option to manage consent and tracking

preferences or affirmatively dismiss the notice and proceed with using the Website.  The home

page, and the bottom of every page on the website, also provides a link in black text on a white

background to the Privacy Policy.  *Id.*, Exs. 1-2.  The conspicuousness and placement of these

Terms and Privacy Policy establish that Plaintiffs were on notice of the Privacy Policy and, by

dismissing the notice and proceeding to use the Website, constructively assented to its terms.

Third, further consent follows from Plaintiffs' allegation that they are Facebook users.

Compl. ¶¶ 107, 111.  As Facebook users, they must have consented to three Meta agreements:

Meta's Terms of Service, Meta's Cookies Policy, and Meta's Privacy Policy.  Edwards Decl.,

Exs. 4-6.  Meta's three agreements taken together disclose in detail the kind of information Meta

collects and shares, including browser and device information, location-related information, and

information collected by "cookies and similar technologies" regarding user browsing and social

media activity on Facebook and its partners.  *Id*., Exs. 4-6.  For example, Meta's Cookie Policy states, "[w]e may place cookies on your computer or device and receive information stored in cookies when you use or visit:… Websites and apps provided by other companies that use the Meta Products, including companies that incorporate Meta technologies into their websites and apps."  *Id*., Ex. 6 at 1.

In sum, the Complaint and documents subject to judicial notice and incorporated by reference make clear that Plaintiffs were on notice of the UWM and Facebook policies, and their use of the UWM Website constitutes further implicit consent.  Plaintiffs cannot survive a motion to dismiss by now asserting the conclusion that they lacked knowledge of such practices.  Nor can Plaintiffs defeat UWM's consent argument by pointing to their conclusory assertion that "Personal and Financial Information" shared by UWM with third parties exceeded the disclosures in UWM's Privacy Policy.  *Adams*, 355 F.3d at 1183 (conclusory allegations need not be accepted).  The only factual allegations about the information shared show that it is the very type of information addressed in UWM's Privacy Policy.  Compl. ¶¶ 41-51, 121.

In addition to Plaintiffs' consent that defeats all of their claims, many additional, separate flaws exist for their various claims, as detailed below.  *See infra* Sections B-F.

### B.    Plaintiffs Fail to State Claims for Negligence and Negligence Per Se (Claims 1 and 2).

Plaintiffs fail to allege facts sufficient to establish key elements of their negligence and negligence per se claims.  To state a negligence claim, a plaintiff must show: "(1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942, 959-60 (S.D. Cal. 2012).  The Complaint alleges that UWM breached its purported duty to keep their personal information confidential under either an ordinary standard of care, or under legal standards in the Gramm–Leach–Bliley Act (GLBA) and the FTC Act, Compl. ¶¶ 150-152, which allegedly caused Plaintiffs a collection of harms arising from the "improper disclosure" of the information at issue.  *See id*. ¶¶ 158, 164.  Their negligence theories fail for three distinct reasons.

First, Plaintiffs fail to allege that UWM owes Plaintiffs any duty to "safeguard" the

1   information at issue.  No special relationship giving rise to a duty exists where Plaintiffs were put

2   on notice in UWM's Privacy Policy of what information UWM collects and shares with third-

3   party service providers, meaning Plaintiffs therefore have no reasonable basis to expect their

4   information to be treated any differently than stated.  *Dyroff v. Ultimate Software Grp., Inc.*, 2017

5   WL 5665670, at *13-15 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) (website

6   has no special relationship with its users) (collecting cases).  Plaintiffs allege the conclusion,

7   without more, that UWM owed Plaintiffs a duty to "exercise reasonable care in handling and

8   using Plaintiffs'… Personal and Financial Information in its care and custody."  Compl. ¶ 150.

9   This is not enough to establish a duty; a mere conclusory statement like the one in Paragraph 150

10  cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 677-79.

11          Nor can Plaintiffs overcome their failure to establish the existence of a duty by alleging

12  "in the alternative" a negligence per se claim predicated on UWM's purported violations of legal

13  standards set by the Gramm-Leach-Bliley Act, the FTC Act, and some unidentified "state law."

14  Compl. ¶¶ 163-164.  Courts have found that neither the GLBA nor the FTC Act may support a

15  negligence per se claim.  *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d

16  884, 925 (S.D. Cal. 2023) (no negligence per se claim permitted based on GLBA); *Baton v.*

17  *Ledger SAS*, 740 F. Supp. 3d 847, 906–12 (N.D. Cal. 2024) (no negligence per se claim permitted

18  based on the FTC Act).  Plaintiffs' assertion that UWM violated its duty under a "state law" fares

19  no better.  Plaintiffs did not identify in their charging allegations any state law that would impose

20  a duty to support a negligence claim. Compl. ¶ 169.  And, as explained *infra*, Plaintiffs' other

21  state-law claims fail for many reasons.  Any negligence per se claim also must be dismissed

22  because "negligence per se is not a separate cause of action."  *Dent v. Nat'l Football League*, 968

23  F.3d 1126, 1130 (9th Cir. 2020); *Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *5

24  (N.D. Cal. Mar. 19, 2024).

