1   RANDALL W. EDWARDS (C.S.B. #179053)
    redwards@omm.com
2   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
3   San Francisco, California 94111-3823
    Telephone:   +1 415 984 8700
4

5   DAVID MARROSO (C.S.B. #211655)
    dmarroso@omm.com
    REBECCA A. GIROLAMO (C.S.B. #293422)
6   bgirolamo@omm.com
    O'MELVENY & MYERS LLP
7   1999 Avenue of the Stars, 8th Floor
    Los Angeles, California 90067-6035
8   Telephone:   +1 310 553 6700

9   REEMA SHAH (*pro hac vice*)
    rshah@omm.com
10   O'MELVENY & MYERS LLP
    1301 Avenue of the Americas, 17th Floor
11   New York, New York 10019
    Telephone:   +1 212 326 2000
12

13   Attorneys for Defendant
    United Wholesale Mortgage, LLC

14

15 <center>**UNITED STATES DISTRICT COURT**</center>

<center>**NORTHERN DISTRICT OF CALIFORNIA**</center>

16

| | |
|---|---|
| ETHAN ALLISON, and MARK CALOCA, individually and on behalf of all others similarly situated, | Case No. 3:25-cv-05377-WHO<br><br>CLASS ACTION<br><br>**UNITED WHOLESALE MORTGAGE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Judge: William H. Orrick<br>Date: December 3, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2 – 17th Floor<br><br>Complaint Filed: June 26, 2025<br>Trial Date: Not set |
| Plaintiff, | |
| v. | |
| UNITED WHOLESALE MORTGAGE, | |
| Defendant. | |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 3, 2025 at 2:00 p.m., before the Honorable William Orrick of the United States District Court for the Northern District of California, Courtroom 2, 450 Golden Gate Avenue, San Francisco, CA 94102, United Wholesale Mortgage, LLC, will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the amended complaint with prejudice.  The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration of Randall Edwards; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

Dated: September 26, 2025        O'MELVENY & MYERS LLP

By:     */s/ Randall W. Edwards*
              Randall W. Edwards

Attorneys for Defendant
United Wholesale Mortgage

**TABLE OF CONTENT**

Page(s)

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

    A.      UWM's Website and Terms ..................................................................... 3

    B.      Plaintiffs' Allegations ............................................................................... 4

III.    LEGAL STANDARD ......................................................................................... 5

IV.     ARGUMENT ...................................................................................................... 5

    A.      All of Plaintiffs' Claims Fail Because UWM Disclosed, and Plaintiffs
           Consented to, the Sharing of Their Information With Third Parties..................... 5

    B.      Plaintiffs Fail to State a Claim for Negligence (Claim 1). ...................... 8

    C.      Plaintiffs Do Not State Any Statutory Privacy Claim (Claims 2, 4, 9, 10,
           11, 12, 13). ............................................................................................... 10

          1.      Plaintiffs Fail to Plausibly Allege Violation of the CDAFA (Claim
                  2). ................................................................................................. 10

          2.      Plaintiffs Have Not Plausibly Alleged a Claim Under the CCPA
                  (Claim 4). ................................................................................... 11

          3.      Plaintiffs Fail to Plausibly Allege a Violation under CIPA Sections
                  631 and 632 or ECPA (Claims 9, 10, 12, and 13)..................................... 13

               a.      Plaintiffs fail to state a CIPA Section 631(a) or ECPA claim. ..... 13

               b.      Plaintiffs fail to allege that UWM read or divulged the
                    "contents" of communications, as required by CIPA Section
                    631 and ECPA............................................................................ 15

               c.      Plaintiffs fail to allege facts showing that UWM "aided" or
                    "conspired" with third parties, as required by the fourth clause
                    of Section 631(a). ...................................................................... 17

               d.      Plaintiffs fail to allege facts showing that UWM is an
                    "electronic communications service [provider]," as required
                    by ECPA Section 2511(3)(a). .................................................... 17

               e.      Plaintiffs' CIPA Section 632 claim fails because the allegedly
                    shared information is not "confidential" and because no
                    derivative liability exists under this provision. ............................ 18

          4.      Plaintiffs' CIPA Section 638.51 Claim Fails Because UWM Did Not
                  Use Any Pen Register or Trap and Trace Device (Claim 11)................... 20

    D.      Plaintiffs' Breach of Contract, Unjust Enrichment, and Breach of
           Confidence Claims Fail (Claims 5, 6, and 8). ....................................... 22

    E.      Plaintiffs Have Not Alleged Facts Sufficient to State a Plausible Claim for
           Unfair Competition (Claim 3). ............................................................... 24

    F.      Because All Other Claims of Plaintiffs Fail, Plaintiffs' Declaratory
           Judgment Claim Necessarily Fails (Claim 7)......................................... 25

V.      CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbie v. Shasta Cnty.*,
2023 WL 4274135 (E.D. Cal. June 29, 2023) ........................................................ 20

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ....................................................................... 5, 8

*Allen v. Shutterfly, Inc.*,
2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ............................................................. 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 5, 9

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) .................................................... 21, 22

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ................................................................. 9

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) ......................................................................... 23

*Boone v. Amazon.com Servs., LLC*,
562 F. Supp. 3d 1103 (E.D. Cal. 2022) ................................................................ 25

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ........................................................... 10

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ................................................................ 15

*Caldwell v. Caldwell*,
2006 WL 618511 (N.D. Cal. Mar. 13, 2006) ............................................................. 3

*Camacho v. Auto. Club of S. Cal.*,
142 Cal. App. 4th 1394 (2006) ....................................................................... 25

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ................................................................. 19

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) ..................................................... 21

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .............................................................................. 24

*Chen v. JPMorgan Chase Bank, N.A.*,
745 F. Supp. 3d 1025 (C.D. Cal. 2024) ................................................................ 25

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................ 11

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ................................................................ 18

*Custom Packaging Supply, Inc. v. Phillips*,
  2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ........................ 10

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010)........................................ 5

*DeSoto v. Yellow Freight Sys., Inc.*,
  957 F.2d 655 (9th Cir. 1992)........................................ 5

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ............................ 11

*Dyroff v. Ultimate Software Grp., Inc.*,
  2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ........................ 9

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997)................................... 6, 23

*Esparza v. Kohl's, Inc.*,
  723 F. Supp. 3d 934 (S.D. Cal. 2024) ............................ 15

*Esparza v. UAG Escondido A1 Inc.*,
  2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........................ 17

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011)....................................... 5

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) ........................................... 18

*Garcia v. Sony Computer Ent. Am., LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ............................ 25

*Gerlinger v. Amazon.com, Inc.*,
  311 F. Supp. 2d 838 (N.D. Cal. 2004) ............................ 23

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................ 10

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................... 14, 15

*Griffey v. Magellan Health Inc.*,
  562 F.Supp.3d 34 (D. Ariz. 2021)................................. 13

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................... 13, 15, 24, 25

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023)............................ 17

*Herguan Univ. v. Immigr. & Customs Enf't*,
  258 F. Supp. 3d 1050 (N.D. Cal. 2017) ............................. 7

*Hernandez v. Path, Inc.*,
2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ........................................................................ 18

*Hodsdon v. Mars, Inc.*,
162 F. Supp. 3d 1016 (N.D. Cal. 2016) .................................................................................. 6

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .................................................................................. 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................................................................................................. 6

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................................................... 8

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................................... 14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................................................. 14, 15, 17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................................................. 25

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .............................................................................................. 24

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................................................. 5

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) .................................................................. 16, 19

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .................................................................................. 6

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ............................ 20

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................................ 9, 23

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................................................ 14

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ...................................................................... 18

*Medoff v. Minka Lighting, LLC*,
2023 WL 4291973 (C.D. Cal. May 8, 2023) ........................................................................ 10

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .................................................................................. 16

*MP Nexlevel of Cal., Inc. v. CVIN, LLC,*
    2014 WL 3057522 (E.D. Cal. July 7, 2014) ...................................................... 23

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001).......................................................................... 5

