Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com

[*additional counsel listed on signature pages*]

***Counsel for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ETHAN ALLISON, AND MARK CALOCA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFFS, <br><br> V. <br><br> UNITED WHOLESALE MORTGAGE, <br><br> DEFENDANT. | Case No. 3:25-cv-05377-WHO <br><br> **RESPONSE IN OPPOSITION TO UNITED WHOLESALE'S MOTION TO DISMISS** <br><br> Judge: William H. Orrick, III <br> Courtroom: 2 – 17th Floor <br><br> Complaint Filed: June 26, 2025 <br> Trial Date: Not set |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND ..................................................................... 2

ARGUMENT ........................................................................................................................... 3

STANDARD OF REVIEW ...................................................................................................... 4

    I.    PLAINTIFFS DID NOT CONSENT TO THIS TYPE OF COLLECTION. ................................... 5

    II.    NEGLIGENCE IS SUFFICIENTLY ALLEGED. ...................................................................... 8

    III.    THE STATUTORY PRIVACY CLAIMS ARE WELL PLED. .................................................. 10

    IV.    PLAINTIFFS' REMAINING CLAIMS ARE SUFFICIENTLY PLED ..................................... 22

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ...................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................5

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...............................................................................10

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023)..................................................................................6

*Balestrieri v. SportsEdTV, Inc.*,
No. 25-CV-04046-SK, 2025 WL 2776356 (N.D. Cal. Sept. 16, 2025)................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................5

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) (Baker, J., concurring) ............................................................7

*In re BetterHelp, Inc.*,
No. 23-CV-01033-RS, 2024 WL 4504527 (N.D. Cal. Oct. 15, 2024) ..................................23

*Brodsky v. Apple Inc.*,
No. 19-CV-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)..........................12, 13

*Brooks v. Bank of Am., N.A.*,
No. 20-CV-01348-BAS-LL, 2021 WL 1541643 (S.D. Cal. Apr. 20, 2021) ..........................26

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ..............................................................................................6

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)..................................................................................27

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ...................................................................................6

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ..................................................................................6

*CTI III, LLC v. Devine*,
    No. 2:21-CV-02184-JAM-DB, 2022 WL 1693508 (E.D. Cal. May 26, 2022) .....................13

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
    No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024 (D. Nev. Aug. 15, 2025) ...................27

*Doe v. Eating Recovery Ctr. LLC*,
    No. 23-CV-05561-VC, 2024 WL 2852210 (N.D. Cal. June 4, 2024) ...................................19

*Dyroff v. Ultimate Software Grp., Inc.*,
    No. 17-CV-05359-LB, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ...................................9

*E.H. v. Meta Platforms, Inc.*,
    No. 23-CV-04784-WHO, 2024 WL 557728 (N.D. Cal. Feb. 12, 2024) ...............................26

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................10

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ...............................................................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ...................................13

*Fregosa v. Mashable, Inc.*,
    No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) (Breyer, J.) .....................................................................................................................................24

*Gabrielli v. Haleon US Inc.*,
    No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) (Orrick, J.) .....................................................................................................................................24

*Garon v. Keleops USA, Inc.*,
    No. 25-CV-02124-DMR, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ...............................24

*Gershzon v. Meta Platforms, Inc.*,
    No. 23-CV-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ...................................18

*Gianino v. Alacer Corp.*,
    No. SACV0901247CJCRNBX, 2010 WL 11468710 (C.D. Cal. Aug. 4, 2010) ...................26

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023)................................................................11

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) .....................................................................4

*Hart v. TWC Prod. & Tech. LLC*,
    526 F. Supp. 3d 592 (N.D. Cal. 2021) .......................................................27

*James v. Walt Disney Co.*,
    701 F. Supp. 3d 942 (N.D. Cal. 2023) .......................................................20

*Jensen v. Brown*,
    131 F.4th 677 (9th Cir. 2025) ......................................................................8

*Johnson v. Homecomings Fin.*,
    2012 WL 1357675 (S.D. Cal. Apr. 19, 2012)..............................................5

*Keebaugh v. Warner Bros. Ent. Inc.*,
    100 F.4th 1005 (9th Cir. 2024) ....................................................................7

*Lakes v. Ubisoft, Inc.*,
    777 F. Supp. 3d 1047 (N.D. Cal. 2025) ......................................................7

*Lee v. Plex, Inc.*,
    773 F. Supp. 3d 755 (N.D. Cal. 2025) ........................................................7

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................10

*Lusnak v. Bank of Am., N.A.*,
    883 F.3d 1185 (9th Cir. 2018) .....................................................................8

*M. H. v. Done Glob. Inc.*,
    No. 24-CV-03040-RFL, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025)..........20

*M.G. v. Therapymatch, Inc.*,
    No. 23-cv-04422-AMO, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .............19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) .....................................................................5

*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................................................8, 9

*In re Meta Pixel Tax Filing Cases*,
   No. 22-CV-07557-PCP, __ F. Supp. 3d __, 2025 WL 2243615 (N.D. Cal.
   Aug. 6, 2025) ............................................................................................................24

*Mikulsky v. Bloomingdale's, LLC*,
   713 F. Supp. 3d 833 (S.D. Cal. 2024)........................................................................18

*Omega-Alpha, Inc. v. Touche Ross & Co.*,
   No. 74 CIV. 2228, 1976 WL 809 (S.D.N.Y. July 9, 1976) ......................................26

*R.H. v. Los Gatos Union Sch. Dist.*,
   33 F. Supp. 3d 1138 (N.D. Cal. 2014) .........................................................................7

*Revitch v. New Moosejaw, LLC*,
   No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)......................21

*Riganian v. LiveRamp Holdings, Inc.*,
   No. 25-CV-00824-JST, __ F. Supp. 3d __, 2025 WL 2021802 (N.D. Cal. July
   18, 2025) ........................................................................................................17, 22, 23

*Rodriguez v. Google LLC*,
   772 F. Supp. 3d 1093 (N.D. Cal. 2025) .....................................................................13

*Rodriguez v. Google LLC*,
   No. 20-CV-04688-RS, 2025 WL 2237720 (N.D. Cal. Aug. 6, 2025) .......................12

*Scott v. Kuhlmann*,
   746 F.2d 1377 (9th Cir. 1984) .....................................................................................8

*Shah v. Cap. One Fin. Corp.*,
   768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............................................................ *passim*

