RANDALL W. EDWARDS (C.S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:     +1 415 984 8700

DAVID MARROSO (C.S.B. #211655)
dmarroso@omm.com
REBECCA A. GIROLAMO (C.S.B. #293422)
bgirolamo@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California  90067-6035
Telephone:     +1 310 553 6700

REEMA SHAH (*pro hac vice*)
rshah@omm.com
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, 17th Floor
New York, New York  10019
Telephone:     +1 212 326 2000

Attorneys for Defendant
United Wholesale Mortgage, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN ALLISON, and MARK CALOCA, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>UNITED WHOLESALE MORTGAGE,<br><br>            Defendant. | Case No. 3:25-cv-05377-WHO<br><br>**UNITED WHOLESALE MORTGAGE, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Judge: William H. Orrick<br>Date: December 3, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2 – 17th Floor<br><br>Complaint Filed: June 26, 2025<br>Trial Date: Not set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 1

    A.    PLAINTIFFS' CLAIMS FAIL BECAUSE THEY CONSENTED TO UWM'S TERMS AND PRIVACY POLICY. ............................................................ 1

    B.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS (CLAIM 1). ................................. 4

    C.    PLAINTIFFS' STATUTORY CLAIMS FAIL (2, 4, 9, 10, 11, 12, 13). ................. 6

        1.    Plaintiffs Fail to Plausibly Allege Violation of the CDAFA (Claim 2). ......................................................................................................... 6

        2.    Plaintiffs Fail to Plausibly Allege Violation of the CCPA (Claim 4). ......................................................................................................... 8

        3.    Plaintiffs Fail to Plausibly Allege Violation of CIPA Sections 631 and 632 or ECPA (Claims 9, 10, 12, and 13)......................................... 8

            a.    Plaintiffs Do Not Establish That the Basic Information At Issue Is Protected "Contents" of Communications.. ....................... 9

            b.    Plaintiffs Fail to Allege that UWM Intended to Aid Third Parties' Purportedly Unlawful Conduct.. ...................................... 10

            c.    Plaintiffs' CIPA Section 632 Claim Fails As a Matter of Law....................................................................................................... 11

            d.    Plaintiffs' ECPA Claims Are Barred By UWM's Consent and UWM Is Not an "Electronic Communications Service Provider." ....................................................................................... 12

        4.    Plaintiffs Do Not Plausibly Allege that UWM Used Any Pen Register or Trap and Trace Device Under CIPA Section 638.51 (Claim 11). ............................................................................................... 12

    D.    PLAINTIFFS' BREACH OF CONTRACT, UNJUST ENRICHMENT, AND BREACH OF CONFIDENCE CLAIMS ALL FAIL (CLAIMS 5, 6, 8). ......................................................................................................................... 13

    E.    PLAINTIFFS' UNFAIR COMPETITION CLAIM FAILS (CLAIM 3)............... 14

    F.    THE DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED (CLAIM 7). .......................................................................................................... 15

III.  CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) .................................................. 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................. 6, 14

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023).................................................. 9

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................. 15

*Cottle v. Plaid, Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................. 2

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024).................................................. 2

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................................................. 12

*CTI III, LLC v. Devine*,
2022 WL 1693508 (E.D. Cal. May 26, 2022).................................................. 7

*Dickey v. Ticketmaster LLC*,
2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .................................................. 3

*Doe v. Eating Recovery Center LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025 .................................................. passim

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................. 7

*Forrett v. Gourmet Nut, Inc.*,
634 F. Supp. 3d 761 (N.D. Cal. 2022) .................................................. 11

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025).................................................. 13

*Garcia v. Sony Computer Ent. Am., LLC*,
859 F. Supp. 2d 1056 (N.D. Cal. 2012) .................................................. 15

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023).................................................. 9

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................ 15

*Hart v. TWC Product. & Technology. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) .......................................................... 15

*Heiting v. Taro Pharms. USA, Inc*.,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023)......................................................... 6

*In re Accellion, Inc. Data Breach Litig*.,
   713 F. Supp. 3d 623 (N.D. Cal. 2024) .......................................................... 4

*In re BetterHelp, Inc*.,
   WL 4504527 (N.D. Cal. Oct. 15, 2024).......................................................... 12

In *re Data Breach Sec. Litig. Against Caesars Ent., Inc.,*
   2025 WL 2393024 (D. Nev. Aug. 15, 2025) ................................................. 15

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................... 5

*In re Meta Pixel Tax Filing Cases*,
   724 F. Supp. 3d 987 (N.D. Cal. 2024) .......................................................... 4

*In re Zynga Priv. Litig*.,
   750 F.3d 1098 (9th Cir. 2014)....................................................................... 9

*James v. Walt Disney Co*.,
   701 F. Supp. 3d 942 (N.D. Cal. 2023) .......................................................... 10

*Katz-Lacabe v. Oracle Am., Inc*.,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) .......................................................... 12

*Keebaugh v. Warner Bros. Entertainment. Inc.,*
   100 F.4th 1005 (9th Cir. 2024)....................................................................... 3

*King v. Hard Rock Cafe Int'l (USA), Inc*.,
   2025 WL 1635419 (E.D. Cal. June 9, 2025)................................................. 9

*Lakes v. Ubisoft, Inc*.,
   777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........................................................ 2

*Low v. LinkedIn Corp*.,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................ 5

*M. H. v. Done Glob. Inc*.,
   2025 WL 629613 (N.D. Cal. Feb. 26, 2025)................................................. 10

