UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ETHAN ALLISON, et al., | Case No. 25-cv-05377-WHO |
|---|---|
| Plaintiffs, | |
| v. | **ORDER ON THE MOTIONS TO DISMISS AND STAY DISCOVERY** |
| UNITED WHOLESALE MORTGAGE, | Re: Dkt. Nos. 28, 29 |
| Defendant. | |

Plaintiffs Ethan Allison and Mark Caloca (together, "plaintiffs") bring this putative class action against the mortgage lender United Wholesale Mortgage ("UWM"), alleging thirteen causes of action rooted in UWM's alleged impermissible disclosure of plaintiffs' nonpublic personal financial information to third party websites. UWM moves to dismiss the complaint because plaintiffs consented to the disclosure of the type of information raised in the complaint. Based on the information before me now, I agree with UWM. UWM's motion to dismiss is GRANTED with leave to amend. Any second amended complaint is due within 30 days of this Order.

## BACKGROUND

UWM is a Delaware corporation, originally formed in Michigan. First Amended Complaint ("FAC") [Dkt. No. 26] ¶ 19. It refers to itself as the "#1 mortgage lender in the nation."[1] FAC ¶ 25 (cleaned up). Its customers use its website to access their account, make payments, and gain information related to their own mortgages and the mortgage-lending services that UWM offers. FAC ¶ 29. Plaintiffs allege that UWM uses online tracking technology on its

---

[1] In its Motion to Dismiss, UWM clarifies that although it is a residential mortgage lender, it does not service mortgages. Dkt. No. 29 at 12. The UWM website, in turn, does not allow users to "make payments and manage their account" but rather allows "a homeowner looking to make a mortgage payment to be redirected to their relevant loan servicer's website." *Id.* (cleaned up). Plaintiffs do not contest this clarification of UWM's role in the mortgage-lending space.

website to obtain information about its customers and that UWM collects this information for its own use to market its services to third party websites (such as Google and Meta). FAC ¶ 30–31. Further, UWM shares its customers' information with those third parties who, in turn, use it to market to and benefit from fourth parties. FAC ¶ 32. According to plaintiffs, website users have no knowledge, "no control or warning over" the presence of the online tracking technologies or the flow of their private financial information to third party websites. FAC ¶ 35.

One example of an online tracking technology used by UWM is the Meta Pixel, which "tracks the people and type of actions they take" on UWM's website. FAC ¶ 40. Facebook, the originator of the Meta Pixel and not a named party to this case, collects the acquired information to find new customers, drive sales, and target advertisements on its website. FAC ¶ 41. UWM, as the website owner, is able to derive the same benefit. *Id.* Plaintiffs allege that all this is done without the customer's permission or knowledge. Other trackers used by UWM work similarly. FAC ¶¶ 44–52 (detailing various tracking mechanisms).

Plaintiffs contend that the type of information gleaned by the website (and therefore by UWM and third and fourth parties) includes:

> their browsing activities including the pages they viewed and the buttons they clicked; information revealed in the application process regarding the user's status as a customer; when the customer logged in to UWM's website; the user's browsing activities and website behaviors, including that the user clicked certain buttons and what URLs or webpages they led to; the pages users visited; that a user was on a mortgage account login page; that a user is viewing their loans after logging in; and the different types of statements that a user viewed.

FAC ¶ 53. Plaintiffs assert that UWM has had at least one of these tracking technologies installed on its website since January 8, 2012, through at least May 21, 2025 (approximately one month before the filing of their complaint in this case). FAC ¶ 54; *see* Complaint [Dkt. No. 1].

The trackers are activated by any user of UWM's homepage, not just those who log in to an account with UWM, although logging in creates additional "events" that update the tracker to a user's information and activity. FAC ¶ 63–64. Plaintiffs allege that, generally speaking, these trackers disclose to third parties what type of information they are viewing. This includes that a user is viewing "Payment Activity," "Monthly Statements," "Tax Statements, "Escrow

2

Statements," and "Miscellaneous Statements." FAC ¶ 69. Plaintiffs generally do not claim that trackers disclose the actual contents of those pages to third parties. However, in at least one instance due to the complex code involved with the tracker, it is "impossible to tell exactly what data is being transferred and to whom . . . ." FAC ¶ 70.