25          Second, Plaintiffs' factual allegations do not establish the element of breach.  Plaintiffs

26  argue that UWM breached some duty by failing to supervise third parties and failing to use

27  reasonable measures that comply with applicable industry standards to protect their information.

28  Compl. ¶¶ 156, 169.  Plaintiffs point to the GLBA and the FTC Act as the source of the standards.

1  *Id.* ¶¶ 93, 98-99, 101.  But the Complaint does not identify what those industry standards are, let

2  alone plausibly allege facts to show how UWM failed to comply with either law.  To the contrary,

3  Plaintiffs' factual allegations about the limited technical information shared, consistent with

4  UWM's Privacy Policy, confirm that UWM did not breach any purported duty.

5      Third, the Complaint also lacks any factual allegations of any "nonspeculative, present

6  injury" to Plaintiffs—as would be required to state a negligence claim.  *Low v. LinkedIn Corp*.,

7  900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012).  Plaintiffs argue that they suffered damages,

8  including lost value of their information, lost time and money to mitigate effects of the use of

9  their information, and emotional distress.  Compl. ¶ 158.  Plaintiffs' allegations have again

10 missed the mark.  Courts within the Ninth Circuit have routinely found that general allegations

11 about loss of value of information, like those asserted by Plaintiffs, are insufficient to establish

12 damages for a negligence claim.  *Low*, 900 F. Supp. 2d at 1032 (dismissing negligence claim

13 because plaintiff has not alleged an "appreciable, nonspeculative, present" injury given that he

14 failed to allege "how he was foreclosed from capitalizing on the value of his personal data"); *B.K.*

15 *v. Eisenhower Med. Ctr*., 721 F. Supp. 3d 1056, 1069 (C.D. Cal. 2024), *on reconsideration in*

16 *part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (dismissing negligence claim based on "loss of

17 the value of [Plaintiffs'] Private information.").  What's more: Plaintiffs assert nothing more than

18 vague conclusions about their emotional distress and lost time and money.  *Medoff v. Minka*

19 *Lighting, LLC*, 2023 WL 4291973, at *9 (C.D. Cal. May 8, 2023) (dismissing negligence claims

20 because conclusory and vague allegations regarding emotional harms and speculative claims of

21 lost time are insufficient).

22      **C.      Plaintiffs Do Not State Any Statutory Privacy Claim (Claims 3, 5, 10, 11).**

23      In addition to Plaintiffs' consent discussed above, *supra* Section IV(A), Plaintiffs'

24 statutory privacy claims fail for multiple additional reasons as well.  The California

25 Comprehensive Data Access and Fraud Act (CDAFA) is an anti-hacking statute inapplicable to

26 Plaintiffs' allegations, and neither the CCPA, nor CIPA or ECPA, protects the type of information

27 that UWM allegedly captured and shared with third parties.

28

1             **1.**        **Plaintiffs Fail to Plausibly Allege Violation of the CDAFA (Claim 3).**

2           CDAFA is an "anti-hacking statute intended to prohibit the unauthorized use of any

3 computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v.*

4 *Phillips*, 2015 WL 8334793, at \*3 (C.D. Cal. Dec. 7, 2015). This case does not involve any

5 "hacking." Plaintiffs merely parrot language from the statute in alleging that UWM "knowingly

6 and without permission" "access[ed]" and "introduc[ed] a computer contaminant via trackers" on

7 Plaintiffs' devices to "tak[e], copy[], and us[e] Plaintiffs' and the Class Members' Personal and

8 Financial Information" in violation of several sections of the CDAFA. Compl. ¶¶ 178-179, 183;

9 *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (granting a

10 motion to dismiss where plaintiffs made only boilerplate allegations of CDAFA violations).

11           The Complaint fails to allege facts to show that UWM accessed or disrupted a computer

12 system "without permission" by overcoming or bypassing some technical barrier of Plaintiffs'

13 computers. Cal. Penal Code § 502. "To allege that a defendant acted without permission under

14 the [CFADA], a plaintiff must allege that the offending software was designed in such a way as to

15 render ineffective any barriers the Plaintiffs must wish to use to prevent access' to their

16 information." *Brodsky v. Apple Inc.*, 2019 WL 4141936, at \*9 (N.D. Cal. Aug. 30, 2019)

17 (dismissing CFADA claim for failure to plead how plaintiffs attempted to prevent the technology

18 at issue from having access to their information); *NovelPoster v. Javitch Canfield Grp.*, 140 F.