*NovelPoster v. Javitch Canfield Grp.,*
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .......................................................... 10

*Palacios v. Fandom, Inc.,*
    No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025)........................................ 21

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.,*
    96 F.3d 1153 (9th Cir. 1996)......................................................................... 23

*People v. Lee,*
    31 Cal. 4th 613 (2003) ................................................................................. 17

*Revitch v. New Moosejaw, LLC,*
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ............................................... 19

*Ribas v. Clark,*
    38 Cal. 3d 355 (1985) .................................................................................. 13

*Rodriguez v. Ford Motor Co.,*
    2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) ............................................... 17

*Rodriguez v. Google LLC,*
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................... 14, 18, 19

*Rodriguez v. Plivo Inc.,*
    2024 WL 5184413 (Cal. Super. Ct. Oct. 02, 2024) ........................................ 21

*Rutherford Holdings, LLC v. Plaza Del Rey,*
    223 Cal.App.4th 221 (2014) ......................................................................... 22

*Sanchez v. Cars.com Inc.,*
    2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) .......................................... 20

*Shwarz v. United States,*
    234 F.3d 428 (9th Cir. 2000).......................................................................... 7

*Silver v. Stripe Inc.,*
    2021 WL 3191752 (N.D. Cal. July 28, 2021) ................................................ 7

*Smith v. YETI Coolers, LLC,*
    754 F. Supp. 3d 933 (N.D. Cal. 2024) .......................................................... 17

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.,*
    83 F. Supp. 3d 855 (N.D. Cal. 2015) ........................................................... 22

*Tabler v. Panera LLC,*
    2020 WL 3544988 (N.D. Cal. June 30, 2020) ............................................... 24

*Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co.*,
168 Cal. App. 3d 455 (1985) ................................................................................ 23

*Tian v. Bank of Am., N.A.*,
2025 WL 1377767 (C.D. Cal. Apr. 2, 2025) ............................................... 12, 13

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ................................................................................. 7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................ 15, 16

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ................................................... 19

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................................... 14

**Statutes**

18 U.S.C. § 2510 ............................................................................................................. 15

18 U.S.C. § 2510 *et seq.* ................................................................................................. 14

18 U.S.C. § 2510(15) ...................................................................................................... 17

18 U.S.C. § 2511(1) ........................................................................................................ 13

18 U.S.C. § 2511(1)(a) .................................................................................................... 13

18 U.S.C. § 2511(3)(a) .............................................................................................. 13, 17

Cal. Bus. & Prof. Code § 17200 .................................................................................... 24

Cal. Bus. & Prof. Code § 17204 .................................................................................... 25

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................................ 3

Cal. Civ. Code § 1770 .................................................................................................... 24

Cal. Civ. Code § 1798.145(e) ........................................................................................ 13

Cal. Civ. Code § 1798.150(a) ........................................................................................ 12

Cal. Civ. Code § 1798.150(a)(1) .................................................................................... 12

Cal. Civ. Code § 1798.81.5(d)(1)(A) ............................................................................ 12

Cal. Civ. Code §§ 1798.100 *et seq.* ................................................................................. 1

Cal. Penal Code § 502 ........................................................................................... 1, 6, 10

Cal. Penal Code § 502(e)(1) ........................................................................................... 11

Cal. Penal Code § 631(a) ................................................................................................. 6

Cal. Penal Code § 632 ...................................................................................................... 6

Cal. Penal Code § 638.52(d)(1) ..................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

Cal. Penal Code § 638.52(d)(3)................................................................................... 21

**Other Authorities**

S.Rep. No. 99–541 (1986), *reprinted* in 1986 U.S.C.C.A.N. 3555, 3568 ..................................... 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Amended Complaint ("AC") against United Wholesale Mortgage, LLC ("UWM") continues to make sweeping privacy, anti-hacking, and anti-wiretapping claims, but their claims are still untenable given judicially noticeable facts, Plaintiffs' own factual allegations, and clear legal authorities. Plaintiffs allege the UWM Website (www.uwm.com) uses certain trackers that purportedly collect and disclose Plaintiffs' "personal and financial" information to third parties without Plaintiffs' consent. But the factual allegations show the limited information collected and shared via the UWM Website is not the kind protected under the law. In addition, both Plaintiffs consented to UWM's Privacy Policy, which clearly describes UWM's practices related to the collection and sharing of limited, technical website information—not personal and financial user information—for purposes of optimizing the UWM Website for its users. The 13 claims in the AC suffer from many independent flaws requiring dismissal:

*First,* Plaintiffs' claims all fail because they consented to UWM's collection and transfer of their basic information. Plaintiffs allege UWM's Privacy Policy is the governing contract, therefore they expressly agreed to UWM's data-sharing practices. And Plaintiffs' continued use of the Website after being on notice of the Privacy Policy manifested their implied consent.

*Second,* Plaintiffs do not establish key elements of their negligence claim. UWM owes Plaintiffs no duty to "safeguard" the technical information at issue. Moreover, UWM did not breach any duty, if one existed, because UWM's fully disclosed data-sharing practices are in line with the reasonable standard of care and obligations imposed by the Gramm–Leach–Bliley Act ("GLBA") and the FTC Act. The AC also has not alleged any nonspeculative, present injury.

*Third,* Plaintiffs' claim under California's Comprehensive Computer Data Access and Fraud Act ("CDAFA") (Cal. Penal Code § 502) fails because (a) the alleged tracking software did not overcome any "technical … barriers" that Plaintiffs used to prevent access to their information, and (b) Plaintiffs cannot allege any cognizable, non-speculative damage.

*Fourth,* Plaintiffs cannot state a claim under the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code §§ 1798.100 *et seq.*) because that statute allows a private right of

action only for failure to implement reasonable security measures to protect specifically defined "Personal Information." None of the information at issue meets the CCPA's definition. Plaintiffs also allege no facts showing UWM failed to implement reasonable security measures.

*Fifth,* multiple problems each defeat Plaintiffs' claims under the California Invasion of Privacy ("CIPA") Section 631 and the federal Electronic Communications Privacy Act ("ECPA") Sections 2511(1) and 2511(3)(a). These include that (1) any alleged sharing by UWM is lawful because UWM was a party to the communication; (2) the Complaint does not allege facts to establish that UWM "aided" or "conspired" with third parties engaging in unlawful acts, as required by the fourth clause of CIPA Section 631(a); and (3) the basic technical information third parties allegedly obtain through the UWM Website is not the "contents" of communication, as required for CIPA Section 631 and the ECPA claims.

*Sixth*, Plaintiffs' ECPA Section 2511(3)(a) claim is additionally deficient because Plaintiff does not plead sufficient facts to establish that UWM is a provider of an "electronic communications service" under the statute.

*Seventh,* Plaintiffs' CIPA Section 632 claim must be dismissed because the information at issue is not "confidential," and Section 632 does not provide for derivative liability like Section 631.

*Eighth*, Plaintiffs' CIPA Section 638.51 claim fails because "pen registers" and "trap and trace" devices under that section do not include internet technologies of the kind alleged. Further, Plaintiffs do not allege facts to establish that UWM's Website tracks incoming or outgoing communications from and to Plaintiffs' devices, as required to plead a Section 638.51 claim.

*Ninth,* Plaintiffs' contract and unjust enrichment claims fail because UWM does not allow third parties to disclose the information at issue. Nor can Plaintiffs use an implied contract or unjust enrichment claim to expand the terms of an express contract (*i.e.*, the Privacy Policy, which describes UWM's data sharing practices). Further, Plaintiffs plead no cognizable damage.

*Tenth,* Plaintiffs cannot maintain a breach of confidence claim because the data allegedly disclosed is neither novel nor confidential. In addition, breach of confidence is grounded in an implied-in-law or quasi-contractual theory that is precluded by their claims for breach of contract.