*Shah v. Fandom, Inc.*,
   754 F. Supp. 3d 924 (N.D. Cal. 2024) .......................................................................24

*Smith v. Rack Room Shoes, Inc.*,
   No. 24-CV-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ...............20, 22

*Smith v. Rack Room Shoes, Inc.*,
   No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)......................13

*Stein v. Edward-Elmhurst Health*,
   No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ...............................23

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ...................................................................21

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
    83 F. Supp. 3d 855 (N.D. Cal. 2015) ....................................................................25

*Toy v. Life Line Screening of Am. Ltd.*,
    No. 23-CV-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ................19

*Turner v. Nuance Commc'ns, Inc.*,
    735 F. Supp. 3d 1169 (N.D. Cal. 2024) ...................................................................4

*Yoon v. Meta Platforms, Inc.*,
    No. 24-CV-02612-NC, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ................21

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ...............................................................................18

**Statutes**

15 U.S.C. § 6801 .............................................................................................................9

18 U.S.C. § 2510(15) ....................................................................................................23

18 U.S.C. § 2511(2)(d) .................................................................................................22

Cal. Civ. Code § 1798.80(e) .........................................................................................15

Cal. Civ. Code § 1798.115 ...........................................................................................14

Cal. Civ. Code § 1798.140 ...........................................................................................15

Cal. Civ. Code § 1798.145(e) .......................................................................................16

Cal. Civ. Code § 1798.150 ...........................................................................................14

Cal. Fin. Code § 4052.5 ...............................................................................................16

Cal. Penal Code § 502 ......................................................................................11, 12, 13

Cal. Penal Code § 631(a) .............................................................................................19

California Consumer Privacy Act ..................................................................................14

California Penal Code Section 31 ......................................................................................22

CIPA ........................................................................................................................... *passim*

Comprehensive Data Access & Fraud Act ......................................................................11

Consumer Protection Act .................................................................................................11

Declaratory Judgment Act ...............................................................................................27

ECPA ..................................................................................................................17, 22, 23

Federal Electronic Communications Privacy Act Section 2511(1) ...........................11, 17

Federal Electronic Communications Privacy Act Section 2511(3)(a)...............11, 17, 23

Gramm Leach Bliley Act .................................................................................................16

Privacy Act.......................................................................................................................19

Privacy Act, Section 631...............................................................................11, 17, 19, 20

Privacy Act, Section 632...............................................................................11, 17, 20, 22

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...........................................26

Wiretap Act ......................................................................................................................23

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................1, 5, 11, 24

Fed. R. Civ. P. 12 ...................................................................................................*Passim*

Fed. R. Civ. P. 9 ..............................................................................................................26

Fed. R. Civ. P. 15 ..............................................................................................................3

Fed. R. Civ. P. 56 ............................................................................................................26

**Other Authorities**

Fourth Amendment ..........................................................................................................18

https://www.uwm.com/privacy-policy ..............................................................................6

# INTRODUCTION

Plaintiffs Ethan Allison and Mark Caloca ("Plaintiffs") respectfully submit this response in opposition to Defendant United Wholesale Mortgage, LLC ("United" or "Defendant")'s renewed motion to dismiss the amended complaint. D.E. 26, 29, 32. This case is about a mortgage company becoming a dealer in data, harvesting consumer data and selling it to tech companies in violation of law. The conduct in online tracking cases like this one is troubling, and courts in different jurisdictions employ different (and sometimes conflicting) approaches to tailor a sufficient legal remedy. Consequently, many complaints in these cases allege alternatives theories. This approach is permitted by the plain text of Rule 8, but it is easy to get lost in the weeds of the reams of caselaw in cases about online tracking, pixel technology, and the ins and outs of these claims. Even within this District, there are countless unreported decisions on each of these claims. Accordingly, a return to basic principles is warranted. The Court must assume all facts in the Amended Complaint are true and draw all inferences in favor of the Plaintiffs as pleaders. Put simply: United's motion should be denied, and this case should proceed into discovery.

The conduct alleged in this case involves the disclosure of the most sensitive kinds of data: a person's financial information and condition. This is not a case where a plaintiff is trying to secure a windfall based on how he jiggled his mouse while alone in his basement. This is a case about a mortgage company sharing with tech companies the choices that a consumer-customer makes while interacting with United's website, like the reason a customer is refinancing, what statements they look at, and the choices they make in making payments on their mortgage. This is highly sensitive data that United was bound by law to safeguard. Instead it shared and sold it.

United's kitchen-sink Motion to Dismiss does not bear.

## FACTUAL & PROCEDURAL BACKGROUND

Defendant United is a mortgage lender that has configured secret trackers on its website to harvest and sell consumer data to tech companies. D.E. 26 at ¶¶ 2–4. None of the Plaintiffs consented to the type of data collection alleged here. D.E. 26 at ¶¶ 1, 14, 71, 82, 122, 127. In this case, United used a variety of trackers, including Google, Microsoft, LinkedIn, Crazy Egg, lordofthesuperfrogs.com, and Dynatrace, to transmit personal and financial information of the Plaintiffs and of consumers to tech companies. D.E. 26 at ¶ 44. These trackers allow United to share with tech companies not only who is using United's website and whether that person is a customer, but what types of products the user is viewing on the website, the reason for the user's request, and the customer's selection on the pages. D.E. 26 at ¶ 45. This is far more than just record information of no use to anymore. This is real data that can be and was sold – for a price.

What this means practically is when a customer is cash-rich or cash-poor (and wants to pay their entire mortgage off in one go, or apply for refinancing, or apply for an equity cash-out product), that is information that would be transmitted to the tech companies by United through these trackers. The trackers transmit personally identifiable information that can be used to identify specific users. D.E. 26 at ¶¶ 1, 40, 42, 45, 47, 56. Other trackers use Artificial Intelligence to analyze behavior. D.E. 26 at ¶ 50. Data like this is valuable to tech companies – if a consumer is consistently checking their payment activity, that may mean they are cash poor; if a consumer is consistently checking their tax statements, that may mean they are looking for an accountant. D.E. 26 at ¶ 69. The fact that tech companies have what may seem innocuous data is a nefarious

behavioral monitoring and predictive advertisement business. And United facilitated it.