*Mikulsky v. Bloomingdale's, LLC*,
   713 F. Supp. 3d 833 (S.D. Cal. 2024) ........................................................... 9

*Nazemi v. Specialized Loan Servicing, LLC*,
    637 F. Supp. 3d 856 (C.D. Cal. 2022) ............................................................................. 15

*Nevarez v. Forty Niners Football Co.*,
    2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ..................................................................... 3

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) .............................................................................................. 3

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................................... 11

*Riaganian v. LiverRamp Holdings Inc.*,
    791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........................................................................... 12

*Roe v. Amgen Inc.*,
    2024 WL 2873482 (C.D. Cal. June 5, 2024) ........................................................... 6, 8, 15

*Sass v. Cal. Bd. of Prison Terms*,
    376 F. Supp. 2d 975 (E.D. Cal. 2005) ............................................................................. 13

*Shah v. Capital One Financial Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........................................................................ 4, 8

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ......................................................................................... 2

*Smith v. Rack Room Shoes, Inc.*,
    2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ................................................................... 10

*Smith v. Rack Room Shoes, Inc.*,
    2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ........................................................... 7, 8, 11

*Smith v. YETI Coolers, LLC*,
    754 F. Supp. 3d 933 (N.D. Cal. 2024) ............................................................................ 10

*Stoba v. Saveology.com, LLC*,
    2014 WL 3573404 (S.D. Cal. July 18, 2014) ................................................................. 11

*Tabler v. Panera LLC*,
    2020 WL 3544988 (N.D. Cal. June 30, 2020) ................................................................ 14

*Tian v. Bank of Am., N.A.*,
    2025 WL 1377767 (C.D. Cal. Apr. 2, 2025) ..................................................................... 8

*Tsai v. Wang*,
    2017 WL 2587929 (N.D. Cal. June 14, 2017) ................................................................ 14

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ............................................................................................ 7

*Yoon v. Meta Platforms, Inc.*,
    2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ............................................................. 9

**Statutes**

Cal. Civ. Code § 1798.140(v)(1) ............................................................................................ 8

Cal. Civ. Code § 1798.150(a) ................................................................................................ 8

Cal. Civ. Code § 1798.81.5(d)(1)(A) ..................................................................................... 8

Cal. Civ. Code §§ 1798.100 et seq. ....................................................................................... 1

Cal. Penal Code § 631(a) .......................................................................................... 9, 10, 11

Cal. Penal Code § 632 ................................................................................................. 11, 12

Cal. Penal Code § 638.51 ..................................................................................................... 13

## I.    **INTRODUCTION**

Plaintiffs' Opposition weaves a tale long on conclusory accusations—even beyond what is in the Amended Complaint ("AC")—but fails to contend with the key identified shortcomings of the AC's factual allegations and many independent legal grounds for dismissal stated in UWM's Motion. Many such deficiencies are present throughout the AC and the Opposition in large part because the AC seeks to shoehorn new technologies into overstretched interpretations of decades-old statutes that simply do not apply to the limited factual allegations included in the AC. Plaintiffs themselves recognize that their claims about UWM's alleged technologies do not "fit perfectly into older legal frameworks." Opp. at 10. That concession is a bright red flag, and the consistent disconnect between Plaintiffs' factual allegations and the law requires dismissal. Plaintiffs lament that if the law is not stretched as they advocate, those laws built for different conduct "would have little application in our digital world." *Id.* at 22. But that reasoning is backwards: as Judge Chhabria noted in *Jane Doe v. Eating Recovery Center LLC*, courts should not contort themselves to stretch decades-old laws to allow internet privacy claims involving limited conduct like that here. 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). This is all the more true because the Legislature enacted the CCPA specifically to establish a modern privacy law covering internet privacy, but imposed strict limits on claims. As detailed below, no amount of creative rewriting and conclusory statements changes that Plaintiffs' factual allegations fail to state any claim.

## II.    **ARGUMENT**

### A.    **PLAINTIFFS' CLAIMS FAIL BECAUSE THEY CONSENTED TO UWM'S TERMS AND PRIVACY POLICY.**

The Opposition does not cure the underlying deficiency in all of Plaintiffs' claims: they expressly and impliedly consented to UWM's Terms of Use ("Terms") and Privacy Policy, which disclose the information sharing at issue here. Mot. at 5–8; AC ¶ 74. The Privacy Policy, for example, discloses that UWM uses "cookies" to track website usage, including "IP address . . . page views and links clicked, . . . browser type and version, and other aspects . . . [of] website [interaction]" to improve website experience. AC, Ex. B at 2–5. Plaintiffs acknowledge that the Privacy Policy constitutes a contract between customers and UWM, AC ¶ 74—and never dispute

that they agreed to it, establishing express consent. They instead try to avoid it by (1) framing

consent as an affirmative defense, (2) arguing that the Privacy Policy is an unenforceable

browsewrap agreement, and (3) arguing that the Privacy Policy does not govern because UWM

allegedly did not follow it. Opp. at 2, 5–8. Plaintiffs are plainly incorrect.