UWM utilizes both a Terms of Use and a Privacy Policy to govern user-access of its website. *See* Exhibit A (Terms of Use) [Dkt. No. 26-1] 2–9; Exhibit B (Privacy Policy) [Dkt. No. 26-2] 2–10.[2] Plaintiffs admit that they, UWM customers, entered into these contracts with UWM. FAC ¶ 74. Throughout the Privacy Policy linked in the Terms of Use, UWM refers to its usage and transference of a user's personally identifiable information. Some examples are below.

- There are situations when we disclose your information to third parties. For example, we may share your email address and other personal information with mortgage brokers regarding mortgage products that may be available to you. Privacy Policy at 4.
- UWM does not share your information with third-party companies for their marketing or promotional use and we do not track URLs that you type into your browser, nor do we obtain any information about your usage across the internet once you leave UWM's websites. Privacy Policy at 6.
- You have the right to request UWM disclose what personal information it collects, uses, discloses and sells. . . . UWM does not sell your personal information and only discloses to third parties who are performing services on behalf of UWM or assisting UWM with another business need or purpose. Privacy Policy at 7.

Plaintiffs allege that at no point in the Terms of Use or Privacy Policy did UWM specifically inform users that their personally identifiable financial information would be made

---

[2] UWM requests judicial notice encompassing both of plaintiffs' submitted exhibits and a number of screenshots of relevant websites. Plaintiffs oppose the request, despite the fact that they provided the Terms of Use and Privacy Policy in the first instance. Oppo. at 4. "A court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). I do so here.

1  available to third parties like and including Facebook, Google, Meta, or Microsoft for the benefit
2  of those third parties and other fourth parties. FAC ¶ 80. Plaintiffs further allege that UWM made
3  customers believe that it would keep their information secure by informing customers that it had
4  "measures in place directed to safeguarding the information [customers] provide. Such measures
5  include, but are not limited to, implementing policies and procedures regarding data security."
6  Privacy Policy at 4. Instead, by sharing customers' private data with websites like Facebook and
7  Google, UWM ensured that the data would be shared with "data brokers," or, companies "that
8  collect[] and sell[] personal information about individuals to other businesses," and other third
9  parties. FAC ¶¶ 88–91.

10  Plaintiffs allege, and UWM does not contest, that UWM is a "financial institution" subject
11  to the Gramm-Leach-Bliley Act ("GLBA"). FAC ¶ 96; 15 U.S.C. § 6809(4)(A). Pursuant to the
12  Privacy Rule of the GLBA, a "financial institution must provide a notice of its privacy policies
13  and practices with respect to both affiliated and nonaffiliated third parties, and allow the consumer
14  to opt out of the disclosure of the consumer's nonpublic personal information to a nonaffiliated
15  third party if the disclosure is outside of the exceptions." FAC ¶ 100 (citing to the FTC website
16  summarizing the Financial Privacy Rule). Further, the GLBA contains notice requirements in that
17  a "financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third
18  party any nonpublic personal information, unless such financial institution provides or has
19  provided to the consumer a notice that complies with section 6803 of this title." 15 U.S.C. § 6802.
20  The only means by which a financial institution may disclose nonpublic personal information to a
21  nonaffiliated third party is by means of complying with the opt out process. 15 U.S.C. § 6802.
22  According to plaintiffs, UWM failed to meet either of these requirements. FAC ¶¶ 104–109.