19 Supp. 3d 938, 950 (N.D. Cal. 2014) (explaining that parties act without permission when they

20 "circumvent[ ] technical or code-based barriers"). Because Plaintiffs have not identified any

21 technical or code-based barriers that the trackers on UWM's Website allegedly bypassed, or how

22 they attempted to prevent such trackers from obtaining their website data, they have not alleged

23 that UWM accessed their computer system "without permission" under the CDAFA. The

24 CFADA claim must be dismissed as a result.

25           The CFADA claim also fails because Plaintiffs fail to allege the requisite "damage or loss

26 by reason of a violation" of the CFADA. Cal. Penal Code § 502(e)(1). The CDAFA allows a

27 civil action to the owners or lessees of computers that "suffer[] damage or loss by reason of a

28 violation" and defines "[c]ompensatory damages [to] include any expenditure reasonably and

necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." *Id*. Plaintiffs allege that they were harmed because their data lost its protection and value, *see* Compl. ¶ 184(a), (c), (e).  But these allegations do not come close to alleging the kind of damage or loss sufficient to allege a violation of the CDAFA—*i.e*., an intrusion that impacted the performance or operation of computer devices, requiring expenditures to assess or rectify.  *See Cottle v. Plaid Inc*., 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing CDAFA claim because "the loss of the right to control [] own data, the loss of the value of [] data, and the loss of the right to protection of the data" is not "damage or loss within the meaning of the CDAFA."); *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023), *denying motion to certify appeal*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (same) (Orrick, J.).  Plaintiffs further allege that they were damaged because UWM "eroded the essential confidential nature of their relationship" and they "did not get the full value of the financial services for which they paid" because of the alleged loss of confidentiality, Compl. ¶ 184(b), (e).  But again, such allegations are insufficient as they do not allege any "expenditure" Plaintiffs "incurred" "to verify that a computer system…was or was not altered, damaged, or deleted by the access," as required by the statute. Cal. Penal Code § 502(e)(1).

> 2.    Plaintiffs Have Not Plausibly Alleged a Claim Under the California Consumer Privacy Act (CCPA) (Claim 5)**.**

Plaintiffs' CCPA claim fails for multiple independent reasons: (1) the information allegedly disclosed does not meet the CCPA definition of "Personal Information," (2) there was no data-security breach or failure to implement reasonable security measures, and (3) an exception for GLBA information exists in the CCPA.

As a threshold matter, the CCPA provides a private right of action only for a business's failure to implement reasonable security measures to protect "Personal Information."  The statute defines "Personal Information" in a particular way: as a person's name in combination with other specific types of information, including Social Security Number, a government ID number, account or credit/debit card number, medical information, health insurance information, and

1    biometric or genetic data. *See* Cal. Civ. Code § 1798.150(a); Cal. Civ. Code 1798.81.5(d)(1)(A);

2    *Tian v. Bank of Am., N.A.*, 2025 WL 1377767 at *2 (C.D. Cal. Apr. 2, 2025).

3        None of the information Plaintiffs allege to have been collected by the trackers on the

4    Website constitutes "Personal Information" as defined by the CCPA. *E,g.*, Compl. ¶ 121

5    ("through its use of Third Party trackers on its Website, [UWM] disclosed... information Plaintiffs

6    provided to UWM…, including each Plaintiff's: (a) [e]xisting user or Customer status; (b)

7    [b]rowsing activities, including the pages and content Plaintiffs viewed; (c) [l]ogin activities; (d)

8    [a]ctivities related to viewing their loans; (e) [t]he different types of statements they viewed; (f)

9    c_user cookie to identify a logged-in Facebook account; and (g) [i]nformation collected through

10   an Internet 'cookie' (or information collecting device from a web server)"; *see also id.* ¶ 215

11   (alleging that UWM violated the CCPA by "collecting, using and selling Plaintiffs' personal

12   information and location data to Third Parties" without providing consumers with notice).  The

13   Complaint does not even allege that Plaintiffs' names were disclosed by UWM, let alone any

14   other data elements required under the CCPA. *Id.*  Not even Plaintiffs' attempts to define

15   "Personal and Financial Information" broadly by substituting other definitions of "nonpublic

16   personal information" and "Personally identifiable financial information" from other sources

17   change this outcome. *Id.* ¶ 3 nn.3-4.  Plaintiffs must plead that "Personal Information" as

18   specifically defined under the **CCPA** is at issue to state a CCPA claim.  They fail to do so.

19       In addition, Plaintiffs fail to allege any facts showing a security breach or any failure to

20   use reasonable security measures on UWM's part. *See* Cal. Civ. Code 1798.150(a)(1).

21   Allegations that do "not allege sufficient facts to establish how or why [defendant]'s systems

22   were inadequate or unreasonable or how or why [defendant] knew or should have known its

23   systems were inadequate or unreasonable" fail to state a viable CCPA claim.  *Griffey v. Magellan*

24   *Health Inc*., 562 F.Supp.3d 34, 57 (D. Ariz. 2021) (applying California law and finding assertion

25   that "because there was a breach, [defendant]'s data security was inadequate" insufficient to state

26   a CCPA claim).  Here, the Complaint alleges only that UWM collected, used, and sold personal

27   information without providing consumers with notice and failed to abide by requests to delete

28   collected personal information.  Compl. ¶¶ 215-217.  The Complaint challenges UWM's practices

14

1  of alleged sharing, not a data breach or a failure on UWM's part to implement and maintain

2  reasonable security procedures and practices.  *Tian*, 2025 WL 1377767, at *2.