**Eleventh,** Plaintiffs also fail to state a claim under any of the three prongs of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). UWM's fully disclosed data collection practices are not unlawful, deceptive, or unfair under any standard. Separately, Plaintiffs fail to allege a loss of money or property as required. And they cannot pursue equitable relief where they do not claim inadequate legal remedies.

**Twelfth and finally,** because all of their other claims fail, Plaintiffs' declaratory judgment claim must fail as well.

The Court should dismiss Plaintiffs' AC in its entirety.

## II.  BACKGROUND

### A.  UWM's Website and Terms

UWM is a residential mortgage lender, AC ¶ 2, that originates loans exclusively through the wholesale channel. The Complaint incorrectly alleges that UWM services mortgages, *id.* ¶¶ 2, 27, although the Court need not address that error for purposes of this motion.[1] UWM operates the UWM Website, which is principally a B2B website. *Id.* ¶ 2. The AC alleges that the UWM Website allows users the ability to make payments and manage their account. *Id.* ¶¶ 2, 29. Instead, the UWM Website allows a "homeowner looking to make a mortgage payment" to be redirected to their relevant loan "service[r's] website." Edwards Decl., Ex. 1 at 4, Ex. 2 at 1.

UWM's Privacy Policy is available on every page of its Website. AC ¶ 74 n.30; Edwards Decl., Exs. 1-2. Moreover, when a user initially visits the Website—including to use it as an indirect conduit to their loan servicer's portal—a cookie banner[2] pops up disclosing that the site "use[s] cookies and similar technologies" and offering users the option to manage consent and tracking preferences or affirmatively dismiss the notice. Edwards Decl., Ex. 3 at 1. The banner also conspicuously identifies in bold blue lettering and hyperlinks to UWM's Privacy Policy.

UWM's Privacy Policy provides robust disclosures that describe in detail what

---

[1] UWM currently contracts with a third-party sub-servicer to directly service its loans.

[2] The cookie banner and Privacy Policy are subject to judicial notice and incorporated by reference. *See* UWM's RJN, filed concurrently; *Caldwell v. Caldwell,* 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006), *order clarified,* No. 2006 WL 734405 (N.D. Cal. Mar. 20, 2006) ("[A]s a general matter, websites and their contents may be proper subjects for judicial notice.").

information UWM collects and how that information may be used, including the use of tracking technologies by third parties, as well as the opportunity to opt out of cookies.  AC ¶¶ 76, 78, Ex. B at 2-4.  UWM's Privacy Policy discloses that UWM uses cookies to "identify which pages of the site are accessed" and "[t]hat information is then used to improve the Website and [users'] online experience."  AC, Ex. B at 5.  The information collected may include "IP address, [] page views and links clicked, [] browser type and version, and other aspects of how [users] interact with the UWM Websites."  *Id.*.  The basic technical information collected by trackers is used by UWM to "better understand how our website is being used," "improve site offerings," "provide coaching on the various tools the site has to offer," provide a "personalized website experience," "assist with technical support," and "send specific offers or promotion."  *Id.*  As the Privacy Policy makes clear, third parties are strictly prohibited from using information from the Website "for any purpose other than those proscribed by UWM in connection with the services they provide on UWM's behalf."  *Id.*

### B.      Plaintiffs' Allegations

Plaintiffs allege they are borrowers that "regularly use" the UWM Website for activities (which are, instead, actually performed on a third-party sub-servicer's website), such as to "review [their] account, manage [their] mortgage, check statements, and make payments."  AC ¶¶ 111, 116.  However, the Court need not address that error for purposes of this motion.  Plaintiffs also allege they are Facebook users.  *Id.* ¶¶ 113, 118.  According to the Complaint, UWM incorporated tracking technologies from Meta, Google, Microsoft, LinkedIn, CrazyEgg, lordofthesuperfrogs.com, and Dynatrace onto the Website in a manner that resulted in the following information of Plaintiffs' being shared with third parties: "(a) [e]xisting user or Customer status; (b) [b]rowsing activities, including the pages and content Plaintiffs viewed; (c) [l]ogin activities; (d) [a]ctivities related to viewing their loans; (e) [t]he different types of statements they viewed; (f) c_user cookie to identify a logged-in Facebook account; and (g) [i]nformation collected through an Internet 'cookie' (or information collecting device from a web server)," such as "IP addresses."  *Id.* ¶¶ 128, 300; *see also id.* ¶¶ 1, 33-52.  Plaintiffs' attempt to dress this information up by referring throughout their AC to UWM disclosing their "Personal

and Financial Information," but they do not make any factual allegations that any of their financial account or transaction information is shared. Plaintiffs nonetheless allege that, without their consent, UWM collected and shared their "Personal and Financial Information" with third parties, which was "further sold to fourth parties." *Id.* ¶¶ 126, 130. Plaintiffs bring 13 claims against UWM, seeking monetary and injunctive relief on behalf of themselves and a putative nationwide class and California subclass. *Id.* ¶ 136.

## III.   LEGAL STANDARD

A motion to dismiss should be granted where, as here, the plaintiff has failed to allege facts that would establish any cognizable legal claim against that defendant. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations. *Id.* at 677-79; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.").

Courts also may consider documents on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Likewise, courts can take judicial notice of facts that cannot be reasonably contested, even if not incorporated by reference into the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Finally, "[a] district court does not err in denying leave to amend where the amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## IV.   ARGUMENT

### A.   All of Plaintiffs' Claims Fail Because UWM Disclosed, and Plaintiffs Consented to, the Sharing of Their Information With Third Parties.

The AC alleges the language in UWM's Terms of Use ("Terms") and Privacy Policy that expressly disclosed to Plaintiffs that the technical information they provided on the UWM Website would be shared with third-party service providers, including technology companies.

*E.g.*, AC ¶ 78. That, coupled with Plaintiffs' express and constructive consent to the disclosed practices, suffices to defeat all their claims. *E.g.*, Cal. Penal Code § 502 (CDAFA covering only access to another person or company's computer without permission), *id.* § 631(a) (CIPA covering information only if intercepted without consent), *id.* § 632 (CIPA covering only eavesdropping or recording without consent); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (dismissing ECPA and CIPA claims because plaintiff consented to defendant's terms of use, terms of sale, and privacy policy); *R.H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138, 1165-66 (N.D. Cal. 2014) (conduct authorized by the plaintiff cannot form the basis of a negligence claim); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (dismissing breach of contract claim because defendant's contract with plaintiff did not promise not to collect the data); *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997) breach of confidence claim requires (disclosure in violation of an understanding between defendant and plaintiff that confidence be maintained); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (UCL claim dismissed because the practice was "available to consumers on [defendant]'s website.").

As described above, the Privacy Policy details what kind of information UWM may collect, what such information is used for, how it is shared, and how to opt out of disclosures. AC, Ex. B at 2-5. The Privacy Policy specifies that UWM uses "cookies" to track website usage, including "your IP address, your page views and links clicked, your browser type and version, and other aspects of how you interact with UWM's website," in order to "improve the Website and your online experience." *Id.* at 5. It further discloses that "UWM has a presence on various social media outlets in an effort to connect with … clients." Id., Ex. B at 6.

The AC's factual allegations and the documents subject to judicial notice and incorporated by reference directly contradict—and therefore overcome—Plaintiffs' assertions that they "never consented, agreed, authorized, or otherwise permitted" UWM's disclosure of the technical information at issue or that they never received any written notice of such disclosure. AC ¶ 71.[3]

---

[3]"A court need not accept as true allegations contradicted by judicially noticeable facts" and may "consider certain materials—documents attached to the complaint, documents incorporated by

First, the AC itself, coupled with the disclosures made in the Privacy Policy, establishes Plaintiffs' express consent.  Plaintiffs specifically allege that customers—like Plaintiffs—enter "contracts" with UWM that include both its Terms and Privacy Policy.  *Id.* ¶ 74.  The Privacy Policy states that "by providing information to UWM" through the Website or other means, customers "authorize UWM to engage" in various uses of that information.  *See* AC, Ex. B at 4, *id*. ¶ 76.  Plaintiffs' own allegations thus establish that, by sharing their information with UWM, they expressly consented to its disclosure as described in the Privacy Policy.