Like many companies, United has a privacy policy that explicitly says it does not sell data or share it with third parties for marketing purposes. D.E. 26 at ¶ 79. But it does. D.E. 26 at ¶¶ 80, 82. Plaintiffs in this case began seeing targeted ads for United's financial products after they started accessing the United website to pay their mortgages. D.E. 26 at ¶¶ 114, 119. Plaintiff Caloca also started seeing ads for other mortgage servicers. D.E. 26 at ¶ 119. Plaintiffs both provided United with information like their Social Security numbers, credit history, DOBs, and financial information through the United website. D.E. 26 at ¶¶ 112, 117. One of the trackers utilized by United, lordofthesuperfrogs.com, uses code that is so opaque, it is difficult to tell what exactly is being transmitted, but it appears to be collecting substantial user data. D.E. 26 at ¶¶ 61, 70.

Plaintiffs filed their complaint on June 26, 2025. D.E. 1. On August 22, 2025, United filed a motion to dismiss. D.E. 21. On September 12, 2025, pursuant to Fed. R. Civ. P. 15, Plaintiffs amended their complaint. D.E. 26. United filed its motion to dismiss the amended complaint on September 26, 2025. D.E. 29. United also filed a motion to stay discovery, which is briefed and pending. D.E. 28, 30, 33. Of course, on a motion to dismiss, the Court must presume that all facts alleged in the complaint are true. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) (denying motion to dismiss in part in financial pixel case).

## ARGUMENT

United's Motion to Dismiss weaves a litany of kitchen-sink defense arguments and

irrelevant attachments to conclude that this case must be dismissed in its entirety. D.E. 29.[1] For each count, United simply throws spaghetti at the wall, asserting a litany of rejected arguments to suggest that each and every count of this complaint is defective. United is mistaken. In an attempt to secure dismissal of every count in the complaint, United skips around the counts, asserting a consent-based defense that it claims eliminates most of the amended complaint. Plaintiffs mirror the arguments in United's motion in the sections below for ease of review. United's arguments are replete with factual disputes repackaged as rules compelling dismissal here, selectively read case and statutory quotes, and inapposite caselaw. These counts survive and this case should proceed.

## STANDARD OF REVIEW

Rule 8(a)(2) requires only a short and plain statement of the claim giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "does not require 'detailed factual allegations,'" but merely expects "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe the

---

[1] Plaintiffs oppose United's request to judicially notice the documents attached to its Motion. D.E. 29-1. They are designed to distract the Court from the well-pled allegations of the Amended Complaint and are thus irrelevant here. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."). The resolution of this motion does not depend on what exactly the terms and conditions of United's website say, because the harvesting that Plaintiffs allege occurred was outside the scope of the promises in that document. D.E. 26 at ¶¶ 79–82. Further, there is no indication of whether this privacy policy is the one Plaintiffs would have seen, or whether that policy has changed at some point, making it less susceptible to judicial notice. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1181 (N.D. Cal. 2024) (denying request for notice and denying motion to dismiss based on consent argument, as here).

pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

I.     **Plaintiffs did not consent to this type of collection.**

United opens its brief with an argument that rests on a purely factual dispute with Plaintiffs' well-pled complaint, namely, that Plaintiffs consented to the disclosures they allege are problematic. D.E. 29 at 14.[2] This flies in the face of the allegations in the Amended Complaint, which explicitly states that Plaintiffs never consented to this kind of collection. D.E. 26 at ¶¶ 1, 14, 71, 82, 109, 122, 127. Those facts must be presumed true here. Yet United avers that the documents subject to judicial notice attached to its motion contradict "and therefore overcome" the allegations in the complaint. D.E. 29 at 15. That kind of language – that something *outside* the pleadings should "*overcome*" the pleadings – should telegraph to the Court that United's argument is baseless. United avoids mentioning that its Privacy Policy promises to not sell or share customer information for marketing. D.E. 26 at ¶¶ 79–82.[3] This dispute of fact cannot be resolved now.

Consent is generally not a resolvable issue at the Rule 12 stage. Fundamentally, it is an affirmative defense upon which the *defendant* bears the burden of proof. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024). This issue implicates not only whether the Plaintiffs

---

[2] Plaintiffs' references to United's brief rely on the blue pagination at the top of the page rather than the black pagination at the bottom of the page.

[3] United's attachments direct the reader to its privacy policy. D.E. 29-1 at 2. And that Policy states: "Again, UWM does not share your information with third-party companies for their marketing or promotional use and we do not track URLs that you type into your browser, nor do we obtain any information about your usage across the internet once you leave UWM's websites." *See* https://www.uwm.com/privacy-policy. The Amended Complaint alleges that this is in fact happening. D.E. 26 at ¶¶ 79–82.

themselves assented to certain privacy policies, but whether those notices contain sufficient notice of what United did with this data. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (finding lack of consent was sufficiently pled, denying motion to dismiss). It is not appropriate to resolve here. *Shah*, 768 F. Supp. at 1044 ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question, the Court need not reach it at the motion to dismiss stage."); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021) (question of consent was not suited for Rule 12 review). United's attempt to raise consent here flies in the face of the allegations in the Amended Complaint, which must be taken as true.

The cases cited by United are inapposite. D.E. 29 at 15. In *Lakes*, cited by United, the user had to consent every time they made a purchase. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025). And in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020), the Court found that the document in question "did not require the user to make any commitment." Another case cited by United concerns a wrestler's release of any injury claim. *R.H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138, 1166 (N.D. Cal. 2014). That is irrelevant here.