First, consent is an element of each claim in the AC. Mot. at 5–6 (citing cases). Plaintiffs'

own case law supports UWM's position. *See* Opp. at 5–6; *Cody v. Ring*, 718 F. Supp. 3d 993,

1001 (N.D. Cal. 2024) (holding that plaintiffs must "sufficiently plead lack of consent" for a

Section 631 claim). Plaintiffs' other authority on this point, *Calhoun v. Google, LLC*, is

distinguishable because "the parties agree[d]" in that case that consent was an affirmative

defense, as the defendant was relying on a different privacy policy than the one plaintiffs alleged

had been violated. 113 F.4th 1141, 1144–47 (9th Cir. 2024); Opp. at 5. Here, the AC

acknowledges that the Privacy Policy UWM argues establishes their express and implied consent

constitutes the relevant contract. AC ¶ 74. Cases following *Calhoun* have confirmed that

"[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an

element of the claim." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054, 1060 (N.D. Cal. 2025)

(citing *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (granting motion to dismiss

CIPA, ECPA, and other privacy claims in its entirety with prejudice because consent defeats all

claims). Plaintiffs' other general cites regarding the burden of proof for affirmative defenses,

Opp. at 7-8, thus have no application here, where lack of consent is an element of each of

Plaintiffs' claims. Mot. at 5–6.[1]

Second, it is not a matter of factual dispute that Plaintiffs impliedly, as well as expressly,

consented to the practices disclosed in the Terms and Privacy Policy. Plaintiffs continued to use

UWM's website after they had constructive notice of those documents through UWM's judicially

noticeable pop-up banner and hyperlinks. Mot. at 7–8. Plaintiffs argue that UWM's Privacy

Policy is "mere browsewrap" and cannot be used to establish consent at the Rule 12 stage. Opp. at

7. UWM's pop-up banner requiring affirmative clickthrough, Edwards Decl., Ex. 3 at 1, is not

---

[1] *E.g.*, *Jensen v. Brown*, 131 F.4th 677 (9th Cir. 2025) (First Amendment, Due Process, Equal
Protection claims); *Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984) (First Amendment case).

browsewrap. Pure browsewrap is "hidden in links . . . at the bottom of webpages," involving no clicking elements or pop-up banner. *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 515 (9th Cir. 2023). But UWM's website features a banner notifying users of the use of "cookies," linking the Privacy Policy and blocking full webpage display unless users affirmatively accept or dismiss—making it a hybrid or "sign-in" wrap agreement per *Oberstein*. Such agreements have been upheld where, as here, reasonably conspicuous notice exists and plaintiffs manifested assent by continuing to use the Website after receiving notice. *Id.*; *see Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017); *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019). Plaintiffs' case law supports UWM's position: *Keebaugh v. Warner Bros. Entertainment Inc.* recognizes that contracts on websites that "require[] . . . users to press a . . . button before they can access [content]" may be enforceable based on inquiry notice. 100 F.4th 1005, 1014 (9th Cir. 2024); Opp. at 7. *Cottle v. Plaid Inc*., Opp. at 6, is similarly inapposite, as plaintiffs there were allegedly "unaware of" defendant's practices due to "fine-print" disclosure. 536 F. Supp. 3d 461, 472, 481 (N.D. Cal. 2021). Plaintiffs cannot and do not allege lack of awareness given their express and implied consent to the Privacy Policy; their own factual allegations show there is no fact dispute.

Third, to the extent Plaintiffs assert that UWM's data sharing practices exceed the disclosures in its Privacy Policy, Opp. at 5 n.3, they provide no factual allegations to support that conclusion. The AC's only factual allegations are that UWM shared: "(a) [e]xisting user or Customer status; (b) [b]rowsing activities . . .; (c) [l]ogin activities; (d) [a]ctivities related to viewing their loans; (e) [t]he different types of statements they viewed; (f) c_user cookie to identify a logged-in Facebook account; and (g) [i]nformation collected through an Internet 'cookie,'" such as "IP addresses," AC ¶¶ 128, 300. That is precisely the information the Privacy Policy makes clear that UWM uses "cookies" to track. *Id.*, Ex. B at 6. Because Plaintiffs cannot now argue that data-sharing consistent with the Privacy Policy lacks their consent, *see supra* at 2–3, they contend that UWM's data-sharing exceeded its Privacy Policy. Opp. at 5 n. 3. But that accusation consists solely of conclusory assertions. *E.g.*, AC ¶ 79 (asserting that UWM shares or sells information "with third-party companies for their marketing or promotional use" without

UWM REPLY ISO MTD AM. COMPL
NO. 3:25-CV-05377-WHO

factual support); *Id.* ¶ 82 (asserting that UWM "indiscriminately shares Personal and Financial Information with nonaffiliated Third Parties" without factual support). The Privacy Policy's plain language, which authorizes disclosure of the information at issue in Plaintiffs' only factual allegations, also distinguishes this case from *Shah v. Capital One Financial Corporation*. Opp. at 6. In *Shah*, a factual dispute arose because "Plaintiffs' allegations d[id] not conflict with the complaint's exhibits." 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025). Here, however, Plaintiffs' only factual (non-conclusory) assertions of unauthorized disclosure clearly contradict the Privacy Policy; Plaintiffs thus cannot plausibly state the lack of consent element of their claims, as *Shah* recognized. *Id.* at 1043 ("court may disregard allegations in the complaint if contradicted by facts established in exhibits … to the complaint").

## B.    PLAINTIFFS' NEGLIGENCE CLAIM FAILS (CLAIM 1).

The Opposition does not cure Plaintiffs' failure to allege facts sufficient to establish three key negligence elements: that UWM owes them a duty to protect their information, that UWM breached its duty, and that they suffered damages.