23  In this case, both Mr. Allison and Mr. Caloca used UWM's website to access their
24  mortgages and information related to their mortgages. FAC ¶ 111, 116. Mr. Allison, no longer a
25  UWM customer, shared private information to the UWM website, and shortly thereafter began
26  noticing advertisements on his Facebook account related to loans, mortgages, and refinancing.
27  FAC ¶ 114. Mr. Caloca holds several mortgages with UWM and similarly began to receive
28  advertisements (on both Facebook and Google) related to the information he uploaded to the

UWM website. FAC ¶ 119. Mr. Allison and Mr. Caloca allege that neither authorized UWM to send their nonpublic, personal financial information to third parties. FAC ¶ 122. And, they allege, had "they been aware of UWM's sharing practices, [neither] would . . . have authorized UWM to make their Personal or Financial Information available for sale on the resale market." FAC ¶ 125. Plaintiffs allege that the type of personal and financial information sold by UWM to third parties includes plaintiffs': "(1) existing user or Customer status; (2) browsing activities, including the pages and content Plaintiffs viewed; (3) login activities; (4) activities related to viewing their loans; (5) the different types of statements they viewed; (6) c_user cookie to identify a logged-in Facebook account; and (7) information collected through an Internet 'cookie' (or information collecting device from a web server)." FAC ¶ 128.

Plaintiffs have filed a putative class action against UWM on behalf of themselves, an asserted nationwide class and an asserted California subclass, alleging thirteen causes of action: (1) Negligence, FAC ¶¶ 155–168; (2) Violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, FAC ¶¶ 169–181; (3) Violation of California's Consumer Protection Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, FAC ¶¶ 182–204; (4) Violation of California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et. seq.*, FAC ¶¶ 205–214; (5) Breach of Express and Implied Contract, FAC ¶¶ 215–221; (6) Unjust Enrichment (as alternative to the contract claims), FAC ¶¶ 222–230; (7) Declaratory Judgment, FAC ¶¶ 231–238; (8) Breach of Confidence, FAC ¶¶ 239–248; (9) Violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 631, *et. seq.*, FAC ¶¶ 249–272; (10) Violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 632, *et. seq.*, FAC ¶¶ 273–290; (11) Violation of the California Invasion of Privacy Act, Cal. Penal Code §§ 638.51, *et. seq.*, FAC ¶¶ 291–303; (12) Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et. seq.*, FAC ¶¶ 304–321; and (13) Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(3)(a) for Unauthorized Divulgence by Electronic Communications Service, FAC ¶¶ 322–334.

UWM moved to dismiss the FAC. Motion to Dismiss ("Mot.") [Dkt. No. 29]. Plaintiffs opposed the motion. Opposition to the Motion to Dismiss ("Oppo.") [Dkt. No. 34]. UWM

1  replied. Reply In Support of the Motion to Dismiss. ("Reply") [Dkt. No. 36].[3] I held a hearing on
2  the motion on December 3, 2025.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

---

[3] UWM also moved to stay discovery pending the outcome of the Motion to Dismiss. Motion to Stay Discovery [Dkt. No. 28]. Although I GRANT the Motion to Dismiss, I do so with leave to amend. Because ongoing discovery may be useful in helping plaintiffs to narrow the scope of their case, the Motion to Stay Discovery is therefore DENIED.

**DISCUSSION**

**I.     UWM Disclosure and Plaintiff Consent**

UWM argues that the plain language used in the Terms of Use and Privacy Policy "expressly disclosed" to plaintiffs the type of information obtained via customer use of UWM's website and its dissemination to third-parties, including technology companies.  Mot. 5.  Its argument is bolstered by its reference to the Privacy Policy's explanation of UWM's use of "cookies" and its "Social Media and Third Party Links" provision.  The Privacy Policy defines a "cookie" as "a small file that is assigned by the web server to your computer.  The use of cookies allows UWM to identify which pages of the site are accessed.  That information is then used to improve the Website and your online experience."  The Privacy Policy also contains a "Social Media and Third Party Links" provision.  That provision is reproduced in full below:

> UWM has a presence on various social media outlets in an effort to connect with our clients, customers and to connect with potential clients.  Your activity on third-party websites is governed by the security, policies and terms of use of each third-party website.  You should review the privacy policies of the third-party website before using it and ensure you understand how your information may be used before providing it.  The information posted on or directed on UWM social media profiles is generally available to the public.  To protect your privacy, do not include sensitive personal information or any other information you want to keep private in your social media activity, comments or responses.  Any information shared on UWM's social media pages may be archived independently on, and retention of such information is governed by, the third-party website.
>
> You might find links to third party websites on this Website.  These websites should have their own privacy policies which you should read and understand before using their site.  UWM does not accept any responsibility or liability for their policies or for the security of information you submit through a third-party website whatsoever as UWM has no control over third-party websites.