3  　　　　Third, Plaintiffs concede in the Complaint that "UWM is a financial institution, as that

4  term is defined by Section 509(3)(A) of the GLBA," Compl. ¶ 20, and therefore "is subject to the

5  GLBA," *Id.* ¶ 91.  The CCPA expressly carves out an exemption for information that is subject to

6  the GLBA.  Cal. Civ. Code § 1798.145(e) ("This title shall not apply to personal information

7  collected, processed, sold, or disclosed subject to the federal Gramm-Leach-Bliley Act (Public

8  Law 106-102)").  Plaintiffs thus have no legal basis for any claim that UWM purportedly failed to

9  comply with the CCPA.

10　　　　　　　　3.　　Plaintiffs Fail to Plausibly Allege a Violation under CIPA or ECPA
　　　　　　　　　　　(Claims 10 and 11)**.**

11

12　　　　The Complaint alleges no facts that would support its conclusory assertion that UWM

13  violated CIPA Sections 631 and 632, and the ECPA (18 U.S.C. § 2511) by "aiding… [t]hird

14  parties to learn the contents of communications" and "recording … confidential communications"

15  without Plaintiffs' consent.  Compl. ¶ 260.  Plaintiffs' CIPA Section 631 and ECPA claims fail

16  because UWM is a party to the communications with Plaintiffs, and because Plaintiffs do not

17  allege the interception of any "contents" (as required to find a violation of either statute).

18  Plaintiffs' CIPA Section 631 claim also fails because they do not allege any intent or knowledge

19  on UWM's part about any third parties' allegedly unlawful conduct.  Plaintiffs' CIPA Section 632

20  claim fails because that section does not provide for derivative liability, and Plaintiffs have not

21  alleged that UWM directly eavesdropped upon or recorded any purportedly "confidential"

22  communications.

23　　　　　　　　　a.　　*Plaintiffs fail to state a claim under the ECPA or CIPA Section
　　　　　　　　　　　　631(a).*

24　　　　Section 631(a) is a wiretapping statute that targets the "secret monitoring" of

25  conversations by third parties.  *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985).  ECPA similarly

26  makes it unlawful for a person to "intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ]

27  any other person to intercept or endeavor to intercept, any wire, oral, or electronic

28

communication." 18 U.S.C. § 2511(1)(a). Violations of CIPA Section 631 and violations of ECPA are analyzed under the same standards, 18 U.S.C § 2510 et seq.; *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). To plead a violation of Section 631(a) or ECPA, Plaintiffs must allege facts sufficient to show that UWM engaged in: (1) intentional wiretapping; (2) willfully reading "the contents or meaning" of a communication "in transit" over a wire without their consent; (3) attempting to use or communicate information obtained as a result of engaging in either of the previous two activities; or (4) aiding, agreeing with, employing, or conspiring with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things in one of the first three clauses. Cal. Penal Code § 631(a); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).

As a party to the communication, UWM's consent to the data-sharing at issue is a complete defense to Plaintiffs' claim under ECPA, a one-party consent statute. *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). UWM did not violate the first three clauses of Section 631(a) because UWM was an intended recipient of the communications at issue.[4] Subsections b and c, *infra*, detail the independent reasons Plaintiffs' allegations under the fourth clause of Section 631(a) fail and an additional reason their ECPA claim fails.

        b.    *Plaintiffs fail to allege that UWM "read or attempt[ed] to read" the "contents" of any of their electronic communications.*

Both CIPA Section 631(a) and ECPA require the interception of "contents" of a communication to state a claim. The Complaint contains no plausible factual allegations showing that UWM or its third-party service providers read or attempted to read the "contents or meaning"

---

Plaintiffs do not allege wiretapping under the first clause of Section 631(a). Nor could they: that clause is limited to intentional wiretapping arising from the use of the telephone or wires. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135-36 (E.D. Cal. 2021). Plaintiffs also cannot plausibly allege that UWM violated Section 631(a)'s second clause because, in the Ninth Circuit, courts repeatedly have held that a party to the communication at issue cannot violate that clause, and UWM is a party to the communication because Plaintiffs allegedly visited UWM's Website to manage their mortgages. Compl. ¶¶ 106, 110; *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744-45 (N.D. Cal. 2023); *Graham*, 533 F. Supp. 3d at 832. The third clause of Section 631(a) governs use of information obtained in violation of clauses one and two; because UWM did not violate clauses one or two, it also cannot have violated the third clause.

1    of a communication within the meaning of Section 631(a) or the ECPA.  The "contents" of a

2    communication is defined as "the substance, purport or meaning of [an alleged] communication,"

3    18 U.S.C. § 2510.  That is, it refers to the "intended message conveyed by the communication,"

4    as distinct from "record information regarding the characteristics of the message that is generated

5    in the course of [that] communication."  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir.