Second, Plaintiffs impliedly consented to the practices disclosed in those documents too, based on Plaintiffs' constructive notice and continued use of the UWM Website.  Courts in the Ninth Circuit have found constructive notice and implied consent by evaluating "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" in determining "whether a reasonably prudent user would have inquiry notice" of such terms.  *Allen v. Shutterfly, Inc*., 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020); *see also Silver v. Stripe Inc*., 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) (courts have found that "[a] binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink") (internal quotations omitted).  UWM conspicuously makes the Privacy Policy available on the Website in two ways.  On its home page, UWM provides a bright white pop-up banner with green and blue acceptance and dismissal buttons that notifies users that "cookies" and other tracking technologies are used on the Website and provides a hyperlink in underlined text to the Privacy Policy.  *See* Edwards Decl., Ex. 3.  This pop-up banner offers users the option to manage consent and tracking preferences or affirmatively dismiss the notice and proceed with using the Website.  The home page, and the bottom of every page on the Website, also provide a link in black text on a white background to the Privacy Policy.  *Id.*, Exs. 1-2.  The conspicuousness and placement of these Terms and Privacy Policy links establish that Plaintiffs were on notice of the Privacy Policy and,

reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Herguan Univ. v. Immigr. & Customs Enf't*, 258 F. Supp. 3d 1050, 1061-62 (N.D. Cal. 2017) (citations omitted) (quoting *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

by proceeding to use the Website, constructively assented to its terms.

Third, Plaintiffs' allegation that they are Facebook users establishes further consent to alleged information sharing with Meta. AC ¶¶ 113, 118. As Facebook users, they must have consented to three Meta agreements: Meta's Terms of Service, Meta's Cookies Policy, and Meta's Privacy Policy. Edwards Decl., Exs. 4-6. Meta's three agreements taken together disclose in detail the kind of information Meta collects and shares, including browser and device information, location-related information, and information collected by "cookies and similar technologies" regarding user browsing and social media activity on Facebook and its partners. *Id*. Meta's Cookie Policy states, "[w]e may place cookies on your computer or device and receive information stored in cookies when you use or visit:… Websites and apps provided by other companies that use the Meta Products, including companies that incorporate Meta technologies into their websites and apps." *Id.*, Ex. 6 at 1.

Plaintiffs cannot survive a motion to dismiss by now asserting the conclusion that they lacked knowledge of such practices. *Adams*, 355 F.3d at 1183 (conclusory allegations need not be accepted). Nor can Plaintiffs defeat UWM's consent argument by pointing to their conclusory assertion that "Personal and Financial Information" shared by UWM with third parties exceeded the disclosures in UWM's Privacy Policy. The only ***factual*** allegations about the specific information shared show that it is the very type of information addressed in UWM's Privacy Policy, regardless of the label Plaintiffs give it. AC ¶¶ 78, 128.

Plaintiffs' consent defeats all of their claims.

**B.      Plaintiffs Fail to State a Claim for Negligence (Claim 1).**

Plaintiffs fail to allege facts sufficient to establish key elements of their negligence claim. To state a claim, a plaintiff must show: "(1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942, 959-60 (S.D. Cal. 2012). The AC alleges that UWM breached its purported duty to keep their personal information confidential under either an ordinary standard of care or under legal standards in the GLBA and the FTC Act, AC ¶¶ 157-159, which allegedly caused Plaintiffs a collection of harms. *See id*. ¶¶ 165-166. Their negligence

theories fail for three distinct reasons.

First, Plaintiffs fail to allege facts establishing that UWM owes Plaintiffs any duty to "safeguard" the information at issue. No special relationship giving rise to a duty exists where Plaintiffs were put on notice in the Privacy Policy of what information UWM collects and shares with third-party service providers, meaning Plaintiffs have no reasonable basis to expect their information to be treated differently than stated. *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *13-15 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) (website has no special relationship with its users) (collecting cases). Plaintiffs allege the conclusion, without more, that UWM owed Plaintiffs a duty to "exercise reasonable care in handling and using Plaintiffs'… Personal and Financial Information." AC ¶ 157. This is not enough to establish a duty; a mere conclusory statement cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 677-79.

Second, Plaintiffs' factual allegations do not establish a breach. Plaintiffs allege that UWM breached some duty by failing to supervise third parties and use reasonable measures that comply with applicable industry standards—allegedly the GLBA and FTC Act—to protect their information. AC ¶¶ 157-158, 163; *see also id.* ¶¶ 103-109. But the AC does not identify what those standards require, let alone plausibly allege facts to show how UWM failed to comply with either law. Plaintiffs' allegations about the limited technical information shared, consistent with the Privacy Policy, confirm that UWM did not breach any purported duty.

Third, the AC also lacks any factual allegations of the "nonspeculative, present injury" to Plaintiffs required to state a negligence claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). Plaintiffs argue that they suffered damages, including lost value of their information, lost time and money to mitigate effects of the use of their information, and emotional distress. AC ¶ 165. Plaintiffs' allegations again miss the mark. Courts have routinely found that such general allegations about loss of value of information are insufficient to establish damages for a negligence claim. *Low*, 900 F. Supp. 2d at 1032 (dismissing negligence claim for failure to allege requisite injury because plaintiff failed to allege "how he was foreclosed from capitalizing on the value of his personal data"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1069 (C.D. Cal. 2024)(dismissing negligence claim based on "loss of the value of [Plaintiffs'] Private

information.").  What's more: Plaintiffs assert only vague conclusions about their emotional distress and lost time and money.  *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *9 (C.D. Cal. May 8, 2023) (dismissing negligence claims because conclusory and vague allegations about emotional harms and speculative claims of lost time are insufficient).

    **C.**    <u>Plaintiffs Do Not State Any Statutory Privacy Claim (Claims 2, 4, 9, 10, 11, 12, 13).</u>

Plaintiffs' statutory privacy claims fail for multiple additional reasons as well.  The CDAFA is an anti-hacking statute inapplicable to Plaintiffs' allegations.  And neither the CCPA, CIPA, nor ECPA protects the type of information that UWM allegedly disclosed to third parties.

    1.    Plaintiffs Fail to Plausibly Allege Violation of the CDAFA (Claim 2).

CDAFA is an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015).  This case does not involve any "hacking."  Plaintiffs merely parrot language from the statute in alleging that UWM "knowingly and without permission" "access[ed]" and "introduc[ed] a computer contaminant via trackers" on Plaintiffs' devices to "tak[e], copy[], and us[e] Plaintiffs' and the Class Members' Personal and Financial Information" in violation of several sections of the CDAFA.  AC ¶¶ 173-174, 178; *see Gonzales v. Uber Techs., Inc*., 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (granting a motion to dismiss where plaintiffs made only boilerplate allegations of the elements of CDAFA violations).

The AC fails to allege facts to show that UWM accessed or disrupted a computer system "without permission" by bypassing some technical barrier of Plaintiffs' computers.  Cal. Penal Code § 502.  "To allege that a defendant acted without permission under the [CFADA], a plaintiff must allege that the offending software was 'designed in such a way as to render ineffective any barriers the Plaintiffs must wish to use to prevent access' to their information." *Brodsky v. Apple Inc*., 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019) (dismissing CFADA claim for failure to plead how plaintiffs attempted to prevent the technology at issue from having access to their information); *NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938, 950 (N.D. Cal. 2014) (explaining that parties act without permission when they "circumvent[ ] technical or code-based

barriers").  Because Plaintiffs have not identified any technical or code-based barriers that the trackers on UWM's Website allegedly circumvented or rendered ineffective, or how Plaintiffs attempted to prevent such trackers from obtaining their Website data, they have not alleged facts to establish that UWM accessed their computer system "without permission" under the CDAFA.