Next, United barrels through to contend that Plaintiffs *impliedly* consented to these policies. D.E. 29 at 16. Consent that is implied rather than express is even more difficult to pin down at the Rule 12 stage. Buried in this section is an assertion that Plaintiffs consented to this collection through a pop-up banner and a hyperlink located on the bottom of United's webpage. These are complex assertions about so-called "browsewrap," "sign-in wrap," and "clickwrap." *See Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 763 (N.D. Cal. 2025) (explaining distinction). United appears to be baldly alleging that its pop-up banner and the link to its privacy policy constitute

enforceable contracts. D.E. 29 at 16. But what United describes is mere browsewrap that is generally unenforceable. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024); *see also generally Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 868 (9th Cir. 2022) (Baker, J., concurring) ("[W]ebsite designers who knowingly choose sign-in wrap—to say nothing of browsewrap—over clickwrap and scrollwrap designs practically invite litigation over the enforceability of their sites' terms and conditions[.]"). The scope of consent and whether these notices were conspicuous enough to create enforceable contracts are best left for later in this case.[4]

Courts have rightly rejected attempts to assert consent defenses this early. And consent is an affirmative defense anyway that must be pled and proven. United has filed a lot of paper in its motion that simply regurgitates the simple URLs to its online privacy policies.[5] This is a wholly insufficient record upon which to conclude that United has met its burden to prove that an affirmative defense should end this case right now. *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025) ("This rule reflects that affirmative defenses require the defendant to prove facts beyond those necessary to support the plaintiff's *prima facie* case, making it difficult to assess the defense's merit on a 12(b)(6) motion where review is limited to the allegations in the complaint."); *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) ("Ordinarily, affirmative defenses such as preemption may not be raised on a motion to dismiss except when the defense

---

[4] Indeed, Plaintiff Caloca began doing business with United after it obtained one of his mortgages. D.E. 26 at ¶ 115. So he did not even apply for a mortgage with United in the first instance.

[5] Meta's privacy policies are irrelevant here to the collection conduct of United. *Cf. In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1000 (N.D. Cal. 2024) ("Meta also has policies that direct developers not to share with Meta data that 'includes health, financial or other categories of sensitive information.' Meta claims that it does not use sensitive personal data for ad targeting.").

raises no disputed issues of fact."); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact.") (internal citation omitted). Consent is a disputed factual issue here. Defendants say Plaintiffs consented, and Plaintiffs say they did not. Thus, consent is not a sufficient basis to dismiss this case now.

## II.     Negligence is Sufficiently Alleged.

Count One alleges that United was negligent by collecting customer data and sharing it with tech companies. D.E. 26 at ¶¶ 155–168. United alleges it owed no duty to consumers. D.E. 29 at 18. This is at odds with the law and with common sense. *Shah*, 768 F. Supp. 3d at 1046 ("Here, Defendant's alleged lack of reasonable care in handling Plaintiffs' personal information caused foreseeable harm to Plaintiffs.") (rejecting a similar "no duty" argument). It is quite something for a mortgage and financial company to suggest that it owed its customers no duty to safeguard their information. Mortgages are one of the biggest investments individuals can make over their lifetimes, and mortgage companies have access to information that, if communicated to a stranger to that relationship, could inform the stranger that the mortgagor is cash-poor, recently secured a windfall, or needs to tap into their equity or refinance. Those are highly personal and confidential pieces of information. And aside from a duty arising from California law, *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024) ("[T]here is abundant authority that California law recognizes a duty on companies to take reasonable steps to protect all sensitive information it obtains from individuals."); *Meta Pixel Tax Filing Cases*, 724 F. Supp. at 1018, federal law supports a duty. *See, e.g.*, 15 U.S.C. § 6801. The case cited by United,

where a mother sued a social networking website where her son met a drug dealer, is not relevant. *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017).

Mortgage companies have a duty to safeguard the data of their customers, especially when the data they collect is shared outside of the context of the mortgagor-mortgagee relationship. Imagine, in a less technical world, a loan officer disclosing to a drinking buddy over beers that Mrs. Jones had come to the bank in her Sunday best and tearily confessed that she needed to tap into her equity to pay her bills or needed to refinance to make ends meet. Sharing such information would be negligent and would unquestionably violate the bank employee's duty to keep Mrs. Jones' confidential information safe.

United also asserts that Plaintiffs do not state a sufficient injury to invoke a negligence theory. D.E. 29 at 18. That flies in the face of the actual text of the Amended Complaint, which sufficiently alleges the specific injuries suffered by these plaintiffs, including improper disclosure of their information, lost value of their information, embarrassment, humiliation, frustration, and emotional distress. D.E. 26 at ¶¶ 131, 165, 167. These are not speculative injuries. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (declining to dismiss negligence theory because plaintiffs' damages were not speculative, and noting at 786: "The alleged injury is 'concrete' largely for the reasons already discussed – if you use a company's social media platform to share sensitive information with only your friends, then you suffer a concrete injury when the company disseminates that information widely."). In *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (cited by United), by contrast, Plaintiffs had only alleged that LinkedIn's negligence actions caused them "harm." *Id.* The injuries here are

likewise greater than those alleged in *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1066 (C.D. Cal. 2024), where the injury was solely based on the loss of value of the plaintiffs' data and where the plaintiffs paid no money to the defendant. The negligence claim in Count One survives.

### III.    The Statutory Privacy Claims Are Well Pled.

United offers a dense series of arguments ultimately expressing a narrow and parochial view of the law governing the statutory claims in Counts Two (Comprehensive Data Access & Fraud Act), Four (Consumer Protection Act), Nine (California Invasion of Privacy Act, Section 631), Ten (California Invasion of Privacy Act, Section 632), Twelve (Federal Electronic Communications Privacy Act Section 2511(1)), and Thirteen (Federal Electronic Communications Privacy Act Section 2511(3)(a)). First, the Rules explicitly countenance pleading in the alternative. Fed. R. Civ. P. 8. Second, new technologies – and the ways in which they infringe upon the privacy of consumers – can be difficult to fit perfectly into older legal frameworks. In short – the statutory claims here are well pled, and there is ample caselaw supporting each of them proceeding here.

### 1.    Count II – Comprehensive Computer Data Access & Fraud Act

Count Two alleges that United violated Cal. Penal Code § 502(c)(2) by knowingly taking Plaintiff's personal and financial information. D.E. 26 at ¶¶ 169–181. United increased its profits as a result of collecting Plaintiffs' personal and financial information, and Plaintiffs are entitled to disgorgement of their share of those profits. D.E. 26 at ¶¶ 31, 131, 179, 230. United requests that this Court construe the statute narrowly, claiming that it only applies to "hacking." D.E. 29 at 19. *But see Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1049 (S.D. Cal. 2023) ("[T]he phrase 'without permission' is not limited to conduct that circumvents a device barrier or 'hacks' a

computer system.") (denying motion to dismiss CDAFA claim and analyzing another consent-defense); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2025 WL 2237720, at *3 (N.D. Cal. Aug. 6, 2025) ("The statute does not use the term anti-hacking and prohibits more than just hacking by its plain language and as shown by precedent."). The statute's text is broad. Cal. Penal Code § 502(a) ("The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and *computer data* is vital to the protection of the *privacy of individuals* as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.") (emphasis added).[6]

United also argues that the Amended Complaint fails to allege that United accessed or disrupted a computer system. But it does. D.E. 26 at ¶¶ 177, 178. The Amended Complaint explicitly pleads that United installed a "computer contaminant" via its tracking technologies. The technology employed by United enabled the transmission of consumers' personal data to tech companies, taking information communicated from an individual and their financial institution out of the context of that relationship and sharing and selling it. The cases offered by United on this point are inapposite. In *Brodsky*, Plaintiffs offered no allegations about how certain technology "offers Apple access to Plaintiffs' information that is somehow different from Apple's access through other Apple ID login methods." *Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL

---

[6] Further, the statute's definition of "data" is broad: "a representation of information, knowledge, facts, concepts, computer software, or computer programs or instructions. Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device." Cal. Penal Code § 502(b)(8).