On duty and breach, absent from the Opposition are any alleged facts to establish some duty *in negligence* not to use third-party vendors to improve the website experience (as expressly disclosed in the Privacy Policy). Plaintiffs do not allege facts showing that UWM did not protect their data with industry-standard privacy procedures, *e.g.*, AC ¶ 157, nor do they explain what these purportedly unmet industry-standard procedures require. Mot. at 5–8. In fact, Plaintiffs do not even allege negligence on UWM's part—rather they argue that UWM knowingly disclosed their data to third parties. AC ¶¶ 160–162. Plaintiffs' authorities are largely cases about special relationships arising in contexts inapplicable here, where no such relationship exists between Plaintiffs-mortgagees and UWM as a residential mortgage lender. *E.g.*, *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024), *reconsideration denied*, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) (finding a special relationship between a company offering software designed to prevent data breaches and owners of breached data); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1021 (N.D. Cal. 2024) (finding a special relationship between Meta, which creates tracking tools, and tracking targets). Plaintiffs' reliance on *Shah v. Capital*

1  *One Financial Corp.* is equally misplaced. 768 F. Supp. 3d 1033 (N.D. Cal. 2025). That case

2  named the *Rowland* factors and thereby assumed a special relationship (without any analysis),

3  and involved alleged disclosure of highly sensitive information, such as bank account, credit card

4  details, and citizenship status. *Id.* at 1045–46. That is unlike the basic browsing activity and

5  button click disclosures Plaintiffs are factually alleging. The Court should disregard the

6  Opposition's rhetoric, which includes assertions beyond what is in the AC and, in any event, are

7  conclusory rather than factual allegations. *E.g.,* Opp. at 1–2, 8 (asserting that data shared by

8  UWM includes customers' mortgage payment choices and "could inform…the mortgagor is cash-

9  poor, [] secured a windfall, or needs to tap into their equity," which is not alleged in the AC).

10      As to damages, the AC fails to plead any facts showing a "nonspeculative, present injury."

11  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). Plaintiffs argue that the AC

12  alleges specific injuries of "improper disclosure . . .  lost value of their information, embarrassment,

13  humiliation, frustration, and emotional distress," Opp. at 9—none qualify as a "nonspeculative,

14  present injury." Plaintiffs try to overcome this hurdle by distinguishing UWM's relevant cases. But

15  *Low v. LinkedIn Corp.* and *B.K. v. Eisenhower Med. Center* are both squarely on point. Just as in

16  those cases, Plaintiffs made only conclusory allegations that they have suffered a loss of value of

17  information (without factual allegations showing such loss) and vague allegations about emotional

18  distress and lost time and money (without factual allegations showing what emotional distress was

19  purportedly suffered or what time and money was lost). *E.g.*, AC ¶ 165; Mot. at 9–10. And *In re*

20  *Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019)

21  (cited in Opp. at 9), is entirely consistent with *Low* and *Eisenhower*—the *Facebook* court found the

22  same loss of value of information alleged here "purely hypothetical" and insufficient to allege

23  injury. The injury found sufficient there involved "widespread" disclosure of sensitive information

24  including photos, videos, religious preferences, posts, and private messages to a large audience,

25  including political consultants, app developers, and business partners, as contrasted with the basic

26  information at issue here, such as login, navigation and viewing activities, and Facebook account

27  connection, that was allegedly disclosed to only a limited group of third parties to improve UWM's

28  website. *Compare id. with* AC ¶ 128; *see also* Mot. at 4; AC, Ex. B at 2–4.

UWM REPLY ISO MTD AM. COMPL
NO. 3:25-CV-05377-WHO

The absence of sufficient factual allegations on each of these three elements independently requires dismissal of Plaintiffs' negligence claim.

## C.    PLAINTIFFS' STATUTORY CLAIMS FAIL (2, 4, 9, 10, 11, 12, 13).

Plaintiffs fail to state a privacy claim under any statute—many of which were simply not designed to accommodate new internet technologies or the type of information at issue here. Plaintiffs effectively concede that their privacy claims are outside the scope of these statutes, arguing that "new technologies … can be difficult to fit perfectly into older legal frameworks." Opp. at 10. As Judge Chhabria recently recognized, unless and until the California Legislature speaks clearly on what conduct is covered, "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe*, 2025 WL 2971090, at *1.

### 1.    Plaintiffs Fail to Plausibly Allege Violation of the CDAFA (Claim 2).

The CDAFA prohibits the improper or unauthorized use of computer systems, but Plaintiffs do not allege any such use of their own computers. Mot. at 10–11; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020). Nothing in the Opposition cures that deficiency.

Plaintiffs argue the CDAFA "is broad" and some courts have said it prohibits more than hacking. Opp. at 11 (citing *Greenly v. Kochava, Inc.* and *Rodriguez v. Google LLC*). But even cases not characterizing claims as traditional hacking "still required allegations that defendant in some way caused output from the function of a computer, without the owners' permission." *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.*, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (dismissing CDAFA claim because "all of the interactions took place on Defendant's web network, and [plaintiff's] allegations do not make clear how any 'access' took place") (collecting cases). As in *Heiting*, the AC fails to allege that UWM "accessed [their] computer or network without permission." 709 F. Supp. 3d at 1020. Plaintiffs point to the AC's allegation that UWM installed a "'computer contaminant' via its tracking technologies," Opp. at 10–11, but this threadbare allegation reiterates the statutory language without pointing to any factual allegations that a "computer contaminant" was introduced to Plaintiffs' computers or networks, how, or by which tracking