Privacy Policy at 6.

It is challenging to square plaintiffs' admission that they entered into contract with UWM via the Terms of Use and Privacy Policy with their allegations that they did not consent to UWM's use of their "personal and financial information."  *See* FAC ¶ 74 ("The contracts that UWM has with its Customers include its 'Terms of Use' and 'Privacy Policy,' (collectively, 'Privacy Contracts').").  The only specific information that plaintiffs allege UWM shares to third parties is

7

plaintiffs': "(1) existing user or Customer status; (2) browsing activities, including the pages and content Plaintiffs viewed; (3) login activities; (4) activities related to viewing their loans; (5) the different types of statements they viewed; (6) c_user cookie to identify a logged-in Facebook account; and (7) information collected through an Internet 'cookie' (or information collecting device from a web server)."  FAC ¶ 128.  UWM does not contest that this information is shared to third-parties, but that plaintiffs consented to its sharing and therefore cannot now bring an action alleging they did not.  Mot. 4–8.

As plaintiffs argue, "[c]onsent is generally not a resolvable issue at the Rule 12 stage."  Oppo. 5.  *See Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025) (Thomspon, J.) ("Because the issue of whether Plaintiffs consented to Defendant's disclosure of their personal information is a factual question, the Court need not reach it at the motion to dismiss stage."); *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.")(internal quotation marks and citation omitted).  Plaintiffs assert: "Consent is a disputed factual issue here.  Defendants say Plaintiffs consented, and Plaintiffs say they did not.  Thus, consent is not a sufficient basis to dismiss this case now."  Oppo. 8.

The problem here is that plaintiffs do not address their admission to agreeing to the Privacy Policy and Terms of Use with UWM, *see* FAC ¶ 74, nor do they allege that they did not agree to the contents of those self-described contracts.  At only one point in the complaint, not referenced by plaintiffs in opposition to the motion to dismiss or during the hearing on this motion, do plaintiffs allude to the possibility of UWM's use of data that goes beyond the scope of what is agreed upon by UWM's Terms of Services or Privacy Policy.  They allege: "Due to the highly obfuscated nature of the [lordofthesuperfrogs.com] code, it is impossible to tell exactly what data is being transferred and to whom, but on information and belief and associated network traffic, it appears this script is collecting substantial user data and sending it to a third party."  FAC ¶ 70.  But that sentence alone does not rise to the level of alleging "enough facts to state a claim to relief

8

1  that is plausible on its face." *Twombly*, 550 U.S. at 570.

2  In their Opposition (but not the complaint) plaintiffs refer to practical concerns raised by
3  the information disclosed to third parties. *See* Oppo. 2 (expressing concern that the type of data
4  disclosed by UWM allows for a third-party to know "when a customer is cash-rich or cash-poor"
5  and further implications). If plaintiffs are able to allege more specific facts related to information
6  they did not agree to disclose despite the Terms of Services or Privacy Policy, or some reason that
7  they did not agree to the UWM disclosure discussed above, perhaps their claims may go forward.
8  Without doing so, the issue is not so much that plaintiffs did *not* consent to the disclosure of the
9  aforementioned information, but that plaintiffs were not *aware* that they consented to the
10 disclosure of that information. That is a different case. The complaint as written lacks this much
11 needed clarification, and the claims will remain implausible with it.[4]

## CONCLUSION

For the reasons explained above, the motion to dismiss is GRANTED and the amended complaint is DISMISSED without prejudice. Plaintiffs may submit any amended complaint within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: December 21, 2025



William H. Orrick
United States District Judge

---

[4] UWM in the alternative moves to dismiss each of plaintiffs' causes of action for failure to state a claim. Mot. 8–25. Because of the consent problem discussed above, there is no foundation for any of plaintiffs' causes of action. I recommend plaintiffs pay close attention to the alternative concerns raised in UWM's instant motion to dismiss as well.