6    2014) (addressing ECPA); *see also Hammerling*, 615 F. Supp. 3d at 1093 (holding that analysis

7    of the "contents" of a communication for a CIPA violation is the same as for the ECPA);

8    *Graham*, 533 F. Supp. 3d at 833 (the "'contents' of a communication under CIPA and the

9    [ECPA] are the same").  Courts have held that the "substance, purport, or meaning" of a

10   communication includes chat transcripts or URLs that reveal sensitive personal information or

11   search terms.  *E.g.*, *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 943 (S.D. Cal. 2024); *Byars v.*

12   *Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (full transcripts of

13   consumer chat containing sensitive personal information were "contents").  By contrast, record

14   information—which does not constitute "contents" and therefore is not within the scope of

15   Section 631(a) or ECPA—includes, among other things, "a person's name [and] address" as well

16   as "pages viewed … the date and time of the visit… Plaintiff's IP address… location… browser

17   type, and the operating system…."  *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082-83

18   (C.D. Cal. 2021); *see also Hammerling*, 615 F. Supp. 3d at 1092-93 (citing *Zynga*, 750 F.3d at

19   1104, 1108-09).

20          Neither UWM nor its third-party service providers read or attempt to read or learn the

21   "contents" of Plaintiffs' communications.  The Complaint alleges that the following types of

22   information belonging to Plaintiffs were shared: "Existing user or Customer status; [b]rowsing

23   activities, including the pages and content Plaintiffs viewed; [l]ogin activities; [a]ctivities related

24   to viewing their loans; [t]he different types of statements they viewed; [u]ser cookie to identify a

25   logged-in Facebook account; and [i]nformation collected through an Internet "cookie" (or

26   information collecting device from a web server)."  Compl. ¶ 121(g).  These categories of

27   information—which amount to nothing more than Plaintiffs' login activities, Website navigation,

28   pages viewed, Facebook account connection—are routine information automatically generated in

the course of Website usage that courts within the Ninth Circuit have held to be "record information" not subject to Section 631 or ECPA, rather than the substantive "contents" of a communication. *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, …page navigation, changes to visual elements in the browsers, network requests" are more akin to the "record" information that the Ninth Circuit has held not to be contents of a communication); *Yoon*, 549 F. Supp. 3d at 1082 (noting that Section 631(a) "protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not" and finding that "pages viewed" does not constitute content). Plaintiffs further allege that UWM "disclosed details about… interactions with UWM's website as users applied for or managed their mortgages, including…the Customer's refinancing options and the user's selections, the state in which the property was located, type of property, and the reason the customer was seeking to refinance." Compl. ¶ 271. These allegations, too, are insufficient as the Complaint contains no allegations that this information was entered by users in any way other than through button selection. Once more, this type of information is insufficient to establish the requisite "contents" where it is collected and shared via button clicks. *Mikulsky*, 713 F. Supp. 3d at 845; *King v. Hard Rock Cafe Int'l* (USA), Inc., 2025 WL 1635419, at *7 (E.D. Cal. June 9, 2025). Plaintiffs' CIPA Section 631(a) and ECPA claims therefore fail because they have failed to allege that anything other than "record information"—not covered by CIPA or ECPA—was allegedly collected and shared by UWM.

c.    *Plaintiffs fail to allege facts showing that UWM "aided" or "conspired" with third parties.*

Plaintiffs also fail to state a claim against UWM under Section 631(a) because they do not allege facts to show UWM "aid[ed], agree[d] with, employ[ed], or conspire[d]" with third parties to commit an underlying violation. Under California criminal law, "aiding" a violation requires showing that UWM had knowledge of "the unlawful purpose of the perpetrator and" intended to help the other accomplish that purpose." *People v. Lee*, 31 Cal. 4th 613, 619, 624 (2003) (defendant must "give such aid or encouragement with knowledge of the criminal purpose" and "with an intent or purpose either of committing, or of encouraging or facilitating the commission

1  of, the crime in question") (internal quotation marks omitted).  Courts have found that these

2  principles apply equally to claims brought under Section 631(a).  *E.g., Rodriguez v. Ford Motor*

3  *Co*., 2024 WL 1223485, at *14 (S.D. Cal. Mar. 21, 2024); *Esparza v. UAG Escondido A1 Inc*.,

4  2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *Heiting v. Taro Pharms. USA, Inc*., 709 F.

5  Supp. 3d 1007, 1015 (C.D. Cal. 2023); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942

6  (N.D. Cal. 2024).

7      Plaintiffs do not allege facts supporting any of these elements.  At most, they repeat the

8  conclusory assertion that UWM purportedly "aid[ed]" third parties to intercept their electronic

9  communications.  Compl. ¶¶ 260, 262.  No factual allegations in the Complaint plausibly

10  establish that UWM knew that third parties allegedly intended to violate Section 631(a).  Nor do

11  Plaintiffs' allegations show that UWM agreed with, much less intended to help accomplish, any

12  third parties' improper access to and use of Plaintiff's information in violation of Section 631(a).