The CFADA claim also fails because Plaintiffs do not allege the requisite "damage or loss by reason of a violation" of the CFADA required for a civil action.  Cal. Penal Code § 502(e)(1).  The CDAFA defines "[c]ompensatory damages [to] include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access."  *Id.*  Plaintiffs allege that they were harmed because their data lost its protection and value, *see* AC ¶¶ 179(a), (c), (e).  But this is not the kind of damage or loss sufficient to allege a violation of the CDAFA—*i.e.*, an intrusion that impacted the performance or operation of computer devices, requiring expenditures to assess or rectify.  *See Cottle v. Plaid Inc*., 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing CDAFA claim because "the loss of the right to control [] own data, the loss of the value of [] data, and the loss of the right to protection of the data" is not "damage or loss within the meaning of the CDAFA."); *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023), *denying motion to certify appeal*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (same) (Orrick, J.).  Plaintiffs further allege that they were damaged because UWM "eroded the essential confidential nature of their relationship" and they "did not get the full value of the financial services for which they paid" because of the alleged loss of confidentiality, AC ¶¶ 179(b), (d).  But again, such allegations are insufficient as they do not allege any "expenditure" Plaintiffs "incurred" "to verify that a computer system…was or was not altered, damaged, or deleted by the access," as required by the statute.  Cal. Penal Code § 502(e)(1).

   2. Plaintiffs Have Not Plausibly Alleged a Claim Under the CCPA (Claim 4).

Plaintiffs' CCPA claim fails for three independent reasons: (1) the information allegedly disclosed does not meet the CCPA definition of "Personal Information," (2) there was no data-security breach or failure to implement reasonable security measures, and (3) an exception for GLBA information exists in the CCPA.

First, the CCPA provides a private right of action only for a business's failure to implement reasonable security measures to protect "Personal Information." The statute defines "Personal Information" in a particular way: as a person's name in combination with other specific types of information, including Social Security Number, a government ID number, account or credit/debit card number, medical information, health insurance information, and biometric or genetic data. *See* Cal. Civ. Code § 1798.150(a); Cal. Civ. Code § 1798.81.5(d)(1)(A); *Tian v. Bank of Am., N.A.*, 2025 WL 1377767, at *2 (C.D. Cal. Apr. 2, 2025).

None of the information Plaintiffs allege to have been collected by the trackers on the UWM Website constitutes "Personal Information" as defined by the CCPA. *E.g.*, AC ¶ 128 ("through its use of Third Party trackers on its Website, [UWM] disclosed... information Plaintiffs provided to UWM…, including each Plaintiff's: (a) [e]xisting user or Customer status; (b) [b]rowsing activities, including the pages and content Plaintiffs viewed; (c) [l]ogin activities; (d) [a]ctivities related to viewing their loans; (e) [t]he different types of statements they viewed; (f) c_user cookie to identify a logged-in Facebook account; and (g) [i]nformation collected through an Internet 'cookie' (or information collecting device from a web server"); *see also id.* ¶ 210 (alleging that UWM violated the CCPA by "collecting, using, and selling Plaintiffs' personal information and location data to Third Parties"). Although the Complaint (inaccurately) alleges other information was "inputted… in UWM's website," including their "SSN, contact information, address, credit information, financial account information, and DOB," even accepting that inaccuracy for purposes of this motion, Plaintiffs' claim fails because they do not allege that UWM disclosed any such information to third-party trackers. *Id.* ¶¶ 112, 117, 128, 210. Nor can Plaintiffs maintain a CCPA claim by substituting other definitions of "nonpublic personal information" and "Personally identifiable financial information" from other sources. *Id.* ¶ 3 nn.3-4. Plaintiffs must plead that "Personal Information" as specifically defined under the *CCPA* is at issue to state a CCPA claim. They fail to do so.

Second, Plaintiffs fail to allege any facts showing a security breach or any failure to use reasonable security measures on UWM's part. *See* Cal. Civ. Code § 1798.150(a)(1). Allegations that do "not allege sufficient facts to establish how or why [defendant]'s systems were inadequate

or unreasonable or how or why [defendant] knew or should have known its systems were inadequate or unreasonable" fail to state a viable CCPA claim. *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 57 (D. Ariz. 2021) (applying California law and finding assertion that "because there was a breach, [defendant]'s data security was inadequate" insufficient to state a CCPA claim). Here, the AC alleges only that UWM collected, used, and sold personal information without providing consumers with notice and failed to abide by requests to delete collected information. AC ¶¶ 210-212. The AC challenges UWM's practices of alleged sharing, not a data breach or a failure on UWM's part to implement and maintain reasonable security procedures and practices. *Tian*, 2025 WL 1377767, at *2.

Third, Plaintiffs concede in the AC that "UWM is a financial institution, as… defined by the GLBA," AC ¶ 20, and thus "subject to the GLBA," *id*. ¶ 96. The CCPA expressly carves out an exemption for information subject to the GLBA. Cal. Civ. Code § 1798.145(e) ("This title shall not apply to personal information collected, processed, sold, or disclosed subject to the federal [GLBA]"). Plaintiffs thus cannot claim that UWM failed to comply with the CCPA.

3.   Plaintiffs Fail to Plausibly Allege a Violation under CIPA Sections 631 and 632 or ECPA (Claims 9, 10, 12, and 13).

The AC alleges no facts to support its conclusory assertion that UWM violated CIPA Sections 631 and 632 and ECPA Sections 2511(1) and 2511(3)(a).

a.   ***Plaintiffs fail to state a CIPA Section 631(a) or ECPA claim.***

CIPA Section 631(a) is a wiretapping statute that targets the "secret monitoring" of conversations by third parties. *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). The ECPA similarly makes it: (1) unlawful for a person to "intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a); or (2) for "a person…providing an electronic communication service to the public" to "intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof)." *Id.* § 2511(3)(a). Violations of CIPA Section 631 and of ECPA are analyzed under the same standards, 18 U.S.C. § 2510 *et seq*.; *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). To

13

plead a violation of Section 631(a) or ECPA § 2511(1), Plaintiffs must allege facts sufficient to show that UWM engaged in: (1) intentional wiretapping; (2) willfully reading "the contents or meaning" of a communication "in transit" over a wire without their consent; (3) attempting to use or communicate information obtained as a result of engaging in either of the previous two activities; or (4) aiding, agreeing with, employing, or conspiring with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things in one of the first three clauses. *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). To plead a violation of ECPA § 2511(3)(a), Plaintiffs must allege facts to establish that UWM is a "provid[er of] an electronic communication service" that divulged the "contents of any communications" intended for some party other than itself. *In re Zynga Priv. Litig*., 750 F.3d 1098, 1104 (9th Cir. 2014).

As a party to the alleged communications from Plaintiffs, UWM's consent to the data-sharing at issue is a complete defense to both of Plaintiffs' claims under ECPA, a one-party consent statute. *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (dismissing ECPA § 2511(1)(a) claim because "the consent of one party is a complete defense to a Wiretap Act claim"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) (same); *Yunker v. Pandora Media, Inc*., 2013 WL 1282980, at *8 (N.D. Cal. Mar. 26, 2013) (dismissing ECPA § 2511(3)(a) claim because "by its terms Section 2510(3)(a) permits a person or entity to divulge a communication when the communication was to that person or entity"); *In re Facebook Priv. Litig*., 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (same). And, under the same principle, UWM cannot have violated the first three clauses of CIPA Section 631(a) because UWM was an intended recipient of the communications. *Swarts v. Home Depot, Inc*., 689 F. Supp. 3d 732, 744-45 (N.D. Cal. 2023).

Still further, Plaintiffs do not allege wiretapping under the first clause of Section 631(a). Nor could they: that clause is limited to intentional wiretapping arising from the use of the telephone or wires. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135-36 (E.D. Cal. 2021). Plaintiffs also cannot plausibly allege that UWM violated Section 631(a)'s second clause because courts repeatedly have held that a party to the communication at issue cannot violate that clause. UWM is a party to the communication because Plaintiffs allegedly visited UWM's Website to

manage their mortgages.  AC ¶¶ 111, 116; *Swarts*, 689 F. Supp. 3d at 744-45; *Graham*, 533 F. Supp. 3d at 832.  The third clause of Section 631(a) governs use of information obtained in violation of clauses one and two; because UWM did not violate clauses one or two, it also cannot have violated the third clause.