RESPONSE IN OPPOSITION TO UWM'S MTN TO DISMISS
CASE NO 3:25-CV-05377-WHO

4141936, at *9 (N.D. Cal. Aug. 30, 2019). That is different than here, where Plaintiffs have alleged how this data collection works and how information transmitted to United (like the fact that a consumer wants to refinance) is private. Plaintiffs need not plead that United circumvented code-based barriers. *CTI III, LLC v. Devine*, 2022 WL 1693508, at *5 (E.D. Cal. May 26, 2022) (denying motion to dismiss CDAFA claim, noting circumventing technical barriers is not required).

Next, United argues that Plaintiffs insufficiently allege damages. But here, where Plaintiffs have alleged a disgorgement theory, D.E. 26 at ¶¶ 31, 131, 179, 230, courts have said that such damages are sufficiently pled under the CDAFA. *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) ("In light of that intent, Rack Room's alleged unjust profit from the use of Plaintiffs' private personal information, which holds at least some financial value to Rack Room, plausibly constitutes a 'damage or loss' within the meaning of CDAFA."); *see also Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) ("Accordingly, a reasonable juror could find that Plaintiffs suffered damage or loss because Google profited from the misappropriation of their data.") (denying summary judgment). And importantly, "Section 502 sets no threshold level of damage or loss that must be reached to impart standing to bring suit. Under the plain language of the statute, any amount of damage or loss may be sufficient." *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010). Count Two survives.

### 2. Count IV – California Consumer Privacy Act

Count Four alleges that United violated Cal. Civ. Code § 1798.115 and Cal. Civ. Code § 1798.150 by sharing personal information with a third party without consent. D.E. 26 at ¶¶ 205–

214. United argues the allegations in the Amended Complaint do not meet the definition of "personal information" in the statute (wrong), that Plaintiffs do not allege facts showing a security breach (not required), and that they are carved out by the statute as a financial institution (wrong).

CCPA has a wide-reaching definition of personal information, which defines personal information in the disjunctive to include a vast array of things, including purchasing or consuming histories or tendencies, sensitive personal information, information regarding a consumer's interaction with a website, and inferences drawn from that information. Cal. Civ. Code § 1798.140(v)(1). This is as wide-ranging as statutory definitions get. First, the definition is explicitly open-ended, indicating that the representative list "includes but is not limited to" the examples cited. Second, the statute explicitly links itself to Section 1798.80(e), which includes "any other financial information." Cal. Civ. Code § 1798.140(v)(1)(B); Cal. Civ. Code § 1798.80(e) ("'Personal information' means any information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, social security number…address, telephone number…insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or *any other financial information*…") (emphasis added). United is wrong that Plaintiffs do not sufficiently allege that their personal information is included in the statutory definition here. *Compare* D.E. 26 at ¶¶ 1, 97, 101–102, 156, 206–207, *with* Cal. Civ. Code § 1798.140(v)(1)(B); Cal. Civ. Code § 1798.80(e).

Contrary to what United says it its brief, D.E. 29 at 21–22, the law does not require Plaintiffs to plead a security breach. *Shah*, 768 F. Supp. 3d at 1048–49 ("Courts, however, have

also permitted the CCPA claims to survive a motion to dismiss in cases where the plaintiff does not allege a data breach, but instead where the 'defendants disclosed plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices.'") (quoting *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024)). *See also* D.E. 26 at ¶¶ 73, 131(f), 154(i).

Finally, United contends in a throwaway paragraph that the CCPA "expressly carves out an exemption for information subject to the GLBA." D.E. 29 at 22. United then quotes that section, Cal. Civ. Code § 1798.145(e), to relay that it says: "This title shall not apply to personal information collected, processed, sold, or disclosed subject to the federal Gramm-Leach-Bliley Act[.]" But United conveniently omits the *rest of that carveout*, which says in full:

> This title shall not apply to personal information collected, processed, sold, or disclosed subject to the federal Gramm-Leach-Bliley Act (Public Law 106-102), and implementing regulations, or the California Financial Information Privacy Act (Division 1.4 (commencing with Section 4050) of the Financial Code), or the federal Farm Credit Act of 1971 (as amended in 12 U.S.C. 2001-2279cc and implementing regulations, 12 C.F.R. 600, et seq.). *This subdivision shall not apply to Section 1798.150.*

Cal. Civ. Code § 1798.145(e) (emphasis added). That is precisely one of the sections at issue in this case. In addition, the allegations in this case are that United failed to honor its obligations under federal law to protect consumer data. D.E. 26 at ¶¶ 11, 96–109. Thus, the carveout does not apply, because United did not collect, process, sell, or disclose consumer data subject to that law. No information is collection, processed, sold, or disclosed pursuant to the Gramm Leach Bliley Act in any event, making this exception irrelevant to this case. Further, in general, "a financial institution shall not sell, share, transfer, or otherwise disclose nonpublic personal information to

or with any nonaffiliated third parties without the explicit prior consent of the consumer to whom the nonpublic personal information relates." Cal. Fin. Code § 4052.5. Count Four survives.