technology. *See* Mot. at 10. Indeed, the very allegations the Opposition cites as establishing access to and disrupting their computer, AC ¶¶ 177–78, actually address alleged contaminants from trackers on UWM's "Online Platforms," not on Plaintiffs' computers. *See also id.* ¶ 178. Plaintiffs cite *CTI III, LLC v. Devine* to argue that the CDAFA does not require pleading circumvention of a technological barrier, 2022 WL 1693508, at *5 (E.D. Cal. May 26, 2022). *CTI* relies on *United States v. Christensen*, but *Christensen* merely concluded that password protection can constitute the relevant technological barrier. 828 F.3d 763, 789 (9th Cir. 2015) ("'access' as defined in the [CDAFA] includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly"). *CTI* also made clear that Plaintiffs must allege that ***their*** computers or networks were accessed. *See CTI*, 2022 WL 1693508, at *4 (alleging defendant accessed their system and improperly copied data). Plaintiffs' failure to plead that their computers or networks were accessed without permission, let alone circumvention of any technological barrier, dooms their CDAFA claim.

      Plaintiffs also still have not established that they have suffered the kind of damage or loss required to state a claim under the CDAFA. Plaintiffs argue that a "disgorgement theory" is sufficient, and point to a handful of conclusory assertions of "profit" or "benefit." Opp. at 12, citing AC ¶¶ 5, 90, 131(d)(h), 160-63. Nowhere in the AC do Plaintiffs allege ***facts*** that UWM sells, profits from, or was otherwise unjustly enriched by allegedly sharing information with any third parties. Nor do Plaintiffs even acknowledge UWM's authorities, including this Court's decision in *Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064 (N.D. Cal. 2023), *denying motion to certify appeal*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) (Orrick, J.). Plaintiffs are mistaken to rely on *Rack Room*, where the complaint contained specific factual allegations that defendant unjustly profited by running targeted marketing campaigns using customer profiles that integrated personally identifiable browsing history. *Smith v. Rack Room Shoes, Inc*., 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025). By contrast, here, Plaintiffs' assertions regarding UWM's benefits from the sharing of Plaintiffs' information resemble those in a decision earlier in the *Rack Room* case where the court dismissed plaintiffs' CDAFA claim because the injury allegations were too conclusory. *Id.* at *6; *see also Roe,* 2024 WL 2873482, at *7 (dismissing CDAFA claim where

1    plaintiffs did not plead facts showing defendant sold their data or was unjustly enriched).

2           **2.   Plaintiffs Fail to Plausibly Allege Violation of the CCPA (Claim 4).**

3           Plaintiffs fundamentally misread the CCPA in their attempt to rebut UWM's arguments.

4    The only provision in the CCPA that creates a private right of action is Section 1798.150(a)—and

5    that provision expressly limits the right of action to a business's failure to implement reasonable

6    security measures to protect "Personal Information" as defined in Section 1798.81.5(a)(1)(d).

7    Section 1798.81.5(a)(1)(d) defines "Personal Information" as a person's name in combination

8    with other specific types of information, including SSN, government ID, account or card number,

9    medical insurance information, and biometrics. None of that information is at issue here. *See* Mot.

10   at 12; *Tian v. Bank of Am., N.A.*, 2025 WL 1377767, at *2 (C.D. Cal. Apr. 2, 2025). The

11   Opposition ignores this clear statutory text by pointing to a wide-ranging definition of personal

12   information from a ***different*** CCPA section (Cal. Civ. Code § 1798.140(v)(1)). Opp. at 13. But as

13   Section 1798.150(a) makes clear, the CCPA's private right of action is limited to personal

14   information as defined in Section 1798.81.5(a)(1)(d)—*not* Section 1798.140. This is dispositive.

15          Plaintiffs' CCPA claim also fails because the AC contains no factual allegations of a

16   security breach or failure by UWM to use reasonable security measures. Plaintiffs argue that "the

17   law does not require Plaintiff to plead a security breach." *Id*. But UWM did not so limit its

18   argument: Plaintiffs fail to allege facts showing a "security breach ***or failure to implement***

19   ***reasonable security measures***." Mot. at 12. *Shah v. Capital One*, cited by Plaintiffs, supports

20   UWM by employing this test. Opp. at 13-14; *Shah*, 768 F. Supp. 3d at 1048–49. The AC does not

21   allege facts showing a failure to maintain reasonable security procedures, challenging only

22   UWM's alleged data sharing practices. *Id.*; *see also* AC ¶¶ 210–12; *Tian*, 2025 WL 1377767, at

23   *2. Those alleged practices are not within the scope of the CCPA's private right of action.

24          **3.   Plaintiffs Fail to Plausibly Allege Violation of CIPA Sections 631 and**
                   **632 or ECPA (Claims 9, 10, 12, and 13).**

25          The AC fails to state violations of CIPA Sections 631 and 632 and ECPA Sections

26   2511(1) and 2511(3)(a). And as Judge Chhabria cautioned, "[c]ourts should not contort

27   themselves to fit the type of conduct alleged in this case into the language of a 1967 criminal

28

statute about wiretapping." *Doe*, 2025 WL 2971090, at *7.

        a.    Plaintiffs Do Not Establish That the Basic Information At Issue Is Protected "Contents" of Communications.

Plaintiffs do not dispute that for CIPA Section 631(a), courts distinguish non-substantive "record" information from substantive "contents" information that reveals sensitive personal information or search queries. Mot. at 16; *In re Zynga Priv. Litig*., 750 F.3d 1098, 1104 (9th Cir. 2014). Rather, Plaintiffs argue that the information UWM allegedly disclosed qualifies as "contents." Plaintiffs' argument does not align with their own allegations or relevant authorities.