13  Plaintiffs accordingly fail to state a claim against UWM for violating the fourth clause of Section

14  631(a).  *Smith*, 754 F. Supp. 3d at 943.

15              d.    *Plaintiffs' CIPA Section 632 claim fails.*

16      Plaintiffs' Section 632 claim suffers from two independent deficiencies, too.  First,

17  Plaintiffs do not allege facts sufficient to show that the information at issue comprises

18  "confidential communications" as used in Section 632.  A communication is confidential under

19  Section 632 only if a party has "an objectively reasonable expectation that the conversation is not

20  being overheard or recorded."  *Rodriguez*, 2021 WL 2026726, at *7 (citing *Flanagan v.*

21  *Flanagan*, 27 Cal. 4th 766, 776–77 (2002)).  This, in turn, depends on the context of the "actual

22  conversation, not its content."  *Flanagan*, 27 Cal. 4th at 774.  Multiple federal courts in California

23  have held that commercial "Internet-based communications are not 'confidential' within the

24  meaning of Section 632, because such communications can easily be shared."  *Swarts v. Home*

25  *Depot, Inc*., 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (dismissing Section 632 claim where the

26  plaintiff claimed her "confidential" chat conversation over the Internet was recorded by Home

27  Depot's third-party service provider); *see also Rodriguez*, 2021 WL 2026726, at *7 (dismissing

28  Section 632 claim based on communications with third-party apps); *Revitch v. New Moosejaw,*

UWM MOTION TO DISMISS
NO. 3:25-CV-05377-WHO

1    *LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (dismissing Section 632 claim based on

2    Internet-based browsing activity and form field entries); *Campbell v. Facebook Inc.*, 77 F. Supp.

3    3d 836, 849 (N.D. Cal. 2014) (dismissing Section 632 claim where plaintiffs failed to allege facts

4    that their social media messages on Facebook were "confidential" under the statute).

5         Here, Plaintiffs fail to allege facts that show the information in their "internet-based"

6    communications with the UWM Website were "confidential" under Section 632.  For example,

7    although Plaintiffs allege (without support) that UWM transmits information about what pages a

8    generic "user" may be viewing on the website, including pages relating to mortgage statements,

9    even that information only relates to browsing activity like "events [that] report that the user

10   visited the particular page."  Compl. ¶ 70; *see also id.* ¶ 97 (same); ¶¶ 105-110 (alleging Plaintiffs

11   viewed payments and managed mortgages but failing to allege what "confidential" information

12   beyond browsing activity was recorded).  That type of event information is exactly the kind of

13   "internet-based communication" that courts have found not to be confidential for purposes of

14   Section 632. *See, e.g.*, *Revitch*, 2019 WL 5485330, at *3; *Campbell*, 77 F. Supp. 3d at 849;

15   *Rodriguez*, 2021 WL 2026726, at *7.  The Complaint's remaining allegations in this context

16   consist of vague conclusions, unsupported by any facts.  *See, e.g.*, Compl. ¶ 261 (alleging that

17   Plaintiffs had a reasonable expectation of privacy based on statutory and common law that UWM

18   would safeguard unspecified personal and financial information).  These allegations are not

19   enough to make the information at issue "confidential" under Section 632.

20        Second, Plaintiffs conclusorily allege only that "others (including Facebook)…secretly

21   record the contents of Plaintiffs' and Class Members' wire communications" and further vaguely

22   allege that UWM is liable for assisting third parties' purported interception of the

23   communications at issue.  *See Id.* ¶¶ 262, 264.  Their Section 632 claim is thus based entirely on

24   UWM's alleged derivative liability for assisting third parties in violating the statute.  However,

25   the "aiding" liability language found in Section 631(a), clause 4 is absent from Section 632.

26   Under the doctrine of avoiding surplusage, the best reading of the statute is therefore that Section

27   632 does not provide for the same derivative liability as Section 631(a).  *See Abbie v. Shasta*

28   *Cnty.*, 2023 WL 4274135, at *5 n.3 (E.D. Cal. June 29, 2023) (a statute should not be interpreted

1    in a way that would render statutory language surplusage). And even if Section 632 did permit

2    Plaintiffs to bring a claim against UWM for allegedly aiding and abetting third parties' purported

3    violation of Section 632, this claim would necessarily fail for the same additional reasons that

4    Plaintiffs' aiding and abetting claim under Section 631(a) fails—*i.e.*, Plaintiffs' allegations do not

5    plausibly establish that UWM knew of, much less intended to help accomplish, third parties'

6    purported eavesdropping or recording of their allegedly confidential information in violation of

7    Section 632. *Supra* Section IV(C)(3)(c).

8       **D.     Plaintiffs' Breach of Contract, Unjust Enrichment, and Breach of Confidence
               Claims Fail (Claims 6, 7, and 9).**