> b.  ***Plaintiffs fail to allege that UWM read or divulged the "contents" of communications, as required by CIPA Section 631 and ECPA.***

CIPA Section 631(a) and ECPA Sections 2511(1) and 2511(3)(a) all require the interception of "contents" of a communication.  The AC contains no plausible factual allegations showing that UWM or its third-party service providers divulged, read, or attempted to read the "contents or meaning" of a communication within the meaning of either statute.  The "contents" of a communication is defined as "the substance, purport or meaning of [an alleged] communication," 18 U.S.C. § 2510.  That is, it refers to the "intended message conveyed by the communication," as distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication."  *In re Zynga,* 750 F.3d at 1106 (addressing ECPA); *see also Hammerling*, 615 F. Supp. 3d at 1093 (analysis of the "contents" of a communication for CIPA is the same as for the ECPA).  Courts have held that the "substance, purport, or meaning" of a communication includes chat transcripts or URLs that reveal sensitive personal information or search terms.  *E.g.*, *Esparza v. Kohl's, Inc*., 723 F. Supp. 3d 934, 943 (S.D. Cal. 2024); *Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (full transcripts of consumer chat containing sensitive personal information were "contents").  By contrast, record information—which does not constitute "contents" and therefore is not within the scope of CIPA Section 631(a) or ECPA—includes "a person's name [and] address" as well as "pages viewed … the date and time of the visit… Plaintiff's IP address… location… browser type, and the operating system…."  *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021); *see also Hammerling*, 615 F. Supp. 3d at 1092-93 (citing *In re Zynga*, 750 F.3d at 1104, 1108-09).

Neither UWM nor its third-party service providers divulged, read, or attempted to read or learn the "contents" of Plaintiffs' communications.  The AC alleges that the following types of

information belonging to Plaintiffs were shared: "Existing user or Customer status; [b]rowsing activities, including the pages and content Plaintiffs viewed; [l]ogin activities; [a]ctivities related to viewing their loans; [t]he different types of statements they viewed; [u]ser cookie to identify a logged-in Facebook account; and [i]nformation collected through an Internet "cookie" (or information collecting device from a web server)."  AC ¶ 128.  These categories of information—which amount to nothing more than Plaintiffs' login activities, Website navigation, pages viewed, Facebook account connection—are routine information automatically generated in the course of Website usage that courts within the Ninth Circuit have held to be "record information" not subject to Section 631 or ECPA.  *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, …page navigation, changes to visual elements in the browsers, network requests" are akin to the "record" information the Ninth Circuit has held not to be contents of a communication); *Yoon*, 549 F. Supp. 3d at 1082 (Section 631(a) "protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not" and "pages viewed" does not constitute content).

Plaintiffs further allege that UWM "disclosed details about… interactions with UWM's Website as users applied for or managed their mortgages, including…the Customer's refinancing options and the user's selections, the state in which the property was located, type of property, and the reason the customer was seeking to refinance."  AC ¶ 269.  These allegations, too, are insufficient as the AC contains no allegations that this information was entered by users in any way other than through button selection.  Once more, this type of information is insufficient to establish the requisite "contents" where it is collected and shared via button clicks.  *Mikulsky*, 713 F. Supp. 3d at 845; *King v. Hard Rock Cafe Int'l (USA), Inc.,* 2025 WL 1635419, at *7 (E.D. Cal. June 9, 2025).  And Plaintiffs' (inaccurate) allegations that they input into UWM's Website "SSN, address, credit history, financial information, DOB, and contact information" are also inadequate because they do not allege that UWM shared that information with third parties (nor could they).  AC ¶¶ 112, 117; *see also id.* ¶ 128.  Plaintiffs' CIPA Section 631(a) and both ECPA claims therefore fail because they have failed to allege that anything other than "record information"—not covered by either statute—was collected and shared by UWM.

c. ***Plaintiffs fail to allege facts showing that UWM "aided" or "conspired" with third parties, as required by the fourth clause of Section 631(a).***

Plaintiffs' claim under CIPA Section 631(a) also fails because they do not allege facts to show UWM "aid[ed], agree[d] with, employ[ed], or conspire[d]" with third parties to commit an underlying violation. Under California criminal law, "aiding" a violation requires showing that UWM had knowledge of "the unlawful purpose of the perpetrator and intended to help the other accomplish that purpose." *People v. Lee*, 31 Cal. 4th 613, 619, 624 (2003) (defendant must "give such aid or encouragement with knowledge of the criminal purpose" and "with the intent or purpose of committing or encouraging or facilitating the commission of the crime") (internal quotation marks omitted). Courts have found that these principles apply equally to Section 631(a) claims. *E.g., Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *14 (S.D. Cal. Mar. 21, 2024); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1015 (C.D. Cal. 2023); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024).

Plaintiffs do not allege facts establishing any of these elements. At most, they repeat the conclusory assertion that UWM purportedly "aid[ed]" third parties to intercept their information. AC ¶¶ 259, 262. No factual allegations in the AC plausibly establish that UWM knew that third parties allegedly intended to violate Section 631(a). Nor do Plaintiffs' allegations show that UWM agreed with, much less intended to help accomplish, any third parties' improper access to and use of Plaintiff's information in violation of Section 631(a). Plaintiffs accordingly fail to state a claim under the fourth clause of Section 631(a). *Smith*, 754 F. Supp. 3d at 943.

d. ***Plaintiffs fail to allege facts showing that UWM is an "electronic communications service [provider]," as required by ECPA Section 2511(3)(a).***

Plaintiff's ECPA Section 2511(3)(a) claim also fails because Plaintiffs do not—and cannot—plead facts to establish that UWM is a provider of an "electronic communication service," as required under Section 2511(a)(3). *In re Zynga,* 750 F.3d at 1104. Under the ECPA, 18 U.S.C. § 2510(15), an "electronic communication service" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." As both Congress

and courts within the Ninth Circuit make clear: "telephone companies and electronic mail companies are providers of electronic communication services"—not mortgage lenders like UWM. *Hernandez v. Path, Inc*., 2012 WL 5194120, at *4 (N.D. Cal. Oct. 19, 2012) (quoting S.Rep. No. 99–541 (1986), *reprinted* in 1986 U.S.C.C.A.N. 3555, 3568); *see, e.g., Matera v. Google Inc*., 2016 WL 8200619, at *7 (N.D. Cal. Aug. 12, 2016) ("Google provides the electronic communication service at issue here, Gmail.").  Although the AC concedes that UWM is a "mortgage lender" and "financial institution," AC ¶¶ 2, 19, 20, 96, Plaintiffs parrot the statutory definition and allege that "[UWM]'s Website is an electronic communication service which provides to users…the ability to send or receive electronic communications; in the absence of [UWM]'s Website, internet users could not send or receive communications regarding [their] Personal and Financial Information." *Id.* ¶ 324.  Such threadbare allegations were rejected by the Court in *Crowley v. CyberSource Corp*., 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (Orrick, J.); *see id.* (rejecting plaintiff's arguments that "Amazon is an electronic communication service provider because it receives electronic communications from customers," and "that 'without recipients such as Amazon.com, users would have no ability to send electronic information'"). Just like the defendant in *Crowley*, UWM is not a provider of electronic communication services because it must purchase "Internet access from an electronic communication service provider…; it does not independently provide such services." *Id.* (internal quotation marks omitted). Accordingly, Plaintiffs' ECPA Section 2511(3)(a) claim must fail.