### 3. Counts IX, X, XII, and XIII – CIPA and ECPA.

Count Nine alleges that United violated the California Invasion of Privacy Action ("CIPA"), Cal. Penal Code § 631. D.E. 26 at ¶¶ 249–272. Count Ten alleges that United violated a different section of the same statute, Cal. Penal Code § 632. D.E. 26 at ¶¶ 273–290. Count Twelve alleges that United violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1). D.E. 26 at ¶¶ 304–321. Count Thirteen alleges that United violated a different section of the ECPA, 18 U.S.C. § 2511(3)(a). D.E. 26 at ¶¶ 322–334. United argues in one section of its brief that all these counts fail for various reasons. D.E. 29 at 22–29.

#### a. Arguments Applicable to Both Statutes

United first attempts to argue that it cannot be liable under CIPA or the ECPA because it did not read the communications in question. D.E. 29 at 24 ("Neither UWM nor its third party service providers divulged, read or attempted to read or learn the 'contents' of Plaintiffs' communications."). This is a factual dispute. Whether communications are read in transit is a "fact-intensive question that depends on how the challenged technology and processes actually work[.]" *Riganian*, 2025 WL 2021802, at *10. And the Court must presume Plaintiffs' allegations regarding the contents of their communications are true. D.E. 26 at ¶¶ 257, 259, 262, 276, 280, 326.

More substantively, United next contends that the information Plaintiffs entered on its website is simply "record information" not subject to the ECPA or to CIPA. D.E. 29 at 25. That is not accurate. Plaintiffs allege that their substantive interactions with United's website were

disclosed – like which pages they viewed, their status as a customer, the actions performed on the website, the kinds of products they looked at, activities relating to their loans, and how the user interacted with the website were disclosed. D.E. 26 at ¶¶ 4, 45, 128, 269. Consider what that means in the context of a financial institution like United. Want to refinance because your interest rate is too high? Want to cash out your equity because you are getting divorced? Want to borrow against your equity because you need cash? Want to pay off your mortgage in full because you just won the lottery? Want to check interest rates inside the customer portal? Want to grab all your tax statements at once to send them to your accountant because you incorrectly deducted mortgage interest? Checking refinance rates within United's portal every day for a week to see how the rates are changing? That is the substance of what United sent to the tech companies through these trackers. D.E. 26 at ¶¶ 4, 45, 128, 269. This is not simply information like "button clicks" and "mouse movements," which does not necessarily convey anything about why the consumer is on the page. *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024). This is highly personal financial information that should never have been shared or sold.

Information like why you want to refinance is not record information. D.E. 26 at ¶ 269. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("Under the Fourth Amendment, courts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy)."); *Gershzon v. Meta Platforms, Inc.*, No. 23-CV-00083-SI, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) ("This type of information is substantive and personal, as it shows that Gershzon has a disability (or believes that

he has a disability) and that he requires a disability parking placard."). The information alleged in the complaint is far more than "record information." D.E. 26 at ¶¶ 4, 45, 128, 269; *see also Shah*, 768 F. Supp. 3d at 1054 ("Because Plaintiffs' communications included Plaintiffs' personal information, Defendant therefore disclosed contents of the communication.").

**b. CIPA – Counts Nine and Ten**

Section 631(a) of California's Invasion of Privacy Act ("CIPA") prohibits persons from "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with" a third party to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit" unless all parties consent. Cal. Penal Code § 631(a). Plaintiffs allege in Count Nine and elsewhere that the trackers employed by United send information to third parties as soon as the page loads. D.E. 26 at ¶¶ 31, 34, 108, 262. That is sufficient to plead interception. *Toy v. Life Line Screening of Am. Ltd.*, No. 23-CV-04651-RFL, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) ("Regarding the latter, the complaint offers highly detailed allegations about how Pixel works and how the alleged interception occurs.") (denying motion to dismiss CIPA claim); *see also Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024); *M.G. v. Therapymatch, Inc.*, No. 23-CV-04422-AMO, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024). This is not a sufficient basis to dismiss Counts Nine.

Next, as to Count Nine, United argues that Plaintiffs have failed to allege sufficient facts showing that United aided or conspired with third parties to violate Section 631. D.E. 29 at 26. But again, that flies in the face of the allegations of the Amended Complaint. D.E. 26 at ¶¶ 257, 259, 278. And the allegations here are that United employed technology developed by third parties to

intercept these communications. D.E. 26 at ¶¶ 38–40. United knew that its website incorporated

tracking systems and that those systems would send nonpublic personal information to third and

fourth parties. D.E. 26 at ¶¶ 133, 161, 246, 267. United's argument would read an intent

requirement into Section 631. *Balestrieri v. SportsEdTV, Inc.*, No. 25-CV-04046-SK, 2025 WL

2776356, at *11 (N.D. Cal. Sept. 16, 2025) ("Allegations that a defendant intended to collect and

disclose information are sufficient to plead intent.") (denying motion to dismiss CIPA claim in

pixel case); *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 ("Therefore, it is plausible to infer

from Rack Room's alleged affirmative act of integrating the third-party code into its website that

it knew Meta and Attentive would intercept personally identifiable information and that Rack

Room had the purpose of employing Meta and Attentive to do so.") (Section 631 claim survived);

*M. H. v. Done Glob. Inc.*, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) ("The Complaint

alleges that Done purposefully installed these tracking technologies—which Done knew would

invisibly transmit a user's website communications to third-party companies to facilitate ad

retargeting—to optimize its own advertising and marketing."); *James v. Walt Disney Co.*, 701 F.

Supp. 3d 942, 953 (N.D. Cal. 2023) (rejecting argument that Disney could not be liable under

CIPA for similar reasons asserted here). Count Nine survives.

Next, United attacks Count Ten, implicating Section 632 of the CIPA. Count Ten alleges

that United violated Cal. Penal Code § 632. D.E. 26 at ¶¶ 273–290. At the end of its laundry list

of reasons the Section 632 claims should fail, United argues that the communications are not

confidential and that Plaintiffs are seeking relief for United's "alleged derivative liability for

assisting third parties in violating the statute." D.E. 29 at 27. This word salad should not persuade.