UWM's Motion described the limited nature of the information in Plaintiffs' specific factual allegations—browsing activities, login activities, viewing loans and statements, c_user cookies, and information collected by cookies—transmitted by "button clicks" as "record" information. Mot. at 16; AC ¶¶ 4, 128. UWM cited numerous authorities establishing that "contents" require more, such as full chat transcripts, descriptive URLs, or form field entries. *E.g., Byars v. Goodyear Tire & Rubber Co*., 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *Yoon v. Meta Platforms, Inc*., 2024 WL 5264041, at *5-6 (N.D. Cal. Dec. 30, 2024); *Mikulsky v. Bloomingdale's, LLC,* 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024); *King v. Hard Rock Cafe Int'l (USA), Inc*., 2025 WL 1635419, at *7 (E.D. Cal. June 9, 2025). The button clicks at issue here do not reveal substantive information that might constitute contents, and this case is thus nothing like *Gershzon v. Meta Platforms, Inc*., where button clicks could reveal disability and citizenship status. 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023).

To try to get around this fatal deficiency, the Opposition points to conclusory assertions, as well as assertions that do not appear in the AC (and a series of hypothetical questions even further unmoored from the actual allegations). Opp. at 16. Neither strategy avails. First, Plaintiffs argue that UWM disclosed information regarding their refinancing options, selections, and reasons for refinancing. *Id.*; AC ¶ 269. But that argument rests solely on conclusory assertions with no supporting factual allegations, and is inconsistent with the actual factual allegations in the AC, which establish only that UWM shared limited, technical details regarding user activity on its Website. AC ¶¶ 45, 128. Indeed, Plaintiffs fail to offer any facts showing how the button clicks

they allege UWM shared could disclose their rationale for refinancing. Second, the Opposition contains arguments that appear nowhere in the AC, including that UWM shares Plaintiffs' mortgage payment elections or decisions related to equity products. The court need not accept these baseless assertions. (And the questions posed in the Opposition suggesting UWM is aware of—let alone shared—information about users' personal lives, such as their divorce or lottery winnings, are also not alleged in the AC and are untethered from reality. Opp. at 16.) Despite Plaintiffs' efforts to dress up the AC's limited factual allegations to be something more, they cannot convert their speculative arguments into substantive "contents" protected by CIPA.

> b. Plaintiffs Fail to Allege that UWM Intended to Aid Third Parties' Purportedly Unlawful Conduct.

Plaintiffs do not dispute that UWM did not violate Section 631(a) under the first three clauses—their focus is all on UWM's derivative liability under the fourth clause. UWM's Motion sets forth the correct standard to state a derivative Section 631(a) claim: Plaintiffs must show UWM's "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts," which they fail to do. Mot. at 17–18; *see also Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). Plaintiffs make no argument, nor point to any factual allegations in the AC showing that UWM agreed with, employed, or conspired with third parties to commit unlawful acts. Instead, Plaintiffs argue only that they alleged knowledge, not purpose, contending that UWM mistakenly "read[s] an intent requirement into Section 631." Opp. at 18. But the authorities Plaintiffs cite acknowledge the intent requirement. *See Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *11 (N.D. Cal. Sept. 16, 2025) (courts have interpreted the statute to require "both knowledge of the [unlawful] conduct . . . and a purpose of aiding, agreeing with, or employing the third party to commit those acts"); *M. H. v. Done Glob. Inc.*, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (similar); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, *4 (N.D. Cal. Apr. 4, 2025) ("[Defendant] is only derivatively liable if Plaintiffs adequately allege knowledge and intent."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (dismissing CIPA Section 631 claims because plaintiffs

1  failed to allege that defendant knew of third party's use of information for the benefit of

2  customers other than defendant). Because Plaintiffs do not point to any factual allegations of

3  intent, any claim that UWM is derivatively liable under Section 631 must fail.

4              c.   Plaintiffs' CIPA Section 632 Claim Fails As a Matter of Law.

5          Plaintiffs do not dispute authority establishing that the button clicks and navigation data at

6  issue here are typical internet communications not confidential under CIPA Section 632. *See* Opp.

7  at 19 (acknowledging *Swartz* and *Revitch*); Mot. at 19. Plaintiffs merely repeat the AC's

8  conclusion that "information [UWM] shared . . . was confidential financial information protected

9  . . . under federal and state law," without pointing to any factual allegations in support. Opp. at

10 19. Perhaps recognizing that is not enough, the Opposition postulates that "[a] conversation with

11 a financial institution like [UWM]—about one's mortgage, taxes, a choice of whether to refinance

12 or pull out equity—carries objective indicia of confidentiality." *Id.* at 19. But allegations about

13 "conversation[s]" with UWM are not found anywhere in the AC and thus cannot be raised for the

14 first time here. *E.g.*, *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761 (N.D. Cal. 2022). Nor do

15 Plaintiffs' assertions regarding purported targeted advertising that followed suffice to establish

16 the kind of unique circumstances that would render internet communications confidential. *See*

17 Opp. at 19; *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019).

18         Plaintiffs also fail to present a persuasive argument for derivative liability under Section

19 632. Plaintiffs cite *Rack Room,* but that case does not analyze the plain language of Section 632,

20 which, unlike Section 631, contains no derivative liability language. *2025 WL 1085169, at *5*.