9

10      Plaintiffs' breach of contract, unjust enrichment and breach of confidence claims are all

11   predicated on the notion that UWM breached an express or implied contract (the Privacy Policy)

12   with Plaintiffs by allegedly failing to safeguard and protect what Plaintiffs call their "Personal

     and Financial Information." Compl. ¶¶ 222-235. To the contrary, the Privacy Policy describes

13   the limited, technical information that UWM collects and shares (with a prohibition on further

14   disclosure), all of which Plaintiffs consented to. *See id.* ¶ 76; *see also* Compl., Ex. B at 2-3

15   (providing non-exhaustive list of information that may be collected on UWM website); *see also*

16   *id.* at 3-5 (How Information Is Collected; Security; Web Technologies). Plaintiffs do not, and

17   cannot, plausibly allege any breach of that express agreement where the Complaint fails to allege

18   facts that any "personal information" was collected or shared or that UWM's practices were

19   contrary to the actual language in UWM's Privacy Policy. *E.g.*, Compl. ¶¶ 221-225; *see also*

20   *supra* Section IV(C)(2). Nor can Plaintiffs use an implied contract or unjust enrichment theory to

21   expand the terms of the Privacy Policy. *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l*

22   *Inc.*, 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015) ("…there is no cause of action for implied contract

23   'where there exists between the parties a valid express contract covering the same subject

24   matter.'") (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014)).

25      Additional defects exist for these claims as well. Plaintiffs plead no cognizable theory of

26   damage based on breach of contract. They allege only that they generally have "sustained" actual

27   damages and losses, Compl. ¶ 226, but they have not alleged facts to establish—as they must—a

28

"reasonabl[e] expect[ation] that they would be compensated for the 'value' of their personal information." *Low*, 900 F. Supp. at 1029. And Plaintiffs are precluded as a matter of law from bringing their unjust enrichment and breach of confidence claims, both of which are based on an implied or quasi-contract theory. *Gerlinger v. Amazon.com, Inc*., 311 F.Supp.2d 838, 856–57 (N.D.Cal.2004); *Berkla v. Corel Corp*., 302 F.3d 909, 918 (9th Cir. 2002). Such theories "cannot be imposed, however, where there is already a valid, express contract defining the rights of the parties; the two are mutually exclusive." *MP Nexlevel of Cal., Inc. v. CVIN, LLC*, 2014 WL 3057522, at *4 (E.D. Cal. July 7, 2014) (citing *Berkla*, 302 F.3d at 918; *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp*., 96 F.3d at1153, 1167 (9th Cir. 1996)). As a result, Plaintiffs claims for unjust enrichment or breach of confidence "cannot lie where a valid express contract covering the same subject matter exists between the parties." *Gerlinger*, 311 F.Supp.2d at 856–57 (plaintiff cannot bring a claim for unjust enrichment while relying on the existence of a valid contract to establish standing); *see also Berkla*, 302 F.3d at 918 (tort remedies under plaintiff's breach of confidence claim are unavailable because plaintiff recovered on his express breach of contract claim).

In addition, Plaintiffs' breach of confidence claim would fail in any event because they do not allege that any "confidential and novel information" was shared with UWM. To state a claim for breach of confidence, Plaintiffs must demonstrate that: (1) they conveyed "confidential and novel information" to UWM; (2) UWM had knowledge that the information was being disclosed in confidence; (3) there was an understanding between UWM and Plaintiffs that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding. *Entm't Rsch. Grp.,* 122 F.3d at 1227 (citing *Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co*., 168 Cal. App. 3d 455, 462 (1985). As UWM's Privacy Policy makes clear, however, the basic technical information UWM discloses to third parties is neither "confidential" nor "novel." *Enm't Rsch. Grp.,* 122 F.3d at 1227. Plaintiffs' threadbare allegations state that certain website information, such as the fact that a user was on a certain page or that a user clicked certain buttons, was purportedly collected and shared. *E.g.*, Compl. ¶¶ 4, 121. Plaintiffs' allegations surrounding the remaining elements largely comprise conclusions that UWM somehow shared information with third parties inconsistent with UWM's Privacy Policy. *See, e.g.*, *id.* ¶¶ 7, 13, 45, 71, 79. Those

allegations do not come close to approaching the standards that Plaintiffs must meet to state a plausible claim for relief and avoid dismissal.

### E.    Plaintiffs Have Not Alleged Facts Sufficient to State A Plausible Claim for Unfair Competition (Claim 4).

Plaintiffs' factual allegations do not state any UCL violation either.  The UCL has three prongs, covering unlawful, unfair, or fraudulent conduct.  Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999).