> e.  ***Plaintiffs' CIPA Section 632 claim fails because the allegedly shared information is not "confidential" and because no derivative liability exists under this provision.***

Plaintiffs' CIPA Section 632 claim suffers from two additional, independent deficiencies. First, Plaintiffs do not allege facts sufficient to show that the information at issue comprises "confidential communications" as used in Section 632.  A communication is confidential under Section 632 only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez*, 2021 WL 2026726, at *7 (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)).  "Courts generally find that internet communications do not have an objectively reasonable expectation of confidentiality." *Yoon v. Meta Platforms,*

*Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024); *see, e.g., Swarts,* 689 F. Supp. 3d at 747 (dismissing Section 632 claim where plaintiff claimed her "confidential" Internet chat conversation was recorded by Home Depot's third-party service provider); *see also Rodriguez*, 2021 WL 2026726, at *7 (dismissing Section 632 claim based on communications with third-party apps); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (dismissing Section 632 claim based on Internet browsing activity and form field entries); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (dismissing Section 632 claim where plaintiffs failed to allege facts that their social media messages were "confidential"); *King,* 2025 WL 1635419, at *6 (dismissing Section 632 claim based on online hotel booking information). "A plaintiff must plead something unique about particular internet communications to demonstrate those communications are confidential." *Id*. at *5.

Here, Plaintiffs fail to allege facts that show the information in their Internet communications with the UWM Website was "confidential" under Section 632. They do not plead any "unique" context surrounding their communications with the Website based on which they can reasonably expect privacy. For example, although Plaintiffs allege (without support) that UWM transmits information about what pages a generic "user" may be viewing on the Website, including pages relating to mortgage statements, even that information only relates to browsing activity like "events [that] report that the user visited the particular page." AC ¶ 69; *see also id.* ¶ 102 (same); *id*. ¶¶ 111, 116 (alleging Plaintiffs viewed payments and managed mortgages but not alleging information beyond browsing activity was recorded). That type of event information is exactly the kind of "internet-based communication" that courts have found not to be confidential under Section 632. *Revitch*, 2019 WL 5485330, at *3; *Campbell*, 77 F. Supp. 3d at 849; *Rodriguez*, 2021 WL 2026726, at *7. The AC's remaining allegations in this context consist of vague conclusions, unsupported by any facts. *See, e.g.*, AC ¶ 277 (alleging that Plaintiffs had a reasonable expectation of privacy based on unspecified statutory and common law that UWM would safeguard unspecified personal and financial information). These allegations are not enough to make the information at issue "confidential" under Section 632.

Second, Plaintiffs' Section 632 claim is based entirely on UWM's alleged derivative

liability for assisting third parties in violating the statute. They conclusorily allege that UWM is liable for assisting third parties' (including The Trade Desk and Google) purported interception of the communications at issue. *See id.* ¶¶ 278, 280. However, the "aiding" liability language found in Section 631(a), clause 4 is absent from Section 632. Under the doctrine of avoiding surplusage, the best reading of the statute is therefore that Section 632 does not provide for the same derivative liability as Section 631(a). *See Abbie v. Shasta Cnty.*, 2023 WL 4274135, at *5 n.3 (E.D. Cal. June 29, 2023) (a statute should not be interpreted in a way that would render statutory language surplusage). And even if Section 632 did permit Plaintiffs to bring a claim against UWM for allegedly aiding third parties' purported violations, this claim would necessarily fail for the same reasons that Plaintiffs failed to state an aiding claim under Section 631(a)—*i.e.*, Plaintiffs' allegations do not plausibly establish that UWM knew of, much less intended to help accomplish, third parties' purported eavesdropping or recording of their allegedly confidential information in violation of Section 632. *Supra* Section IV(C)(3)(c).[4]

4.      Plaintiffs' CIPA Section 638.51 Claim Fails Because UWM Did Not Use Any Pen Register or Trap and Trace Device (Claim 11).

Plaintiffs' claim under Section 638.51 fails because internet technologies such as those at issue here are not "pen registers" or "trap and trace" devices under Section 638.51, and the information the Website collects is not the type of information protected by Section 638.51.

First, California courts have reaffirmed that "the legislative history of the CIPA suggests that "pen register" and "track and trace" devices refers to devices or processes that are used to record or decode … information from telephone numbers, and not internet communications such as websites" like UWM's. *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3, *5 (Cal. Super. Ct. Jan. 27, 2025); *see also Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024) ("[T]he court also finds public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the

---

[4] The AC repeatedly refers to "Mr. Cooper" in paragraphs 285 and 287. These allegations have no bearing here and appear to have been inadvertently copied and pasted from another complaint.

website, as a violator."); *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024). The California legislature also confirmed Section 638.51's exclusive application to telephone communications in 2015 when it added Sections 638.50 through 638.53, including a new section that solely references telephones and does not mention Internet-based communications despite their prevalence at the time. *See* Cal. Penal Code §§ 638.52(d)(1), (3) (requiring court order to identify the person "in whose name . . . the telephone line to which the pen register . . . is to be attached"). Because Plaintiffs fail to allege in the AC the collection of any information from telephone numbers or the installation of tracking technologies on their telephone, they cannot state a claim under section 638.51.

Second, even if Section 638.51 were to apply to internet communications, Plaintiffs fail to allege that the tracking technologies allegedly used by UWM constitute either a "pen register" or "trap and trace device" under CIPA. As California courts have confirmed, software that does not "allow[] Defendant to monitor who else contacts Plaintiff," or who else Plaintiffs contact, is not a trap and trace device or pen register under CIPA, respectively. Order Granting Mot. to Dismiss, *Palacios v. Fandom, Inc.*, No. 24STCV11264, at 4 (Cal. Super. Ct. Mar. 27, 2025). "In plain English, a pen register…records outgoing information," "such as outgoing calls from a particular telephone line," whereas "a trap and trace device…records incoming information," such as "incoming calls to that particular telephone line." *Id.* Accordingly, the "statute prohibits receiving unauthorized information about incoming communications from other parties," or outgoing communications to other parties—"not information that passes between plaintiff and defendant when plaintiff contacts the defendant," which is precisely the type of information at issue here. *Id.*; AC ¶ 128 (alleging that UWM disclosed Plaintiffs' customer status, browsing, login and viewing activities, and other information from cookies on UWM's Website); *see Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025) (sustaining demurrer because "plaintiff did not allege that any software…collects the outgoing addressing information" "or incoming contact information" "from [their] devices or browsers"); *see also Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 02, 2024) (dismissing pen register claim because "Plaintiff's IP address is not the type of information collected by pen registers");

*Mitchener v. CuriosityStream, Inc*., 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (dismissing trap and trace claim because defendant was collecting information provided from plaintiff to defendant directly).  Because Plaintiffs fail to allege facts showing that UWM collected any incoming signals to or outgoing signals from Plaintiffs' computers other than the information Plaintiffs transmitted by using UWM's Website, Plaintiffs cannot state a Section 638.51 claim.  "Plaintiff[s] at most allege[] that [UWM] collects …information of visitors incoming to the website—the equivalent of if [UWM] had used a trap and trace device on its own website, rather than on Plaintiff's device."  *Aviles*, 2025 WL 487196, at *3.