First, confidentiality. The Amended Complaint specifically pleads that the information shared by United with the tech companies was confidential financial information protected by different statutory regimes under federal and state law. D.E. 26 at ¶¶ 1, 10, 72, 121, 123, 129. It also pleads that Plaintiffs expected United to keep their information confidential. D.E. 26 at ¶¶ 123, 218, 258, 263. As discussed above, Plaintiffs' experiences in these cases reflect the nefarious nature of what was shared. By merely paying their mortgages, checking statements, and making payments, Plaintiffs saw targeted ads for refinancing and the like. D.E. 26 at ¶¶ 111, 114, 116, 119. A conversation with a financial institution like United – about one's mortgage, taxes, a choice of whether to refinance or pull out equity – carries objective indicia of confidentiality. This is different from simple web activity. Using the Home Depot customer service chat carries no similar indicia of confidentiality – it is simply interacting with a retailer online. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (cited by United); *see also Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("Nothing about these particular internet communications – inquiring about items of clothing on a retail website – warrants a deviation from this general rule.") (also cited by United).[7] This case is wholly different. United is a large mortgage lender and servicer. D.E. 26 at ¶ 3. A mortgage is one of the biggest financial products in a consumer's life. United should not have shared the kind of data and the volume of data that it did.

---

[7] In fact, one of the cases cited by United as supporting its claim that this data is *not* confidential actually found that the CIPA claim survived a Rule 12 challenge because it *was* confidential. *Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612-NC, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024) ("The collected data here is therefore confidential because it allegedly reveals the exact title of the video being watched.").

RESPONSE IN OPPOSITION TO UWM'S MTN TO DISMISS
CASE NO 3:25-CV-05377-WHO

Second, United alleges that Plaintiffs' claims are based on derivative liability. D.E. 29 at 29. There is no case cited for this bold rewriting of Section 632. This argument has been rejected by courts because Section 31 of the California Penal Code makes all persons aiding and abetting in the commission of a crime principals. *Rack Room Shoes*, 2025 WL 1085169, at *5 ("Thus, to establish liability, Rack Room must have knowledge of Meta and Attentive's breach of duty and must have provided substantial assistance. As discussed above, Plaintiffs adequately allege that Rack Room knew that Meta and Attentive's data collection had the purpose of tracking individually identifiable user habits, despite provisions of Rack Room's policy that created a contrary expectation."). Here, Plaintiffs allege that United knew exactly what it was doing and that its conduct would lead to the consequences described in the complaint. D.E. 26 at ¶¶ 133, 161, 267. That is sufficient.

### c.  ECPA – Counts Twelve and Thirteen

First, United regurgitates its consent defense, which fails for the reasons articulated above. D.E. 29 at 23. Second, United argues that the consent of one party is a complete defense to a claim under the ECPA. The cases that United cites for this proposition are all cases where consent was not disputed. Here, it is disputed. D.E. 26 at ¶¶ 1, 14, 71, 82, 109, 122, 127. And even then, Plaintiffs are invoking the crime-tort exception to the Wiretap Act's consent defense. 18 U.S.C. § 2511(2)(d). And as other courts have found, the crime-tort exception applies here. *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, __ F. Supp. 3d __, 2025 WL 2021802, at *10 (N.D. Cal. July 18, 2025) ("Because Plaintiffs have otherwise adequately alleged that LiveRamp intercepted their communications for the purpose of 'associating their data with preexisting

[identity] profiles' and then preparing that data for sale on LiveRamp's data marketplace—triggering the crime-tort exception and rendering consent an inapplicable defense—the Court declines to dismiss their Wiretap Act claim.") (internal citations omitted); *see also Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime – it was to make money."). Consent is not a defense to the ECPA claims here.

United also argues that Plaintiffs' claim under Section 2511(3)(a) of the ECPA in Count Thirteen cannot proceed. D.E. 29 at 26. The language of the statute is clear: an electronic communication service is "any" service that provides users with the ability to send or receive electronic communications. 18 U.S.C. § 2510(15). Courts in this district have allowed these claims to proceed beyond the Rule 12 stage. *In re BetterHelp, Inc.*, No. 23-CV-01033-RS, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024). It should proceed.

### 4. Count XI – CIPA Section 638.51 Claims

Next, United alleges that Count Eleven cannot proceed because internet technologies are not pen registers. D.E. 29 at 29. Count Eleven alleges that United violated a different section of CIPA by using a pen register or trace device without obtaining a court order. D.E. 26 at ¶¶ 291–303. This argument has been rejected by numerous courts in this District, including this Court. *See Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *11 (N.D. Cal. Aug. 29, 2025) (Orrick, J.) ("Haleon argues that internet technologies are not 'pen registers.' This argument has been considered and rejected multiple times."); *see also Fregosa v. Mashable, Inc.*,

No. 25-CV-01094-CRB, 2025 WL 2886399, at *6 (N.D. Cal. Oct. 9, 2025) ("Courts in this district have widely recognized that trackers capturing IP addresses and related metadata fall comfortably within the definition of a 'pen register.'") (Breyer, J.) (similar); *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557-PCP, __ F. Supp. 3d __, 2025 WL 2243615, at *3 (N.D. Cal. Aug. 6, 2025) (denying motion to dismiss pen register claim in pixel case); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (similar). The state court cases upon which United relies have been rejected by the federal courts. *Garon v. Keleops USA, Inc.*, No. 25-CV-02124-DMR, 2025 WL 2522374, at *5 (N.D. Cal. Sept. 2, 2025). And this conclusion makes sense – otherwise, the statute would have little application in our digital world. Count Eleven's allegations are sufficient.

## IV.   Plaintiffs' Remaining Claims Are Sufficiently Pled.

At the end of its brief, United attempts to find reasons to invalidate the remaining counts it had not yet addressed. Each of those counts is valid for the reasons explained below. And of course, Plaintiffs may plead alternative, even conflicting claims. Fed. R. Civ. P. 8(d)(2).

First, United argues that Plaintiffs' breach of contract, unjust enrichment, and breach of confidence claims cannot proceed because they are "predicated on the notion that UWM breached an express or implied contract." D.E. 29 at 31. The breach of contract claim, Count Five, is a simple alternative theory: that United breached the promises made in the Privacy Policy and elsewhere. D.E. 26 at ¶¶ 14, 74–82, 215–221. The allegation is that United did something at odds with that agreement. D.E. 26 at ¶¶ 79–82. *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855 (N.D. Cal. 2015), a case about solar panel contracts, has no application here whatsoever, because Plaintiffs are permitted to plead in the alternative at this stage as to

implied and express contract theories. The unjust enrichment and breach of confidence theories do not depend on a contract existing – Plaintiffs expected United to safeguard their information, and instead it shared that information to derive an unjust benefit. Those claims survive.