21 Instead, *Rack Room* held that Section 632 provides for derivative liability because CIPA does not

22 explicitly limit the application of California Penal Code Section 31, which states "[a]ll persons

23 concerned in the commission of a crime . . . or [who] aid and abet in its commission . . . are

24 principals in any crime so committed." *Id.* However, Section 31 relates to aiding and abetting a

25 crime and does not apply to offenses committed under Sections 632 and 632.7, where the plaintiff

26 only seeks civil damages. *Stoba v. Saveology.com, LLC*, 2014 WL 3573404, at *4 (S.D. Cal. July

27 18, 2014) (declining to impose Section 31 on claims pursuing civil liability under CIPA Section

28 632). And in any event, Plaintiffs point to no factual allegations for intent for derivative liability

under Section 632, just as they fail to for their Section 631 claim.

> d. Plaintiffs' ECPA Claims Are Barred By UWM's Consent and UWM Is Not an "Electronic Communications Service Provider."

UWM's Motion shows that ECPA's one-party consent rule bars Plaintiffs' claims. Mot. at 14 (citing cases). Plaintiffs respond that consent is disputed, the crime-tort exception applies, and UWM is an electronic communication service provider. Opp. at 20. They are mistaken.

First, Plaintiffs confuse the relevant consent for ECPA purposes: the ECPA is a one-party consent statute, which means that UWM—as a party to its own communications with Plaintiffs— itself has authority to disclose such communications. Mot. at 14 (citing cases). The fact that Plaintiffs dispute their own consent is irrelevant to UWM's authority. Opp. at 20.

Second, the crime-tort exception does not apply because Plaintiffs did not, and cannot, plead facts showing that "the primary motivation or a determining factor in [UWM's] actions has been to injure plaintiffs tortiously"; even crediting their flawed allegations, UWM's "purpose has plainly not been to perpetuate torts . . . but to make money." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935 (N.D. Cal. 2023) (citation modified) (collecting cases). Plaintiffs cite *Riaganian v. LiverRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025), which has no application here, where Plaintiffs allege they gave UWM their information, not that UWM obtained it unlawfully. AC ¶¶ 112, 117. UWM's consent thus bars Plaintiffs' claims.

Finally, mortgage lenders like UWM are not electronic communication service providers under ECPA. Opp. at 20. The Opposition fails to grapple with UWM's authorities, including this Court's opinion in *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) (Orrick, J.); *see* Mot. at 18. Plaintiffs instead cite *In re BetterHelp, Inc.* distinguishing *Crowley* because "BetterHelp does not merely receive . . . customers' communications . . . [but] facilitates two-way electronic communications between its customers and third-party therapists." 2024 WL 4504527, at *2 n.1 (N.D. Cal. Oct. 15, 2024). But the AC does not allege that UWM facilitates two-way communications between Plaintiffs and third parties, so *BetterHelp* does not apply.

> ### 4. Plaintiffs Do Not Plausibly Allege that UWM Used Any Pen Register or Trap and Trace Device Under CIPA Section 638.51 (Claim 11).

As set forth in UWM's Motion, Plaintiffs' Section 638.51 claim fails because internet

UWM REPLY ISO MTD AM. COMPL
NO. 3:25-CV-05377-WHO

technologies are not "pen registers" or "trap and trace" devices, and the information at issue is not the type protected by the statute. Mot. at 20–21 (citing cases). Plaintiffs quickly dismiss Section 638.51's text, legislative history and the many California state authorities rejecting the statute's application to internet communications, arguing instead that federal courts have recently found that Section 638.51 applies to internet technologies that capture IP addresses. Opp. at 21–22. Plaintiffs cite *Gabrielli v. Haleon US Inc.*, in which this Court held that internet technologies can be pen registers. 2025 WL 2494368, at *11 (N.D. Cal. Aug. 29, 2025). The Court did not benefit from California state court decisions on this issue that UWM offers here. And Plaintiffs provide no reason why federal court decisions should override state court decisions on a matter of state law. *Sass v. Cal. Bd. of Prison Terms*, 376 F. Supp. 2d 975, 982 (E.D. Cal. 2005), *aff'd but criticized for unrelated reasons*, 461 F.3d 1123 (9th Cir. 2006) ("When a state court has . . . determine[d] . . . the meaning of a state statute, federal courts give this finding great weight . . ., and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive."). Judge Chhabria recently acknowledged this split between California state and federal courts in *Doe v. Eating Recovery Center LLC*, but warned against stretching the statute too far (as Plaintiffs seek to do). 2025 WL 2971090, at *1. Because "CIPA imposes criminal liability and punitive civil penalties," he explained, "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Id.* Plaintiffs complain that this would mean "the statute would have little application in our digital world," Opp. at 22—but fail to explain why an "already-obtuse" 1967 statute about telephones and wiretapping should be stretched to cover "new technologies" it clearly was not intended to capture. *Doe,* 2025 WL 2971090, at *7.