As to the unlawful prong, Plaintiffs allege that UWM violated the UCL by collecting and sharing Plaintiffs' information with third parties without their consent in violation of CIPA, CDAFA, and the California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1770), Compl. ¶¶ 90, 98, 191.  UWM's fully disclosed, limited data collection practices are not unlawful under any common or statutory law, including CIPA, ECPA, or the CDAFA as explained *supra* Section IV(C).  *Id.*  As for the CLRA, "[w]hen CLRA ... and UCL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at issue."  *Tabler v. Panera LLC*, 2020 WL 3544988, at *6 (N.D. Cal. June 30, 2020) (*quoting Kearns v. Ford Motor* Co., 567 F.3d 1120, 1126 (9th Cir. 2009)).  Plaintiffs, without more, assert a conclusion that merely recites the statutory elements: that UWM "represented that its services have characteristics, uses, or benefits that they do not have and represented that its services are of a particular standard, quality, or grade when they were not, in violation of [the CLRA]."  Compl. ¶ 193.  As explained *supra*, contrary to Plaintiffs' assertions, UWM's Terms and Privacy Notice disclose UWM's data collection and sharing practices.  Plaintiffs fail to allege facts about any information shared beyond what is disclosed in UWM's Privacy Notice, as would be required under Rule 9(b).  Their conclusory statements therefore fail to plausibly allege any misrepresentation by UWM.  Because Plaintiffs cannot establish a violation of the underlying statutes, their unlawful prong UCL claim fails as well.  *Hammerling*, 615 F. Supp. 3d at 1094 (dismissing UCL claim when invasion of privacy claims on which UCL claim was premised fail).  And the same Rule 9(b) failure dooms any claim under the deceptive prong of the UCL.

23

1      The Complaint's factual allegations also do not support a claim under the unfair prong of

2  the UCL.  Plaintiffs rely on the three theories of unfairness: (1) substantial, unavoidable injury

3  from the alleged practices, not outweighed by countervailing consumer or competitive benefits;

4  (2) the practices are immoral and the utility of the conduct does not outweigh the gravity of the

5  harm; and (3) the practices run afoul of specific public policy reflected in the law.  *See Camacho*

6  *v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394 (2006); *Drum v. San Fernando Valley Bar Ass'n*,

7  182 Cal. App. 4th 247, 257 (2010); Compl. ¶¶ 199-201.  Plaintiffs do not, and cannot, allege facts

8  establishing ***any*** injury or harm from the alleged collection and sharing of technical information

9  by UWM, let alone substantial injury.  Plaintiffs also fail to plausibly assert any violation of

10 relevant public policy stated in the law, other than the inapplicable ones discussed *supra* to

11 support their claim.  *Garcia v. Sony Computer Entm't. Am., LLC*, 859 F. Supp. 2d 1056, 1066

12 (N.D. Cal. 2012) (dismissing UCL claim under unfair prong because plaintiff identifies no

13 legislative policy beyond those the Court already found inapplicable).

14      Plaintiffs' UCL claim also fails for two additional, independent reasons.  The UCL limits

15 standing to those who have "suffered injury in fact and ha[ve] lost money or property as a result

16 of ... unfair competition."  Cal. Bus. & Prof. Code § 17204; *Katz-Lacabe v. Oracle Am., Inc*., 668

17 F. Supp. 3d 928, 943 (N.D. Cal. 2023).  Plaintiffs allege no facts showing such injury.  Courts

18 have found the alleged property interest in Plaintiffs' information, Compl. ¶ 205, not to constitute

19 economic injury for UCL standing purposes.  *Katz-Lacabe*, 668 F. Supp. 3d at 943 (finding that

20 the misappropriation of personal information does not constitute economic injury for UCL

21 standing purposes.); Cal. Bus. & Prof. Code § 17204.  In addition, Plaintiffs cannot pursue

22 equitable relief—the only relief available under the UCL—in federal court where they do not and

23 cannot claim the legal remedies of their other claims would be inadequate if they prevailed.

24 *Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1103, 1127 (E.D. Cal. 2022); *Chen v.*

25 *JPMorgan Chase Bank, N.A*., 745 F. Supp. 3d 1025, 1035 (C.D. Cal. 2024).  For these reasons,

26 the Court should dismiss Plaintiffs' UCL claim.

27

28

1

**F.    Because All Other Claims of Plaintiffs Fail, Plaintiffs' Declaratory Judgment Claim Necessarily Fails (Claim 8).**

2

3

Plaintiffs also assert a cause of action for relief under the Declaratory Judgment Act.  That

4

Act "does not provide an independent theory for recovery; if the underlying claims are dismissed,

5

... then there is no basis for any declaratory relief."  *Hammerling*, 615 F. Supp. 3d at 1097.

6

Because all other claims fail, Plaintiffs' declaratory judgment claim must fail as well.

7

**V.    <u>CONCLUSION</u>**

8

For the reasons stated, UWM requests that the Court grant its Motion to Dismiss

9

Plaintiffs' Complaint entirely with prejudice, without leave to amend.

10

Dated: August 22, 2025                              O'MELVENY & MYERS LLP

11

12

By:    */s/ Randall W. Edwards*
               Randall W. Edwards

13

Attorneys for Defendant
United Wholesale Mortgage, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28