**D.      Plaintiffs' Breach of Contract, Unjust Enrichment, and Breach of Confidence Claims Fail (Claims 5, 6, and 8).**

Plaintiffs' breach of contract, unjust enrichment, and breach of confidence claims are all predicated on the notion that UWM breached an express or implied contract (the Privacy Policy) with Plaintiffs by allegedly failing to safeguard and protect what Plaintiffs call their "Personal and Financial Information."  AC ¶¶ 215-221.  To the contrary, the Privacy Policy describes the limited, technical information that UWM collects and shares (with a prohibition on further disclosure), all of which Plaintiffs consented to.  *See id*. ¶ 76; *see also* AC, Ex. B at 2-3 (providing non-exhaustive list of information that may be collected on UWM Website); *see also id*. at 3-5 (How Information Is Collected; Security; Web Technologies).  Plaintiffs do not, and cannot, plausibly allege any breach of that express agreement where the AC fails to allege facts that any "personal information" was collected or shared or that UWM's practices were contrary to the actual language in UWM's Privacy Policy.  *E.g.*, AC ¶¶ 216-220; *see also supra* Section IV(C)(2).  Nor can Plaintiffs use an implied contract or unjust enrichment theory to expand the terms of the Privacy Policy.  *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc*., 83 F. Supp. 3d 855, 872 (N.D. Cal. 2015) (no implied contract claim "'where there exists between the parties a valid express contract covering the same subject matter.'") (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

Additional defects exist for these claims.  Plaintiffs plead no cognizable theory of damage based on breach of contract.  They allege generally that they "sustained" actual damages and losses, AC ¶ 221, but have not alleged facts to establish—as they must—a "reasonabl[e]

expect[ation] that they would be compensated for the 'value' of their personal information." *Low*, 900 F. Supp. 2d at 1029. And their unjust enrichment and breach of confidence claims are precluded because such implied or quasi-contract theories "cannot be imposed… where there is already a valid, express contract defining the rights of the parties; the two are mutually exclusive." *MP Nexlevel of Cal., Inc. v. CVIN, LLC*, 2014 WL 3057522, at *4 (E.D. Cal. July 7, 2014) (citing *Berkla v. Corel Corp*., 302 F.3d 909, 918 (9th Cir. 2002) ; *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp*., 96 F.3d 1153, 1167 (9th Cir. 1996)); *see also Gerlinger v. Amazon.com, Inc*., 311 F. Supp. 2d 838, 856–57 (N.D. Cal. 2004). As a result, Plaintiffs' claims for unjust enrichment or breach of confidence "cannot lie where a valid express contract covering the same subject matter exists between the parties." *Gerlinger*, 311 F. Supp. 2d at 856–57 (plaintiff cannot bring a claim for unjust enrichment while relying on the existence of a valid contract to establish standing); *see also Berkla*, 302 F.3d at 918 (tort remedies under plaintiff's breach of confidence claim are unavailable because plaintiff recovered on his express breach of contract claim).

In addition, Plaintiffs' breach of confidence claim independently fails because they do not allege disclosure of any "confidential and novel information." To state a claim for breach of confidence, Plaintiffs must show: (1) they conveyed "confidential and novel information" to UWM; (2) UWM had knowledge that the information was being disclosed in confidence; (3) there was an understanding between UWM and Plaintiffs that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding. *Ent. Rsch. Grp.,* 122 F.3d at 1227 (citing *Tele-Count Eng'rs, Inc. v. Pac. Tel. & Tel. Co*., 168 Cal. App. 3d 455, 462 (1985). As UWM's Privacy Policy makes clear, however, the basic technical information UWM discloses to third parties is neither "confidential" nor "novel." *Ent. Rsch. Grp.,* 122 F.3d at 1227. Plaintiffs' threadbare allegations state that certain website information, such as the fact that a user was on a certain page or that a user clicked certain buttons, was purportedly collected and shared. *E.g.*, AC ¶¶ 4, 128. Plaintiffs' allegations surrounding the remaining elements largely comprise conclusions that UWM somehow shared information in a manner inconsistent with its Privacy Policy. *See, e.g*., *id.* ¶¶ 7, 13, 71, 70. Those allegations do not come close to approaching the standards that Plaintiffs must meet to state a plausible claim for relief and avoid dismissal.

**E.**     <u>**Plaintiffs Have Not Alleged Facts Sufficient to State a Plausible Claim for Unfair Competition (Claim 3).**</u>

Plaintiffs' factual allegations do not state any UCL violation either.  The UCL has three prongs, covering unlawful, unfair, or fraudulent conduct.  Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

As to the unlawful prong, Plaintiffs allege that UWM violated the UCL by collecting and sharing Plaintiffs' information with third parties without their consent in violation of CIPA, CDAFA, and the California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1770), AC ¶ 186.  UWM's fully disclosed data collection practices do not violate any law, as explained *supra* Section IV(C).  As for the CLRA, "[w]hen CLRA ... and UCL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at issue." *Tabler v. Panera LLC*, 2020 WL 3544988, at *6 (N.D. Cal. June 30, 2020) (*quoting Kearns v. Ford Motor* Co., 567 F.3d 1120, 1126 (9th Cir. 2009)).  Plaintiffs, however, merely recite the statutory elements: that UWM "represented that its services have characteristics, uses, or benefits that they do not have and represented that its services are of a particular standard, quality, or grade when they were not, in violation of [the CLRA]."  AC ¶ 188.  Contrary to Plaintiffs' assertions, UWM's Terms and Privacy Policy disclose UWM's data collection and sharing practices.  *Supra* at Section IV(A).  Plaintiffs fail to allege facts about any information shared beyond what is disclosed in the Privacy Policy, as required under Rule 9(b).  Their conclusory statements therefore fail to plausibly allege any misrepresentation by UWM.  Because Plaintiffs cannot establish a violation of the underlying statutes, their unlawful prong UCL claim fails as well.  *Hammerling*, 615 F. Supp. 3d at 1094 (dismissing UCL claim when invasion of privacy claims on which UCL claim was premised fail).  And the same Rule 9(b) failure dooms any claim under the deceptive prong of the UCL.

The AC's factual allegations also do not support a claim under the unfair prong of the UCL.  Plaintiffs rely on the three theories of unfairness: (1) substantial, unavoidable injury from the alleged practices, not outweighed by countervailing benefits; (2) the practices are immoral and the utility of the conduct does not outweigh the gravity of the harm; and (3) the practices run

afoul of specific public policy reflected in the law. *See Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394 (2006); AC ¶¶ 194-196. Plaintiffs do not, and cannot, allege facts establishing ***any*** injury from the alleged disclosure of technical information by UWM, much less substantial injury. Plaintiffs also fail to plausibly assert any violation of relevant public policy stated in the law, other than the inapplicable ones discussed *supra*. *Garcia v. Sony Computer Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. 2012) (dismissing UCL claim because plaintiff identifies no legislative policy beyond those the Court already found inapplicable).

Plaintiffs' UCL claim also fails for two additional, independent reasons. The UCL limits standing to those who have "suffered injury in fact and ha[ve] lost money or property as a result of ... unfair competition." Cal. Bus. & Prof. Code § 17204; *Katz-Lacabe v. Oracle Am., Inc*., 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023). Plaintiffs allege no facts showing such injury. Courts have found the alleged property interest in Plaintiffs' information, AC ¶ 201, not to constitute economic injury for UCL standing purposes. *Katz-Lacabe*, 668 F. Supp. 3d at 943 (finding that the misappropriation of personal information does not constitute economic injury for UCL standing purposes); Cal. Bus. & Prof. Code § 17204. In addition, Plaintiffs cannot pursue equitable relief—the only relief available under the UCL—in federal court where they do not and cannot claim the legal remedies of their other claims would be inadequate if they prevailed. *Boone v. Amazon.com Servs., LLC*, 562 F. Supp. 3d 1103, 1127 (E.D. Cal. 2022); *Chen v. JPMorgan Chase Bank, N.A*., 745 F. Supp. 3d 1025, 1035 (C.D. Cal. 2024).

**F.      Because All Other Claims of Plaintiffs Fail, Plaintiffs' Declaratory Judgment Claim Necessarily Fails (Claim 7).**

Plaintiffs also assert a cause of action for relief under the Declaratory Judgment Act. That Act "does not provide an independent theory for recovery; if the underlying claims are dismissed, ... then there is no basis for any declaratory relief." *Hammerling*, 615 F. Supp. 3d at 1097. Because all other claims fail, Plaintiffs' declaratory judgment claim must fail as well.

**V.      CONCLUSION**

For the reasons stated, UWM requests that the Court grant its Motion to Dismiss Plaintiffs' Complaint entirely with prejudice, without leave to amend.

Dated: September 26, 2025

O'MELVENY & MYERS LLP

By:     /s/ Randall W. Edwards
        Randall W. Edwards

Attorneys for Defendant
United Wholesale Mortgage, LLC