United then avers that Plaintiffs have not sufficiently pled damages arising from their contract claim. But as United admits, damages are indeed alleged here – United simply does not like what is alleged. D.E. 26 at ¶¶ 131, 221. And while Plaintiffs could theoretically have to elect between remedies down the road, there is no barrier to pleading here in the alternative.

Count Eight alleges that United breached Plaintiffs' confidences by sharing and selling their personal data. D.E. 26 at ¶¶ 239–248. United says the data it disclosed was neither confidential nor novel. D.E. 29 at 32. United again mischaracterizes the nature of the information that Plaintiffs allege was shared here. As discussed above, a consumer's interactions with United's website could have led to the sharing of extremely sensitive information about the consumer's financial outlook and health. Count Eight survives.

United next alleges that Plaintiff's consumer protection claim is insufficiently pled. D.E. 29 at 24. Count Three alleges that United violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, by installing pixel trackers on its website. D.E. 26 at ¶¶ 182–204. United first argues the claim is insufficiently pled under Fed. R. Civ. P. 9(b). Rule 9(b) has no application here – Plaintiffs have not alleged a fraud claim. As noted by United, UCL claims sound in unlawfulness, unfairness, or fraud. And indeed, the Amended Complaint specifically pleads unlawfulness and unfairness. D.E. 26 at ¶¶ 185, 186, 193, 194. Count Three does not plead the fraud prong of the UCL. So "plaintiffs do not need to meet Rule 9(b) or identify misrepresentations

RESPONSE IN OPPOSITION TO UWM'S MTN TO DISMISS
CASE NO 3:25-CV-05377-WHO

based on their claims that Meta's conduct is unfair or illegal under the UCL." *E.H. v. Meta Platforms, Inc.*, No. 23-CV-04784-WHO, 2024 WL 557728, at *3 (N.D. Cal. Feb. 12, 2024).[8]

Next, United says that the factual assertions in the complaint do not support a claim for unfairness under the UCL. But whether something is fair or unfair is a question better suited for resolution later in this case, via a Rule 56 motion or at trial. *Brooks v. Bank of Am., N.A.*, No. 20-CV-01348-BAS-LL, 2021 WL 1541643, at *4 (S.D. Cal. Apr. 20, 2021) ("The actual weighing of the parties' respective interests is not appropriately resolved at the pleading stage.") (collecting cases and addressing unfairness claim under UCL); *Gianino v. Alacer Corp.*, No. SACV0901247CJCRNBX, 2010 WL 11468710, at *4 (C.D. Cal. Aug. 4, 2010) ("[A]cts and evidence have not yet been adduced, therefore, the issue of whether Plaintiffs have properly supported their claim under the UCL's unfairness prong is more appropriately considered on a motion for summary judgment."). United also claims in passing that Plaintiffs lack standing under the UCL because their injuries do not suffice. D.E. 29 at 24. But the injuries Plaintiffs allege are cognizable bases for UCL liability. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("Indeed, the Ninth Circuit and a number of district courts, including this Court, have

---

[8] Even if the Court construes Plaintiffs' claims as subject to Rule 9(b) or sounding in fraud, the Amended Complaint passes muster. Rule 9 requires that fraud claims be pled with specificity. This is a highly detailed complaint demonstrating how the data collection at issue works and how it harms consumers. The who, what, when, where, and how are exhaustively chronicled. Rule 9 is not a sword by which defendants should be able to defeat well-pled claims – it is a shield for defendants to require plaintiffs to plead with sufficient particularity. *Omega-Alpha, Inc. v. Touche Ross & Co.*, No. 74 CIV. 2228, 1976 WL 809, at *2 (S.D.N.Y. July 9, 1976) ("Rule 9(b) should not, however, become a sword in the hands of a defendant that cuts off claims that may be meritorious, especially when it is clear that the party accused of fraud has sufficient information to defend himself.").

RESPONSE IN OPPOSITION TO UWM'S MTN TO DISMISS
CASE NO 3:25-CV-05377-WHO

concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024, at *12 (D. Nev. Aug. 15, 2025) (similar).

Finally, United alleges that Plaintiffs' declaratory judgment claim must be dismissed because all of the other claims fail. That too is wrong. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 604 (N.D. Cal. 2021) ("the Declaratory Judgment Act 'specifically allows a plaintiff to seek declaratory relief regardless of other claims brought.'") (quoting *In re Am. Bankers Ins. Co. of Fla.*, 2020 WL 137164, at *3 (N.D. Cal. Jan. 13, 2020)).

## CONCLUSION

United's motion rehashes many arguments that the courts in this District have rejected before. This is a motion in search of a theory, flinging every possible doctrine and unreported case at the wall to see what sticks. And indeed, many of the issues raised by United's motion are well-worn territory in this Court, with different judges going different ways on some of these same claims. What matters is this. When a consumer interacts with a mortgage company, the information they share with that mortgage company is private. This mortgage company has, in search of greater profit, decided that sharing and selling consumer data is good business. But in the process, the technologies that it employed caused the disclosure of data that should not have been shared under the law. Plaintiffs have pled different theories of recovery to seek redress for those injuries. In today's connected world, information about a consumer (intimate information like whether someone is cash-poor, needs to refinance, or whether they are cashing out their equity) is very valuable. That's why United sold it. This motion should be denied.

Dated: October 31, 2025

Respectfully submitted,

Natalie Lyons, No. 293026
Vess A. Miller, No. 278020
Lynn A. Toops*
Lisa M. La Fornara*
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
nlyons@cohenmalad.com
vmiller@cohenmalad.com
ltoops@cohenmalad.com
llafornara@cohenmalad.com

J. Gerard Stranch, IV*
Emily E. Schiller*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
eschiller@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
STRAUSS BORRELLI, PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

*To seek admission *pro hac vice*

***Counsel for Plaintiffs and the Proposed Classes***

RESPONSE IN OPPOSITION TO UWM'S MTN TO DISMISS
CASE NO 3:25-CV-05377-WHO

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I attest that each of the other Signatories have concurred in the filing of the document, which shall serve in lieu of their signatures on the document.

Dated: October 31, 2025                    */s/ Natalie A. Lyons*
                                            Natalie A. Lyons

RESPONSE IN OPPOSITION TO UWM'S MTN TO DISMISS
CASE NO 3:25-CV-05377-WHO