### D.    PLAINTIFFS' BREACH OF CONTRACT, UNJUST ENRICHMENT, AND BREACH OF CONFIDENCE CLAIMS ALL FAIL (CLAIMS 5, 6, 8).

Plaintiffs cannot plead claims for breach of implied contract, unjust enrichment and breach of confidence—even in the alternative—where they simultaneously plead an express contract covering the same subject matter (data collection and sharing) between them and UWM (the Privacy Policy). Mot. at 23. Plaintiffs' argument that they may plead in the alternative is contrary to well-settled law, and it is thus unsurprising that Plaintiffs cite no authorities in support

1   of their argument. Opp. at 22–23. Courts have repeatedly held that a plaintiff may not plead an

2   enforceable contract and maintain a quasi-contract claim without pleading "facts suggesting that

3   the contract may be unenforceable or invalid." *Brodsky*, 445 F. Supp. 3d at 133 (internal

4   quotation omitted) (quoting *Tsai v. Wang*, 2017 WL 2587929, at *7 (N.D. Cal. June 14, 2017)).

5   Plaintiffs have alleged no facts that the express contract here (the Privacy Policy) is

6   unenforceable or invalid. Thus, the implied contract portion of Claim 5, and Claims 6 and 8, are

7   merely duplicative quasi-contract claims that must be dismissed.

8          Second, as explained in UWM's Motion, Plaintiffs' conclusory assertion that they

9   "sustained" actual damages and losses, AC ¶ 221, without alleging facts about expectations of

10  compensation for the value of their information, cannot establish the damages required to plead a

11  breach of express contract claim. Mot. at 22–23. The Opposition fails to engage with UWM's

12  argument or case law or to identify any other more specific allegations in the AC. Opp. at 23.

13         Third, Plaintiffs' breach of confidence claim also fails because the information at issue is

14  neither "confidential" nor "novel." Mot. at. 23. Plaintiffs assert that UWM mischaracterized the

15  nature of the information but do not explain how, other than asserting for the first time in the

16  Opposition that the information implicates their "financial outlook and health." Opp. at 23.

17         Finally, Plaintiffs do not dispute—nor can they—that they have not alleged a breach of

18  express contract because they fail to plausibly plead facts that any information was collected or

19  shared contrary to the disclosures in UWM's Privacy Policy. *See supra* at 2–3; Mot. at 22.

20         **E.    PLAINTIFFS' UNFAIR COMPETITION CLAIM FAILS (CLAIM 3).**

21         Plaintiffs concede that they are not pleading a claim under the fraud prong of the UCL,

22  only under the unlawful and unfairness prongs. Opp. at 23. Nonetheless, Rule 9(b) still applies to

23  Plaintiffs' claim, AC ¶ 186, that UWM violated the UCL's unlawful prong based on purported

24  violations of the California Consumers Legal Remedies Act ("CLRA"), because that is still a

25  fraud-based claim. *Tabler v. Panera LLC*, 2020 WL 3544988, at *6 (N.D. Cal. June 30, 2020)

26  (dismissing CLRA and UCL claims for failure to satisfy Rule 9(b)). Plaintiffs have not pled facts

27  establishing any specific misrepresentation, as required to meet Rule 9(b). Mot. at 24; Opp. at 24

28  n.8 (asserting they complied with Rule 9(b) but making no showing of how). Plaintiffs' unlawful

1    prong UCL claim also fails, to the extent it is based on privacy statutes because, as discussed

2    supra, they cannot establish a violation under these statutes. *Hammerling v. Google LLC*, 615 F.

3    Supp. 3d 1069, 1094 (N.D. Cal. 2022).

4        The AC also is devoid of factual allegations sufficient to support a claim under the unfair

5    prong of the UCL. Mot. at 25. The Opposition argues only that unfairness is a question to be

6    resolved later. Opp at 23. But because UWM's Motion showed how Plaintiffs' claims under the

7    unfair prong fail as a matter of law, this Court can and should dismiss this claim at the pleading

8    stage. *Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856 (C.D. Cal. 2022); *Garcia*

9    *v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. 2012).

10       In addition, Plaintiffs' conclusory allegations of lost value of information are insufficient

11   to constitute economic injury for UCL standing purposes. Opp. at 24-25. Plaintiffs' citation to

12   *Calhoun*, 526 F. Supp. 3d at 636; Opp. at 24–25, is ineffective because that case "rested its

13   finding on [cases addressing] Article III standing, which is different from UCL standing." *Roe*,

14   2024 WL 2873482, at *8 (distinguishing *Calhoun*). "Numerous courts have held that disclosure

15   of personal information alone does not constitute economic or property loss sufficient to establish

16   UCL standing." *Id.* Plaintiffs' other case, *In re Data Breach Sec. Litig. Against Caesars Ent., Inc*.,

17   is also inapposite because it involves overpayment, mitigation costs, and other injuries not present

18   here. 2025 WL 2393024, at *1 (D. Nev. Aug. 15, 2025).

19       **F.    THE DECLARATORY JUDGMENT CLAIM MUST BE DISMISSED (CLAIM 7).**

20

21       Plaintiffs' declaratory judgment claim fails because all their other claims fail. Mot. at 25.

22   Plaintiffs cherry-pick language from *Hart v. TWC Product. & Technology LLC* to argue that the

23   Declaratory Judgment Act "allows a plaintiff to seek declaratory relief regardless of other claims

24   brought." 526 F. Supp. 3d 592, 604 (N.D. Cal. 2021). But in *Hart* another claim survived.

25   Nowhere does *Hart* state that a declaratory judgment claim can proceed when all underlying

26   claims fail.

     **III.   <u>CONCLUSION</u>**

27       UWM requests the Court to dismiss each claim of Plaintiffs' AC, without leave to amend.

28

15

Dated:  November 14, 2025

O'MELVENY & MYERS LLP

By:    */s/ Randall W. Edwards*
Randall W. Edwards

Attorneys for Defendant
United Wholesale Mortgage, LLC